No. 24-369
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

VIKRAM VALAME,

*Plaintiff-Appellant,*

v.

JOSEPH R. BIDEN, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-03018-NC
Hon. Nathanael Cousins

**APPELLANT'S EMERGENCY MOTION FOR AN INJUNCTION
PENDING APPEAL
[Circuit Rule 27-3] RELIEF REQUESTED BY FEBRUARY 9th, 2024**

Vikram Valame
*Pro Se*
4039 2nd Street, Palo Alto, California
(208) 994-3067
vik.valame@gmail.com

*Appellant*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................1

FACTUAL BACKGROUND .................................................1

LEGAL BACKGROUND ...................................................3

ARGUMENT ......................................................................5

    A.    Legal Standard...................................................5

    B.    Likelihood of Success ........................................6

        1.    The District Court Erred.....................................6

        2.    The ERA was Ratified Under the Plain Text of Article V ....7

        3.    Dillon Does Not Support Defendants.....................9

        4.    History Favors the ERA .....................................12

        5.    This Case Does Not Present a Political Question ................13

    C.    Irreparable Harm is Certain ................................15

    D.    The Equities Clearly Favor Plaintiff..............................18

CONCLUSION ..................................................................20

I

# TABLE OF AUTHORITIES

## Cases

141 S. Ct. 1815 (2021) ........................................................................24

*Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224, 230 (1995)....................20

*Baird v. Bonta*, No. 23-15016, 7 (9th Cir. Sep. 7, 2023) ................................9, 19

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 167 (2003) ....................................10

*Chalk v. United States District Court*, 840 F.2d 701, 709 (9th Cir. 1988) ..............5

*Coleman v. Miller* 307 U.S. 433 at 453 ................................................................13

*Colorado River Water Cons. Dist. v. U.S*., 424 U.S. 800, 817 (1976) ..................18

*Cuviello v. City of Vallejo,* 944 F.3d 816, 833 (9th Cir. 2019)..............................21

*Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981) ...........................................16

*Dillon v. Gloss* 256 U.S. 368 (1921) ................................................. 10, 13, 14, 15

*District of Columbia et al. v. Heller*, 554 U.S. 570, 605 (2008) ...........................17

*Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022) ...........................................20

*Dyer v. Blair*, 390 F. Supp. 1291, 1299–300 (N.D. Ill. 1975)...............................18

*Equal Emp't Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 929 (9th Cir. 2018) ...................................................................................................19

*Equal Rights Amendment Extension: Hearings on H.J. Res. 638 Before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary, 95th Cong. 7–27 (1978)*..............................................................14

*Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, (9th Cir. 2016...................9

*Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) ...............................................5

*Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985)............................19

*INS v. Chadha*, 462 U.S. 919, 956 n.21 (1983) .....................................................12

*Johnson v. California*, 545 U.S. 162, 172 (2005) ..................................................22

*Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004) ..............................17

*Maryland v. King*, 567 U.S. 1301, 1303 ................................................................24

*McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015) ................................................................22

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ............................................................9

*Raines v. Byrd*, 521 U.S. 811 (1997) ...................................................................18

*Ramos v. Wolf*, 975 F.3d 872, 888 (9th Cir. 2020) ..............................................10

*Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)............9

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984) ..............................................5

*Rostker v. Goldberg,* 453 U.S. 57 (1981) ..............................................................8

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir.2002) ..........22

*Schuette v. Coal. to Defend Affirmative Action,* 572 U.S. 291, 317 (2014)............24

*Shaw v. Reno*, 509 U.S. 630, 643 (1993) ..............................................................22

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir.2009).........................5

*South Carolina v. Katzenbach* 383 U.S. 301 (1966) .............................................20

*The Pocket Veto Case,* 279 U.S. 655, 689 (1929)..................................................13

*U.S. ex rel. Widenmann v. Colby*, 265 F. 998, 1000 (D.C. Cir. 1920)...................10

*United States v. Sitka*, 845 F.2d 43, 47 (2d Cir.1988)...........................................11

*United States v. Sprague*, 282 U.S. 716, 730-31 (1931) .......................................15

*Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021).......................................11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ...........................9

*Ziglar v. Abbasi*, 137 S.Ct. 1843, 1862 (2017) .....................................................23

*Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I) 566 U.S. 189, 194–95 (2012) .............................................................................18, 19

## Statutes

5 U.S.C. §3328 .................................................................................................6, 20

50 U.S.C. §§3801-20 ..............................................................................................5

50 U.S.C. §452(a) ...............................................................................6

92 STAT. 3799 ...................................................................................17

H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) ........................7, 8, 12

H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978) .............................16

## Other Authorities

44 Op. O.L.C. (slip op., at 22) (Jan. 6, 2020) ....................................12

Held, A. L., Herndon, S. L., & Stager, D. M. (1997). *The Equal Rights Amendment: Why the ERA remains legally viable and properly before the states*. Wm. & Mary J. Women & L., 3, 113 at 125-126 ............................17

HJ1ER, Virginia 2020 Session (2020), *available at* https://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+HJ1ER+pdf (38th ratification) .............................8

*Illinois v. Ferriero*, Tr. of Oral Argument at 47:51-48:20 .....................................18

James A. Heaney *Who Misquoted The 14th Amendment*, January 25th, 2024, available at https://decivitate.substack.com/p/who-misquoted-the-14th-amendment ..............................................................................11

The Final Report of the National Commission on Military, National, and Public Service (March 2020), available at https://docs.house.gov/meetings/AS/AS00/20210519/112680/HHRG-117-AS00-Wstate-HeckJ20210519-SD001.pdf.................................................23

## Constitutional Provisions

U.S. Const Amend. XXVIII §3 ...........................................................13

U.S. Const. Amend. XVIII...................................................................14

U.S. Const. Amend. XX §VI...............................................................12

U.S. Const. Amend. XXVIII, §1 ..........................................................8

U.S. Const. Art. V.........................................................................12, 13

IV

## INTRODUCTION

The Federal Government has declared that it will deny Plaintiff Vikram Valame benefits he qualifies for because of his sex— "an immutable characteristic determined solely by the accident of birth." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). Plaintiff respectfully moves that this Court prevent the "stigmatizing injury" of illegal discrimination, "and the denial of equal opportunities that accompanies it" from being inflicted on him pending appeal. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984).

A narrow injunction—applied to the Plaintiff only—would "preserve the status quo" pending a final determination on the merits without substantially interfering in government operations. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir.2009). On the other hand, allowing the government to discriminate based on a dubiously legal policy would inflict "immediate" "emotional and psychological" injuries that "cannot be adequately compensated for" after a merits adjudication. *Chalk v. United States District Court*, 840 F.2d 701, 709 (9th Cir. 1988).

## FACTUAL BACKGROUND

Plaintiff Vikram Valame is an eighteen-year-old male citizen of the United States. Under the Military Selective Service Act, 50 U.S.C. §§3801-20 (the

"MSSA"), Valame is required to register with defendant Selective Service System (the "SSS"). Failure to register is punishable by criminal prosecution under 50 U.S.C. §452(a), and by 5 U.S.C. §3328, which prevents a male who refuse to register from being employed by an executive agency.

Believing that the sex-discriminatory registration requirements and collateral consequences imposed by the MSSA were unlawful, Valame commenced this action on June 20th, 2023. While the lawsuit was ongoing, Valame applied for positions within the executive branch with the intent of securing summer employment. Appendix E at ¶8-10. In September, Valame applied for the Nuclear Regulatory Commission (the "NRC") 89-Day summer internship program based near Washington D.C. In his application, Valame was asked to provide his sex and registration status. Appendix E at ¶11. Valame indicated that he was male, and that he had not registered.

Despite Valame's express written statements that he had failed to register with the SSS, the NRC arranged a panel interview with Valame in mid-December, in which Valame mentioned this lawsuit. Appendix F at ¶4. On January 11th, the NRC informed Valame that he had been tentatively selected as a summer intern in the acquisitions branch of NRC headquarters, and that a final offer would follow pending completion of an OF-306 Declaration for Federal Employment. Appendix F at ¶5. Valame completed the OF-306 form under penalty of perjury, reiterating

his unregistered status and constitutional objections to registration when asked. Appendix F at ¶7-8.

On January 18th, 2024, the NRC informed Valame that his offer would be revoked unless he registered with the SSS and confirmed registration under penalty of perjury. Appendix F at ¶9-10. After notifying defendants' counsel and failing to reach a solution, Plaintiff filed a motion for a Temporary Restraining Order on January 19th. The District Court proceeded to dismiss Plaintiff's entire case for failure to state a claim, mooting Plaintiff's request. The District Court's order is attached as Appendix A to this motion. On January 21st, Plaintiff filed a motion for an injunction pending appeal, which the District Court denied on January 25th. That order is attached as Appendix B.

Plaintiff gave notice to the government's counsel of this motion on January 21st and January 27th. Appendix C at ¶3. On January 29th, Defendants indicated their opposition. but informed Plaintiff that they would not formally revoke Plaintiff's job offer until **February 9th, 2024.** Appendix C at ¶4-5.

## LEGAL BACKGROUND

Plaintiff's claims arise under the Equal Rights Amendment (the "ERA"), proposed by Congress on March 22, 1972, and ratified by thirty-eight states on January 27th, 2020. *See* H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972)

(proposing ERA);, HJ1ER, Virginia 2020 Session (2020), *available at*

https://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+HJ1ER+pdf (38th

ratification).[1] The ERA provides that "Equality of rights under the law shall not be

denied or abridged by the United States or by any State on account of sex". U.S.

Const. Amend. XXVIII, §1. The MSSA, which is sex-discriminatory on its face,

clearly does not comply with this provision, and the government makes no

argument to the contrary.

The question on appeal is whether the ERA was properly ratified. The

dispute arises because the ERA's proposing resolution declared—outside the

operative text of the proposed amendment—that the ERA would be valid as part of

the Constitution when ratified "within seven years from the date of its submission

by the Congress". H.J. Res 208, 92nd Cong. (1972). Because the 36[th], 37th, and 38th

ratifications occurred after that deadline had elapsed, defendants argue that

Congress must pass a resolution specifically authorizing late ratifications before

the ERA may take effect. Defendants also contend that adjudicating the validity of

---

[1] A Fifth Amendment challenge to the MSSA was rejected in *Rostker v. Goldberg,* 453 U.S. 57 (1981). Although there are Fifth Amendment claims in this case, only the Supreme Court (or an Article V amendment) can overrule *Rostker*'s Fifth Amendment analysis.

4

this deadline and legality of attempts by some states to rescind ratifications of the ERA is a political question reserved for the political branches of government.

## ARGUMENT

### A.    Legal Standard

"The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction" *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, (9th Cir. 2016). The four-factor test asks whether a petitioner has established [1] a likelihood of success on the merits, [2] likelihood of irreparable harm absent preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that the public interest favors an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The government is a party in this case, so the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

When a plaintiff proves a likelihood of success on a constitutional claim, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation" *Baird v. Bonta*, No. 23-15016, 7 (9th Cir. Sep. 7, 2023). Additionally, since it is "always in the public interest to prevent the violation of a party's constitutional" rights, proving a likelihood of success also tips the third factor sharply in the movant's favor. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022).

Finally, this Circuit employs the "sliding scale" approach to preliminary relief, "such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Ramos v. Wolf*, 975 F.3d 872, 888 (9th Cir. 2020) (internal quotation marks omitted).

## B. Likelihood of Success

### 1. The District Court Erred

The District Court began its analysis by noting "As an initial matter, no 28th Amendment appears in the Constitution. *See generally* Constitution." Appendix A at 5. This "argument is circular; it assumes * * * the question" *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 167 (2003). Whether the ERA appears in "the Constitution" depends entirely on whether one accepts Plaintiff's legal arguments; citing the document whose text is in dispute adds nothing to the analysis.

The District Court may have been referring to its second point, that "the 28th Amendment's lack of publication [is] convincing evidence it does not now exist". Appendix A at 5. The District Court's analysis directly conflicts with *Dillon v. Gloss* 256 U.S. 368 (1921), which held that Constitutional Amendments become operative when ratified, and that the publication was immaterial. *See also ; U.S. ex rel. Widenmann v. Colby*, 265 F. 998, 1000 (D.C. Cir. 1920) ("It is the approval of

the requisite number of states, not the proclamation, that gives vitality to the amendment and makes it a part of the supreme law of the land."), aff'd, 257 U.S. 619 (1921); see also *United States v. Sitka*, 845 F.2d 43, 47 (2d Cir.1988) ("The authority created in the Secretary of State . . . was purely ministerial; it could not and did not affect the process of ratification itself, which is self-executing upon completion.").[2]

The government does not endorse the district court's reasoning. Below, it favorably cited *Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021) which held that plaintiff states could not assert a "confusion based" injury based on lack of certification because certification has no legal effect. The government was correct in *Ferriero*, and the District Court was wrong to treat the lack of Archivist's certification as legally conclusive evidence against the existence of the ERA.

### 2. The ERA was Ratified Under the Plain Text of Article V

Article V imposes several preconditions on the ratification of an Amendment to the Federal Constitution. First, "a constitutional amendment must command the votes of two-thirds of each House. Second, three-fourths of the states

---

[2]The Archivist's publication of the Constitution is not only legally irrelevant, but also has been factually erroneous before. *See* James A. Heaney *Who Misquoted The 14th Amendment*, January 25th, 2024, available at https://decivitate.substack.com/p/who-misquoted-the-14th-amendment.

must ratify any amendment." *INS v. Chadha*, 462 U.S. 919, 956 n.21 (1983). The Constitution also expressly defines the "mode" of ratification to be "by the Legislatures * * * or by Conventions in three fourths" of the states, "the one or the other Mode of Ratification" as "may be proposed by the Congress." U.S. Const. Art. V.

The government concedes that the Equal Rights Amendment was passed by two thirds of each House of Congress. H.J. Res 208, 92nd Cong. (1972). The government further concedes that ¾ of the states ratified the proposed amendment. Finally, defendants concede that the ratifying states performed their ratifications in accordance with "the one or the other" mode of ratification selected by Congress— ratification by the legislature.

Some constitutional amendments have imposed requirements that go above and beyond those set by Article V. For example, the 20th Amendment states that "This article shall be inoperative" unless ratified within seven years of its proposal. U.S. Const. Amend. XX §VI. Such provisions validly "amend the effect that Article V would otherwise have on the amendment's effective date", imposing additional requirements not contemplated by the original constitution. 44 Op. O.L.C. (slip op., at 22) (Jan. 6, 2020). The ERA itself contains such a provision, which amends Article V by imposing a two-year delay to the Amendment's effectiveness, in contrast to the immediate effectiveness of other Constitutional

Amendments. *Compare* U.S. Const Amend. XXVIII §3 *with* U.S. Const. Art. V. This grace period has elapsed, meaning that the ERA satisfies all constitutional prerequisites to ratification.

Against the text of Article V, the Federal Government cites *Dillon v. Gloss* 256 U.S. 368 (1921) and what it calls a "long settled and established practice" of including deadlines in proposed amendments. *See The Pocket Veto Case,* 279 U.S. 655, 689 (1929). But both precedent and practice favor Plaintiff.

### 3. Dillon Does Not Support Defendants

The United States cites the following language and asserts that it decisively settles this case: "Whether a definite period for ratification shall be fixed" is "a matter of detail which Congress may determine as an incident of its power to designate the mode of ratification". *Dillon*, 256 U.S. at 376. According to the United States, because the deadline setting power is associated with the "mode" of ratification, and Congress has always placed the mode outside the text of an amendment, ERA deadline is enforceable despite its placement.

In so arguing, defendants ignore the Supreme Court's admonition that *Dillon* "must be read in the light of the point decided." *Coleman v. Miller* 307 U.S. 433 at 453 (1939). When considered in the context of the question presented and the rest of the Court's opinion, *Dillon* stands for the more grounded proposition that

Congress has near-plenary power over the *content* of amendments and may propose a deadline just as it may propose any other alteration to the constitution.

The *Dillon* Court confronted a challenge to the 18th Amendment, which specified that it would be "inoperative" unless ratified within seven years of its proposal by Congress. U.S. Const. Amend. XVIII. The petitioner argued that the entirety of the 18th Amendment was invalid because a "time limitation tended to destroy any deliberation by the States" and rendered their ratifications ineffective. 256 U.S. at 369. The Supreme Court rejected that argument, reasoning that the "only" limits on Congressional proposal power were "a provision long since expired"[3], the requirement for two-thirds agreement in each house[4], and the prohibition on Amendments that deprived states of equal suffrage in the senate. *Id* at 373. This language focuses only on the substance of proposed amendments and makes no mention of additional checks provided by the ratification process. Indeed, when the Court discusses ratification under Article V, it states that

---

[3] Congress was prohibited from abolishing the slave trade or making certain tax laws until 1808.

[4] The United States disagrees with *Dillon*'s statement that two-thirds of Congress must concur with respect to every Article V power. It believes bare majorities in Congress can dictate the contours of the ratification process. *See, e.g. Equal Rights Amendment Extension: Hearings on H.J. Res. 638 Before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary, 95th Cong. 7–27 (1978).*

Congress "must" propose one of two "mode[s] of ratification", either "by the legislatures, or by conventions." *Id.* at 374.

The Court's finding that "public interests and changing conditions may require" the imposition of a deadline thus most naturally refers to the nearly unlimited power to propose amendments, and not to the rigid dichotomy between modes of ratification. *Id.* at 376. Even if selecting a reasonable timeframe is "incident" to the mode selection power, the Court's opinion gives every indication that such a power would have been exercised by including the deadline in the text of an amendment and *not* as a supplement to the two enumerated modes of ratification. Only this reading is consistent with *United States v. Sprague*, 282 U.S. 716, 730-31 (1931), which held that Article V "provides two methods for proposing amendments" and does *not* vary "as may be appropriate in view of the purpose of the proposed amendment." Because the only deadline included with the ERA was placed outside the operative text of the proposal, it cannot validly override the ratifications of sovereign states in the same way that a textual deadline operates by amending Article V's application to a new amendment.[5]

---

[5] The *Dillon* court thought that amendments *must* be ratified within a reasonable time. *See* 256 U.S. at 375 (rejecting the notion that "four amendments proposed long ago — two in 1789, one in 1810 and one in 1861 — are still pending"). This

### 4.     History Favors the ERA

Until 1917, no deadline had ever been imposed for the ratification of a constitutional amendment. For the next forty-three years, Congress confined deadlines to the text of Amendments, where they would amend Article V to render an amendment inoperative if ratified late. *See* U.S. Const Amend. XVIII-XXII.[6] It was only for a brief period between 1960 and 1972 where Congress attempted to impose deadlines outside of the text submitted to the states for ratification. Although four amendments passed in this manner, U.S. Const. Amend. XXIII-XVI, Congress returned to placing deadlines in the text when it proposed the (failed) D.C. Congressional Representation Amendment. H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978). Even the most generous doctrines of acquiescence and liquidation have demanded longer histories to settle constitutional meaning. *See e.g. Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981) (relying on historical practice of over 30 years in an emergency foreign policy context). If history is relevant, 180 years of practice after the founding *without* Congressionally imposed deadlines should favor Plaintiff more than mid-20th century innovations. *See, e.g.*

_____

holding was directly repudiated by the 27th Amendment and cannot support defendants.

[6] If *Dillon* really did establish that a deadline was a "mode" of ratification under Article V, one would expect to see a deadline alongside the designation of legislatures or conventions in subsequently proposed Amendments.

*District of Columbia et al. v. Heller*, 554 U.S. 570, 605 (2008) (rejecting late-breaking practices in favor of founding-era history).

Defendants may attempt to conflate the imposition of *any* deadline with the novel prefatory-text-only approach utilized for the ERA. But the inclusion of deadlines in the text of Amendments—which Congress may write and propose to the states—is distinct from the power to unilaterally impose an additional condition on ratification. *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004) ("although Congress' plenary authority is not open to question, whether Congress constitutionally implemented that authority may be a proper challenge").

The distinction matters. According to defendants, Congress may alter or abrogate restrictions imposed in the prefatory text of Amendments as it sees fit. *See* 92 STAT. 3799 (bare majorities nullifying ERA deadline until 1982). Deadlines contained in the text of an amendment, like any other substantive provision, cannot be altered by Congress without restarting the entire proposal and ratification process. Held, A. L., Herndon, S. L., & Stager, D. M. (1997). *The Equal Rights Amendment: Why the ERA remains legally viable and properly before the states*. Wm. & Mary J. Women & L., 3, 113 at 125-126.

### 5.   This Case Does Not Present a Political Question

The government gestures at the political question doctrine as a mechanism to dismiss this case without deciding the validity of the ERA. But "the Judiciary has a

responsibility to decide cases properly before it, even those it would gladly avoid." *Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I) 566 U.S. 189, 194–95 (2012). The "virtually unflagging" obligation to exercise jurisdiction is vital in cases like this one, where the government intends to inflict immediate, tangible harm on Plaintiff. *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 817 (1976). This court should also be skeptical of any political question argument because the government expressly assured the D.C. Circuit in *Illinois v. Ferriero* that it would defend the merits of the ERA's ratification in a suit brought by a Plaintiff with standing. *Illinois v. Ferriero*, Tr. of Oral Argument at 47:51-48:20.

The government relies on a plurality of the Court in *Coleman v. Miller* contending that Congress had "sole and complete" control over the Amending process. *Coleman*, 307 U.S. at 458. But this argument did not carry a majority in *Coleman*[7], and has been rejected by subsequent decisions. *Dyer v. Blair*, 390 F. Supp. 1291, 1299–300 (N.D. Ill. 1975) (three-judge court) (Stevens, J.). That makes sense, Plaintiff is not asking this Court to determine if social, political, and practical considerations support state recissions or a deadline. Plaintiff is merely

---

[7] The Supreme Court has expressed doubts that *any* statement in Coleman garnered a majority except for a narrow holding regarding legislator standing. *Raines v. Byrd*, 521 U.S. 811 (1997).

asking the Court to apply the "familiar principles of constitutional interpretation" to "textual, structural, and historical evidence" to determine the validity of the ERA. See *Zivotofsky I*, 566 U.S. at 201.

### C.    Irreparable Harm is Certain

Irreparable harm will be inflicted on Plaintiff if the government is allowed to discriminate against him.

Firstly, if Plaintiff is likely to succeed on the merits of his constitutional claims, then irreparable harm necessarily follows. *Baird* at 7. Even if the Court were to find only "serious questions" on the merits and moved on to the other preliminary injunction factors, the "stigmatic harm" defendants threaten to inflict is also irreparable. *Equal Emp't Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 929 (9th Cir. 2018) (even if "back pay and reinstatement" are possible "no legal remedy can fully right the wrong of such a dignitary affront").

The injury in this case is neither the generic injury "common to most discharged employees" dismissed for lack of qualifications, or the mere loss of a paid summer internship. *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985). Rather Plaintiff's injuries are "attributable to" an "unusual [action] relating to the discharge itself"—namely the government's insistence on discriminating against Plaintiff because of his sex, an immutable characteristic that has nothing to

do with his qualifications for the job. *Ibid, see also Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022) ("The Air Force's reliance on a case about a captain's discharge for 'drunk and disorderly conduct,' *Hartikka v. United State*s, reveals a lack of sensitivity to the foundational rights at stake. The Plaintiffs do not complain just about the tangible loss of pay.") (citations omitted); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("discrimination itself" stigmatizes victims as "inferior").

The United States asserts that the discrimination suffered by Plaintiff is not "individualized" because the United States denies jobs to *all* men who have failed to register. *See* ECF No. 67 (opposition below) at 7. It is unclear why widespread discrimination somehow minimizes the harm imposed on Plaintiff Valame—large-scale state-sponsored discrimination generally justifies *stronger* remedial action against the offending government. *See e.g. South Carolina v. Katzenbach* 383 U.S. 301 (1966). In any event, the government intends to deny Plaintiff a job that he *personally* qualified for based solely on *his* sex. The Constitution protects "persons, not groups", and the harm inflicted by the United States exists for Plaintiff, irrespective of the burdens placed on other members of his sex class. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224, 230 (1995).

The government argued below that Plaintiff's request for emergency relief is untimely because he knew of 5 U.S.C. §3328 when he applied for a job and waited

some three months after filing an application to request relief. Opposition Below at 7. This argument fails.

*Firstly*, Plaintiff did not unreasonably delay his requests for interim relief, and any delay is attributable to the misleading actions of the Government in this litigation. *See Cuviello v. City of Vallejo,* 944 F.3d 816, 833 (9th Cir. 2019) (delay not dispositive when government worsened injuries over time). The government was informed of Plaintiff's registration status with the SSS when Plaintiff filed his application for employment. Appendix E at ¶11. Despite this actual knowledge, the Government proceeded to schedule a panel interview (where Valame mentioned this suit), solicited references, and ultimately provided a tentative job offer. Appendix F at ¶4-5.

Simultaneously, the Government argued that Plaintiff's employment-based injuries were so speculative that they failed to establish *any* harm, much less the irreparable harm required to file a motion for preliminary relief. *See* ECF 52 (Defendant's Supplemental on Article III standing below). Because of these signals from the Government—some of which postdated the NRC's job offer—it was hardly "unreasonable" for Plaintiff to wait for adverse action before requesting relief. When the government provided Valame with four days' notice that he would, a motion for a TRO was filed the next day in the District Court. This motion will be filed only four days after the district court's denial of interim relief.

*Secondly*, "[d]elay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015). In the instant case, the government has agreed to hold Plaintiff's offer until February 9th so that this Court can issue an injunction. Appendix C at ¶5. Because the harm has not yet occurred, delay is not legally relevant to the irreparable harm inquiry.

### D.     The Equities Clearly Favor Plaintiff

It is "always in the public interest to prevent the violation of a party's constitutional rights." *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir.2002). If this court finds that Plaintiff is likely to succeed on the merits, it need not go further.

If this Court does go further, it should prioritize an "overriding interest in eradicating discrimination from our civic institutions", particularly when it prevents individuals from "making a significant contribution to governance on account" of an immutable characteristic. *Johnson v. California*, 545 U.S. 162, 172 (2005). Discriminatory classifications "are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality," and should be presumptively invalid. *Shaw v. Reno*, 509 U.S. 630, 643 (1993).

The government's counterarguments fail. It argues that treating Plaintiff equally will force the NRC to "hold" Plaintiff's job application and deny other

18

qualified applicants a chance to be hired. Opposition Below at 9. This argument

misunderstands the scope of this motion; Plaintiff requests an individualized order

preventing the NRC from firing Plaintiff solely based on his sex. If the NRC

requires all applicants to commit to the position by a certain date, Plaintiff will

comply with that requirement. The District Court's assertion that such an

injunction would somehow "trickle down" to other applicants is wholly

unsupported by the record (defendants did not submit any evidence in this case)

and similarly misunderstands the scope of the relief requested by Plaintiff.[8]

Secondly, the government asserts that preventing it from discriminating

against Plaintiff based on his sex would raise "grave separation of powers concerns

implicating the public interest", destroy "military readiness" and usurp the

authority of the executive branch. Opposition Below at 9. While plaintiff

understands the concerns of JAG lawyers, "national-security concerns" cannot be a

"talisman" to "ward off inconvenient claims—a label used to cover a multitude of

sins." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1862 (2017).[9] This Court can minimize any

---

[8] The NRC has already stayed its decision to fire Plaintiff for over two weeks, proving that any "trickle down" harms are either illusory or inevitable.
[9] For its part, the executive branch has determined that a sex-discriminatory draft is *not* in the Public Interest. The Executive Branch has already concluded that sex-discriminatory draft requirements are *not* in the public interest. See The Final Report of the National Commission on Military, National, and Public Service (March 2020), available at https://docs.house.gov/meetings/AS/AS00/20210519/112680/HHRG-117-AS00-Wstate-HeckJ20210519-SD001.pdf.

lingering separation of powers concerns by narrowly tailoring its injunction and deciding this appeal in due course.[10]

Finally, the government points to the "irreparable injury" inflicted upon a sovereign that cannot enforce its own laws. *Maryland v. King*, 567 U.S. 1301, 1303 (2012). . The sex-selective draft, however, is currently "barely—and only provisionally—permit[ted]" by the Fifth Amendment. *See Schuette v. Coal. to Defend Affirmative Action,* 572 U.S. 291, 317 (2014) (Scalia, J.). Three Justices have already signaled that *Rostker* is due to be overruled because of doctrinal evolutions and the opening of combat positions to soldiers of either sex. 141 S. Ct. 1815 (2021) (Justice Sotomayor, joined by Justices Breyer and Kavanaugh). Since the government is "aware that [Rostker]'s bell may soon toll", an injunction based on the ERA would only kickstart a process that the government should already be preparing for. *Schuette*, 572 U.S. at 317.

## CONCLUSION

This Court should enjoin the government from discriminating against Plaintiff Vikram Valame in hiring on account of his sex or failure to register with the Selective Service pending disposition of this appeal.

––––––––––––––––––––

[10] Defendants conceded below that an as-applied injunction confined to Plaintiff is a permissible remedy for his asserted injuries. ECF No. 38 (Defendant's Motion to Dismiss).

Date: Monday, January 29, 2024

/s/ Vikram Valame          .

*Appellant*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-369

I am the attorney or **self-represented party**.

**This brief contains 4542 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

**Signature** *s/Vikram Valame* **Date January 29th, 2024**
*(use "s/[typed name]" to sign electronically filed documents)*

[**Practice Tip**: Certain types of briefs, such as cross-appeal, death penalty, or amicus briefs may have different word limits.  Be sure to check the applicable rules (Ninth Cir. R. 32-1 to 32-4 (standard briefs and death penalty appeals); FRAP 29(a)(4) (amicus briefs); Ninth Cir. R. 28.1-1 (cross appeals)).]

[**Note**: The Court updates its forms from time to time.  Check the Court's website (https://www.ca9.uscourts.gov/forms/#briefs) to be sure you're using the most recent version of this form.]

# APPENDIX A: DISTRICT COURT OPINION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIKRAM VALAME,

              Plaintiff,

      v.

JOSEPH ROBINETTE BIDEN, et al.,

              Defendants.

Case No. 23-cv-03018-NC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Re: ECF 30, 38, 39, 57

Plaintiff Vikram Valame alleges the government's military draft registration requirements discriminate against him on the basis of sex. At the core of his argument, Valame contends the States ratified the Equal Rights Amendment ("ERA") as the 28th Amendment to the Constitution. Defendants counter there is no 28th Amendment and Valame cannot state a claim for relief. Finding no 28th Amendment at the end of the Constitution, this Court agrees with Defendants. Accordingly, this Court finds Valame cannot state a claim for relief and DISMISSES his claims with prejudice. This Court DENIES Valame's motion for a temporary restraining order on the same grounds.

I.      BACKGROUND

    A.    Military Selective Service Act

Valame challenges the registration provisions of the Military Selective Service Act, 50 U.S.C. §§ 3801–3820 ("MSSA"). Generally, the MSSA requires male citizens and residents of the United States between the ages of 18 and 26 to register with the Selective Service System

1   ("SSS").  50 U.S.C. §§ 3802(a), 3809.  Those who fail to register may face penalties or denial of

2   federal benefits.  *See* §§ 3811(a), 3811(f).  Women are not required to register.  *See* 50 U.S.C. §

3   3802(a).  Registrants must keep SSS informed of their current address.  *See* 32 C.F.R. § 1621.1(a).

### B.   Factual History

5       Valame is an 18-year-old male.  ECF 51 ("FAC") ¶ 1.  He is a US citizen residing

6   within this District.  *Id.*  Under the MSSA, Valame is required to register with the SSS.

7   *See id.*; 50 U.S.C. §§ 3802(a), 3809.  Valame "has knowingly and willfully refused to

8   register for the draft, despite his obligation to do so."  FAC. ¶ 23.

9       Generally, Valame "does not wish to spend time, postage money, cellular data, or

10  other limited resources registering for the military draft."  *Id.* ¶ 20.  Nor will Valame "obey

11  the [change in address] notification requirement."  *Id.* ¶ 25.  According to Valame, this

12  notification requirement harms him because it "requires the expenditure of time and money

13  to pay for communications to the SSS."  *Id.* ¶ 25.

14      Valame also states he "suffers serious stigmatic injury from the implicit view that

15  he is expendable and required to defend his county on an unequal basis with his fellow

16  citizens."  *Id.* ¶ 39.  Overall, Valame claims the MSSA requirements cause him to "suffer[]

17  frustration and significant anxiety about his role in society."  *Id.* ¶ 25.

18      Valame claims to experience further harm "because these provisions deny him job

19  opportunities provided by the federal government."  *Id.* ¶ 40 (cleaned up).  These harms

20  form the basis of his motion for a temporary restraining order.  *See* ECF 75 ("TRO").

21  Valame states he applied for a summer internship with the Nuclear Regulatory

22  Commission.  TRO at 2.  According to Valame, the NRC tentatively selected him for an

23  internship, before informing him it would revoke his offer if he did not register with the

24  SSS.  TRO at 2.  Valame asks this Court to restrain Defendants from "taking adverse

25  employment action against" him.  TRO at 8.

### C.   Procedural History

27      Valame filed his complaint *pro se* on June 20, 2023.  ECF 1.  He followed with a

28  motion for summary judgment on September 15, 2023.  ECF 30.  Defendants countered on

United States District Court
Northern District of California

September 29, 2023, with an opposition to Valame's motion and cross motion to dismiss. ECF 38. Valame filed his own opposition on October 13, 2023. ECF 39.

After a hearing on the parties' cross motions, Valame filed an amended complaint on December 19, 2023. *See* FAC. Valame brings five claims against Defendants: three for declaratory relief under the Administrative Procedures Act; a *Bivens* claim; and a California Bane Act claim. *See id.* at ¶¶ 52–81. Each claim relies on Valame's "constitutional rights under the 28th Amendment." *See id.* at ¶¶ 54, 58, 66, 75, 80. Valame realleges these same claims with reference to the 5th Amendment, though he concedes those "claims are foreclosed by binding precedent."[1] *Id.* ¶ 82–83.

Per this Court's request, the parties also filed supplemental briefing on the issue of standing.[2] ECF 52, 54. Defendants "incorporate[d] all of the arguments for dismissal contained in their motion to dismiss" into their supplemental brief. *See* ECF 54 at 1 n.1. This Court finds Defendants' incorporated arguments sufficiently address Valame's FAC without need for further briefing.

Before this Court issued a ruling, Valame moved for a temporary restraining order. *See* TRO.

Both parties have consented to magistrate judge jurisdiction. ECF 3, 25.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail*

---

[1] This Court agrees and DISMISSES with prejudice Valame's claims referencing the 5th Amendment.
[2] Though this Court thanks the parties for their thoughtful briefing on the issue of standing, it decides this matter on other grounds and does not reach that issue.

1   *Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

2   2014).  A court, however, need not accept as true "allegations that are merely conclusory,

3   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs.*

4   *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A facially plausible claim "allows the court to

5   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

6       If a court grants a motion to dismiss, leave to amend should be granted unless the

7   pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203

8   F.3d 1122, 1127 (9th Cir. 2000).

9   **III.   DISCUSSION**

10      Valame's claims depend on the existence of a 28th Amendment.  This Court finds

11  no such amendment in the Constitution.  Defendants convincingly cite to persuasive

12  authority supporting this finding.  On the other hand, Valame has not provided any court

13  authority indicating otherwise.  Accordingly, this Court DISMISSES Valame's claims.

14  Because it relies on the same failed legal theory, this Court also DENIES his TRO.

15      **A.    History of the ERA**

16      Though not necessary to our analysis, this Court quotes a brief history of the ERA:

> The Equal Rights Amendment [] was introduced in Congress [in
> 1923]. . . . [B]ut it took until 1970 for the proposal to make it to
> the House Floor.  By a vote of 352 to 15, the body proposed its
> ratification as the [then] Twenty-seventh Amendment to the
> United States Constitution.  *Illinois v. Ferriero*, 60 F.4th 704,
> 711–12 (D.C. Cir. 2023).  The Senate, however, did not take it
> up and it lapsed.  Two years later, both chambers passed the
> resolution proposing the Amendment for ratification and
> submitted it to the 50 states.  Contained within the resolution,
> although not the text of the ERA, was a seven-year deadline
> within which three-quarters of the states, 38 of them, were
> required to vote affirmatively for the Amendment to be ratified.
> *Id.* at 712.
>       As of 1982 only 35 states had voted to ratify, even though
> the deadline had been extended by three years.  For the next 30
> years, the ERA was presumably considered dead, but in 2018,
> Nevada ratified it, followed quickly by Illinois and Virginia.  *Id.*
> at 713.  Since then, a battle to accord vitality and validity to the
> ERA has been fought . . . .

27  *Elizabeth Cady Stanton Tr. v. Neronha*, No. 22-cv-00245-MSM, 2023 WL 6387874, at *1

28  (D.R.I. Sept. 8, 2023) (footnotes omitted).

United States District Court
Northern District of California

**B.    Valame Cannot State a Claim Under a Non-Existent Amendment.**

Valame argues a 28th Amendment protects him against discrimination on the basis of sex.  *See* FAC ¶ 12.  The Constitution does not agree.  Nor does persuasive authority.  *See, e.g.*, *Ferriero*, 60 F.4th at 719.

**1.    The Constitution Does Not Include a 28th Amendment.**

As an initial matter, no 28th Amendment appears in the Constitution.  *See generally* Constitution.  Valame does not cite to any court authority finding otherwise.  *See generally* ECF 30, 39.  "The United States Constitution provides a pathway for adding new Amendments, and Congress has determined that the last step on that path is certification and publication by the National Archivist."  *Elizabeth Cady Stanton Tr.*, 2023 WL 6387874, at *7.  The Archivist has not taken those necessary steps.  *See Ferriero*, 60 F.4th at 713 (recounting how "the Archivist refused to certify and publish the amendment").  This Court finds the 28th Amendment's lack of publication convincing evidence it does not now exist.  *See id.*; *see also* Constitution (concluding at 27th Amendment).

Beyond the 28 Amendment's current state of nonbeing, the *Ferriero* court took up the question of whether the Archivist owed a duty to bring it to life.  *Ferriero*, 60 F.4th 704.  The court walked through the ERA's storied history, *id*. at 711–13, and the certification requirements imposed on the Archivist, *id*. at 713–19.  At bottom, the court concluded the Archivist did not have a duty to certify and publish the ERA.  *Id*. at 719.  This Court finds *Ferriero* persuasive.  Thus, not only does the Amendment granting Valame his purported rights not exist, but the Government is also under no duty at this time to bring it into existence.  *See id*.

Ultimately, either the 28th Amendment simply does not exist.  *See Taylor v. El Centro Coll.*, No. 3:21-CV-0999-D, 2022 WL 102611, at *8 (N.D. Tex. Jan. 10, 2022) ("*Taylor's* claim under the Equal Rights Amendment fails because there is no such amendment to the United States Constitution."); *Ferguson v. Idaho Dep't of Correction*, No. 4:20-CV-00003-DCN, 2020 WL 1016447, at *1 n.1 (D. Idaho Mar. 2, 2020) ("The Equal Rights Amendment was not ratified and is not part of the United States

United States District Court
Northern District of California

1   Constitution.").  Or the Archivist does not owe a duty to certify and publish the ERA, thus

2   precluding its creation.  *See Ferriero*, 60 F.4th at 719.  For our purposes, the result is the

3   same: there is now no 28th Amendment and Valame cannot state a claim for relief under a

4   constitutional amendment that does not exist.

5          Therefore, this Court DISMISSES Valame's claims.  Because no new allegations

6   would save his claims, this Court finds leave to amend futile.  *See Lopez*, 203 F.3d at 1127.

7   **C.     Valame TRO Motion is Denied.**

8          Valame's TRO also hinges on his purported rights under the 28th Amendment.

9   Finding he does not possess those rights, this Court DENIES his application for a TRO.

10  **IV.   CONCLUSION**

11         This Court DISMISSES Valame's claims with prejudice.  As his TRO relies on the

12  same legal theory, this Court also DENIES his motion for a TRO.

13         **IT IS SO ORDERED.**

14

15  Dated:  January 20, 2024                  _____

16                                            NATHANAEL M. COUSINS
                                              United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

6

# APPENDIX B: DENIAL OF INJUNCTION PENDING APPEAL

1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT
8          NORTHERN DISTRICT OF CALIFORNIA
9

10
11   VIKRAM VALAME,                          Case No. 23-cv-03018-NC
              Plaintiff,
12                                           **ORDER DENYING**
                                             **PLAINTIFF'S MOTION FOR**
13        v.                                 **INJUNCTION PENDING**
                                             **APPEAL**
14   JOSEPH ROBINETTE BIDEN, et al.,
                                             Re: ECF 64, 67
15            Defendants.

16        Plaintiff Vikram Valame moves for an injunction pending his appeal of this Court's

17   dismissal of his case. *See* ECF 64. Finding Valame does not clear the high bar set for

18   such relief, this Court DENIES his motion.

19   **I.    BACKGROUND**

20        In short, Valame's motion follows this Court's dismissal of his claims for relief

21   under a non-existent Amendment. *See* ECF 61. In dismissing Valame's claims, this Court

22   also denied his motion for a temporary restraining order. *Id.* Valame now moves under

23   Federal Rules of Civil Procedure 62(d) for the same injunctive relief: enjoining the

24   Nuclear Regulatory Commission from rescinding its summer internship offer to Valame

25   because Valame has not registered for the selective service. *See* ECF 64.

26   **II.   DISCUSSION**

27        To succeed on his motion, Valame must establish: "[1] he is likely to succeed on the

28   merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

1   [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

2   interest." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052

3   (9th Cir. 2009).  Valame fails to do so.

4       **A.    Valame Fails to Meet the Standard for an Injunction Pending Appeal**

5           Valame has not established the required elements for an injunction pending appeal.

6   First, Valame is not likely to succeed on the merits.  This Court dismissed Valame's claims

7   following extensive briefing as well as oral argument.  Despite ample opportunities to

8   persuade this Court, Valame's claims were fundamentally lacking.  *See* ECF 61.  For the

9   same reasons this Court dismissed Valame's claims, it finds him unlikely to succeed on the

10  merits.  *See* ECF 61.

11          Second, losing a single summer internship opportunity likely does not constitute

12  irreparable harm.  *Cf. Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir.

13  2014) (finding irreparable harm where "Plaintiffs' inability to obtain driver's licenses has

14  . . . prevented them from applying for desirable entry-level jobs, and from remaining in

15  good jobs where they faced possible promotion").  This is especially true when one may

16  not even accept said internship.  *See* ECF 51 (explaining Valame's internship decision

17  would depend in part on whether he "receives a better offer from another employer").

18          Lastly, neither the equities nor public interest favor Valame.  Valame asks this

19  Court to restrain a different branch of government from concluding its hiring process.  *See*

20  ECF 64.  That holdup would likely unfairly trickle down to other qualified candidates.

21  Candidates who, unlike Valame, did not have advanced notice of this probable outcome.

22  This Court finds Valame's arguments to the contrary unconvincing.

23  **III.  CONCLUSION**

24          Valame's motion for an injunction pending appeal is DENIED.

25          **IT IS SO ORDERED.**

26

27  Dated:  January 25, 2024     _____

28                              NATHANAEL M. COUSINS
                                United States Magistrate Judge

# APPENDIX C: NEW DECLARATION OF VIKRAM VALAME

Vikram Valame

4039 2ⁿᵈ Street Palo Alto, California 94306

(208) 994 3067

vik.valame@gmail.com

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

| | |
|---|---|
| Vikram Valame ) | Case Number: 24-369 |
| ) | |
| Plaintiff, ) | **DECLARATION OF VIKRAM VALAME** |
| ) | |
| vs. ) | **IN SUPPORT OF PLAINTIFF'S MOTION FOR AN INJUNCTION PENDING APPEAL** |
| ) | |
| Joseph R. Biden, President of the United States, et. al. ) | |
| ) | |
| Defendants. ) | |

I, *Vikram Valame* declare as follows:

1.     I am the *pro se* plaintiff in this lawsuit against the United States Federal Government and its officials.

2.     I filed this lawsuit in the Northern District of California on June 20ᵗʰ, 2023.

3.     On January 21ˢᵗ, 2024, and January 27ᵗʰ, 2024, I informed counsel for the government via email that I would seek an injunction pending appeal from the Ninth Circuit.

Declaration of Vikram Valame
CASE NO. 24-369; PAGE 1 OF 2 [*JDC TEMPLATE Rev.2015*]

4. On January 29th, 2024, Attorney Simon C. Brewer informed me that the Government would oppose my motion.

5. Mr. Brewer also informed me that the Nuclear Regulatory Commission would nt formally terminate my offer of employment until February 9th, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on January 29th, 2024.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

Phone Number: (208) 994 3067

Declaration of Vikram Valame
CASE NO. 24-369; PAGE 2 OF 2 [*JDC TEMPLATE Rev.2015*]

# APPENDIX D:

## DECLARATION OF VIKRAM VALAME IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  Vikram Valame

2  4039 2ⁿᵈ Street Palo Alto, California 94306

3  (208) 994 3067

4  vik.valame@gmail.com

5

6

7

8  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9  Vikram Valame ) Case Number: 5:23-cv-03018-NC

10  ) **DECLARATION OF <u>VIKRAM VALAME</u>**
        Plaintiff, )

11  ) **IN SUPPORT OF PLAINTIFF'S MOTION**
  vs. ) **FOR SUMMARY JUDGMENT**

12  )

13  Joseph R. Biden, President of the United )
States, et. al. )

14  )
        Defendants. )

15  )

16  )

17  )

18  )

19  )

20  )

21  I, *Vikram Valame* declare as follows:

22  *[In the first paragraph, explain who you are and how you are connected to the party or events*

23  *relevant to the lawsuit. If you are the Plaintiff or Defendant, say so here. If you are a witness,*
*say how you are involved.]*

24

25  1.    I am plaintiff in this lawsuit against the United States Federal Government and its

26  officials.

27  2.    I have personal knowledge of all facts stated in this declaration, and if called to

28  testify, I could and would testify competently thereto.

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary
Judgment
CASE NO. <u>5:23-cv-03018-NC</u>; PAGE 1 OF 3 [*JDC TEMPLATE Rev.2015*]

3.      I am a male citizen of the United States.

4.      In May of 2023 I attained 18 years of age.

5.      After attaining the age of 18, I have never been in active-duty military service, enrolled in any military academies, imprisoned, institutionalized, hospitalized, or continuously confined to a secure facility.

6.      I have not registered for the Selective Service system through any means, and do not plan to do so. I do not wish to spend my time, electricity, mobile data, or postage to register. I also do not wish to participate in an unconstitutionally discriminatory process.

7.      In May of 2023, I accessed the Selective Service System's website by inputting sss.gov/register into my internet browser. That webpage displayed text stating "current law does not permit females to register". I have attached a PDF save of that web page taken from my computer on September 14th, 2023 as Exhibit A to my motion for summary judgment. Having reviewed that PDF, I can confirm that it appears identical to the webpage I viewed in May, except that the normally unclickable and unfilled checkbox for "female" is checked on the PDF.

8.      Some time after learning of the discriminatory registration prohibition for women, I navigated to the "benefits & penalties" section of the Selective Service System website. This web page was located at https://www.sss.gov/register/benefits-and-penalties/. On that web page I saw that substantial penalties could be imposed on me for failing to register. The website stated that "failure to register is a felony punishable by a fine of up to $250,000 and/or 5 years imprisonment", and that failure to register would subject me to referral to the Department of Justice for investigation and prosecution. The website also stated that I could lose valuable federal job opportunities. I downloaded a PDF copy of the website onto my computer, which I have attached as Exhibit B to my motion for summary judgment. I reviewed that PDF and can confirm it accurately reflects the contents of the website that I saw.

9.      I then navigated to the "Frequently Asked Questions" area of the Selective Service System's website at https://www.sss.gov/faq/. I clicked on the drop down menu titled "I just got a reminder to register in the mail. How did you get my name and address?". The website

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 3 [*JDC TEMPLATE Rev.2015*]

stated that the Selective Service System took addresses and names from public high schools to enforce draft registration. Having recently graduated a public high school, this concerned me. I have attached a PDF download of this web page as Exhibit C to my motion for summary judgement. Having reviewed this PDF download, I can confirm that it accurately reflects the web page that I previously viewed.

10. I also checked the severity of the local U.S. Attorney's enforcement of the registration requirement. After googling ""US Attorney for the northern district of California" and "selective service"", I found a web page from the department of Justice at https://www.justice.gov/usao-ndca/employment. That web page stated that the U.S. Attorney for the Northern District of California was requiring that every job applicant in his entire office be registered with the Selective Service. I have attached a PDF copy of that page as Exhibit D to my motion for summary judgment. Having reviewed the PDF I downloaded on September 14th, 2023, I can confirm that it accurately reflects the website I initially viewed.

11. Because the registration requirement stigmatizes me as more easily disposed of than women, and threatens me with criminal prosecution, I filed a lawsuit against the requirement on June 20th, 2023.

12. I certify my compliance with the Local Rules, the Federal Rules of Civil Procedure (including rule 11), and other relevant ethical standards in connection with my motion for summary judgment. I have complied with those obligations to the best of my abilities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 15th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment
CASE NO. 5:23-cv-03018-NC; PAGE 3 OF 3 [*JDC TEMPLATE Rev.2015*]

Phone Number: (208) 994 3067

# APPENDIX E:

## SUPPLEMENTAL DECLARATION OF VIKRAM VALAME (Article III Standing)

1  Vikram Valame

2  4039 2nd Street Palo Alto, California 94306

3  (208) 994 3067

4  vik.valame@gmail.com

5

6

7

8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

Vikram Valame

)   Case Number: 5:23-cv-03018-NC

10

)   **SUPPLEMENTAL DECLARATION OF**
Plaintiff,   )   **VIKRAM VALAME**

11

vs.   )   **IN SUPPORT OF PLAINTIFF'S MOTION**
)   **FOR SUMMARY JUDGMENT**

12

Joseph R. Biden, President of the United
States, et. al.   )

13

)

14

Defendants.   )

15

)

16

)

17

)

18

)

19

)

20

21

I, *Vikram Valame* declare as follows:

22

23      1.      I am the *pro se* plaintiff in this lawsuit against the United States Federal

24  Government and its officials.

25      2.      I have personal knowledge of all facts stated in this declaration, and if called to

26  testify, I could and would testify competently thereto.

27      3.      I have knowingly and willfully refused to register for the draft despite the

28  purported registration requirement contained in the Military Selective Service Act and its

implementing regulations. I will not obey the registration obligation in the future (unless ordered to do so by a court).

4.    I will not obey the purported notice and address updating requirements of the Military Selective Service Act or its implementing regulations (unless ordered to do so by a court).

5.    On Thursday December 14th, 2023, at 11:47 a.m., I asked Andrew J. Rising, Andrew E. Carmichael, and Michael J. Gerardi via email if the government would be willing to disavow enforcement of the Military Selective Service Act against me during the pendency of my lawsuit.

6.    On Friday December 15th, 2023, at 2:07 P.M., Andrew J. Rising declined my offer via email.

7.    I can provide copies of this email exchange if required.

8.    While studying in Germany, I applied to the "Temporary Summer Student" program with the Nuclear Regulatory Commission. The program offers paid work opportunities at the NRC's headquarters in Rockville, Maryland. I believe that I applied in either late September or Early October.

9.    The Nuclear Regulatory Commission's Website & job application lists the job requirements as (1) Having United States Citizenship, (2) be attending an accredited college in pursuit of a Bachelors, Masters, or Doctoral Degree, (3) have a GPA of at least 2.85, and (4) have completed at least 30 semester-hours of work by the summer of 2024.

10.    I am a United States Citizen attending an accredited college (Northeastern University). Based on my academic performance this semester and previously, I believe I will almost certainly obtain a 2.85 GPA in 30 semester-hours of classes by the summer of 2024.

11.    The online application to apply for the NRC position asked (yes or no) whether I had registered with the Selective Service and whether (yes or no) I had an applicable exemption from registration. I truthfully answered "no" to the registration question because I had not

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment
CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 4 [*JDC TEMPLATE Rev.2015*]

registered. I truthfully answered yes to the exemption question, because the 28th Amendment exempts me from the unlawful registration requirement.

12.  While studying in Germany, I applied for the Defense Counterintelligence and Security Agency's "Student Intern: Mission Support" program. The program offers paid work opportunities in several locations around Washington D.C. I applied via email on November 13th, 2023.

13.  The Defense Counterintelligence and Security Agency's application instructions included the following job requirements: (1) U.S. Citizenship, (2) Selective Service Registration, (3) a submitted resume, (4) willingness to undergo drug testing, (5) ability to report to an office on a regular basis, (6) suitability for federal employment as determined by a background check, (7) maintaining a security clearance, (8) Currently enrolled in an accredited undergraduate degree-seeking program in Fall 2024 with an expected graduation date of Spring 2025 or later, (9) have and maintain a 3.0 GPA or higher.

14.  Although I cannot predict the results of a background check or security clearance registration process, I am not aware of any reasons why I would be recommended unfavorably for Federal Employment or a Security clearance. I expect to receive a GPA higher than 3.0 based on my academic performance and meet every other job requirement except Selective Service registration already.

15.  I visited the Defense Counterintelligence and Security Agency's website after applying for the internship. Under a section for employment eligibility, the website stated that registration with the Selective Service was required for all men born after December 31st, 1959 and ever subject to a registration requirement.

16.  Although I knew of the Selective Service registration requirement when I applied to these job positions, I did not apply for these positions for the sole or primary purpose of manufacturing standing in my pending lawsuit. I am genuinely interested in the work performed by both the Nuclear Regulatory Commission and the Defense Counterintelligence and Security

Agency. If I am accepted into either of the positions I applied for, I anticipate taking the offer unless an unexpected development occurs, or I receive a better offer from another employer.

17.     The discriminatory registration requirements have caused significant anxiety in my mind over my role as a man in modern society. Not only am I anxious about the prospect of injury or death in War, I worry that my achievements and path to success are predetermined more by the coincidental alignment of chromosomes than the genuine work of myself or even my parents. The frustration I feel isn't necessarily that I will feel less success or prosperity overall, but that the method I use to pursue happiness is constricted by my sex.

18.     I have reviewed an uploaded PDF copy of the Selective Service System's response to a FOIA inquiry filed by USA Today regarding certain statistics about Registration enforcement. The Document appears to bear the insignia of the Selective Service System and a signature by an officer of the Selective Service System authorized to authenticate documents. I have attached the uploaded PDF from USA Today as Exhibit E attached to this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 19th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

Phone Number: (208) 994 3067

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment
CASE NO. 5:23-cv-03018-NC; PAGE 4 OF 4 [*JDC TEMPLATE Rev.2015*]

# APPENDIX F:

## SECOND SUPPLEMENTAL DECLARATION OF VIKRAM VALAME (Emergency Relief)

1  Vikram Valame

2  4039 2nd Street Palo Alto, California 94306

3  (208) 994 3067

4  vik.valame@gmail.com

5

6

7

8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9                                              ) Case Number: 5:23-cv-03018-NC
   Vikram Valame                              )
10                                             ) **SUPPLEMENTAL DECLARATION OF**
                  Plaintiff,                   ) **VIKRAM VALAME**
11                                             )
        vs.                                    ) **IN SUPPORT OF PLAINTIFF'S MOTION**
12                                             ) **FOR A TRO**
   Joseph R. Biden, President of the United    )
13  States, et. al.                            )
                                               )
14             Defendants.                     )
15                                             )
                                               )
16                                             )
                                               )
17                                             )
                                               )
18                                             )
                                               )
19                                             )
20                                             )

21

22         I, *Vikram Valame* declare as follows:

23         1.     I am the *pro se* plaintiff in this lawsuit against the United States Federal

24  Government and its officials.

25         2.     I have personal knowledge of all facts stated in this declaration, and if called to

26  testify, I could and would testify competently thereto.

27         3.     I have knowingly and willfully refused to register for the draft despite the

28  purported registration requirement contained in the Military Selective Service Act and its

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for
a TRO
CASE NO. 5:23-cv-03018-NC; PAGE 1 OF 3 [*JDC TEMPLATE Rev.2015*]

implementing regulations. I will not obey the registration obligation in the future unless a court finally finds that I am obligated to.

4.      In early December, the Nuclear Regulatory Commission contacted me to conduct a panel interview for my internship application. I conducted the interview shortly before leaving for Germany. The interview went well, and a few days later the NRC contacted me and asked for two U.S. Citizen references, which I provided.

5.      On January 11th, 2024, Debby Hackett from the NRC contacted me and informed me that I had been tentatively selected for the NRC internship in the Office of Administration's Acquisition Management Division. Hackett informed me that after I filled out the OF-306 declaration for federal employment and completed some other paperwork, I would receive a final offer.

6.      I can provide a copy of this email correspondence if requested. I have already provided a copy to the government's lawyers.

7.      The OF-306 document required me to disclose my registration status with the Selective Service under penalty of perjury.

8.      I clicked "no" for registration, and then filled out a box asking for an explanation. I explained that the MSSA was unconstitutional, and that I was therefore not required to register. I then filled out the rest of the form by clicking "no" on several criminal background questions and signing it electronically.

9.      On January 18, 2024, Debby Hackett contacted me and told me that that the NRC's policy prohibited me from gaining employment absent draft registration. Hackett said that if I did not resubmit the OF-306 with a "yes" to registration status my offer would be revoked.

10.      Hackett included the following policy in her email: "A male born after December 31, 1959, who was or is required to register under section 3 of the Military Selective Service Act, and who is not so registered or knowingly and willfully did not so register before the requirement terminated or became inapplicable to him, is not eligible for employment with the NRC"

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for a TRO

CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 3 [*JDC TEMPLATE Rev.2015*]

11. I provided email notice to Defendants counsel that I would file an application for a TRO in response to this unlawful discrimination. Defendants' counsel acknowledged my notice.

12. I am now even more anxious and frustrated about my position in society and my future career prospects. Following the internship offer, I had discussed acquiring accommodations in Washington D.C., arranged a means of making initial payments for housing at Georgetown University, and made plans to visit the Supreme Court in late June for its opinion announcements from the bench. The government has forced me to put these plans on hold.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on January 19th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

Phone Number: (208) 994 3067

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for a TRO

CASE NO. 5:23-cv-03018-NC; PAGE 3 OF 3 [*JDC TEMPLATE Rev.2015*]