No. 24-369

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VIKRAM VALAME,

Plaintiff-Appellant,

v.

JOSEPH R. BIDEN, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

**RESPONSE TO EMERGENCY MOTION
FOR INJUNCTION PENDING APPEAL**

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
THOMAS PULHAM
SIMON C. BREWER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7529*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5367*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT ............................................................................................................. 1

      A.     Constitutional and Statutory Background ..................................... 1

      B.     Prior Proceedings .............................................................................. 4

ARGUMENT ............................................................................................................... 6

I.     Plaintiff is unlikely to succeed on the merits. ............................................ 7

II.     The remaining equitable factors favor the government. ...................... 10

CONCLUSION ........................................................................................................ 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Aargon Agency, Inc. v. O'Laughlin*,
   70 F.4th 1224 (9th Cir. 2023) .................................................................... 10

*Coleman v. Miller*,
   307 U.S. 433 (1939) ............................................................................... 8, 9

*Dillon v. Gloss*,
   256 U.S. 368 (1921) ............................................................................ 7, 8, 9

*Effect of 2020 OLC Opinion on Possible Congressional Action Regarding Ratification of the Equal Rights Amendment*,
   46 Op. O.L.C., slip op. (2022), https://perma.cc/H4ZS-GP3G ............................. 4

*Elgin v. Department of the Treasury*,
   567 U.S. 1 (2012) ........................................................................................ 2

*Idaho v. Freeman*,
   529 F. Supp. 1107 (D. Idaho 1981) ........................................................... 3, 8

*Illinois v. Ferriero*,
   60 F.4th 704 (D.C. Cir. 2023) ................................................................... 7, 9

*Mallory v. Norfolk S. Ry.*,
   600 U.S. 122 (2023) ................................................................................... 13

*Maryland v. King*,
   567 U.S. 1301 (2012) .............................................................................. 12-13

*National Coal. for Men v. Selective Serv. Sys.*,
   969 F.3d 546 (5th Cir. 2020), *cert. denied*,
   141 S. Ct. 1815 (2021) ............................................................................... 13

*National Org. for Women, Inc. v. Idaho*,
   459 U.S. 809 (1982) ................................................................................. 3, 8

*Orr v. Plumb*,
   884 F.3d 923 (9th Cir. 2018) ..................................................................... 10

*Ratification of the Equal Rights Amendment*,
   44 Op. O.L.C., slip op. (2020), https://perma.cc/Q56X-KQ7Z ................ 3, 4, 7, 9

*Respect Me. PAC v. McKee*,
   562 U.S. 996 (2010) ..................................................................................... 6

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .................................................................................. 6, 7

*Rostker v. Goldberg*,
    453 U.S. 57 (1981) .......................................................................... 2, 10, 11

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..................................................................................... 12

*United States v. Sprague*,
    282 U.S. 716 (1931) ..................................................................................... 9

## U.S. Constitution:

Art. V .................................................................................................................. 2

## Statutes:

Military Selective Service Act:
    50 U.S.C. § 3801 ........................................................................................ 2
    50 U.S.C. § 3802(a) ................................................................................ 1, 2
    50 U.S.C. § 3806 ................................................................................... 1, 12
    50 U.S.C. § 3809(a)(1) ............................................................................... 1

5 U.S.C. § 3328(a) ............................................................................................ 2

28 U.S.C. § 636(c) ............................................................................................ 4

42 U.S.C. § 2165(b) ........................................................................................ 12

## Legislative Materials:

H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) ..................................... 2, 3

H.R.J. Res. 638, 95th Cong., 92 Stat. 3799 (1978) ........................................ 3

H.R.J. Res. 1, 2020 Sess. (Va. 2020) .............................................................. 3

S.J. Res. 2, 2017 Leg., 79th Sess. (Nev. 2017) ............................................... 3

S.J. Res. Const. Amend. 4, 100th Gen. Assemb. (Ill. 2018) ........................... 3

# INTRODUCTION

Plaintiff seeks an extraordinary injunction pending appeal that would prevent the federal government from implementing the longstanding statutory Selective Service registration requirement, the validity of which the Supreme Court has expressly upheld. His legal theory hinges on a premise that no court has ever accepted: the Equal Rights Amendment (ERA) was validly ratified and has become part of the U.S. Constitution. But the requisite number of States failed to ratify the ERA before the deadline set by Congress expired. That fundamental problem aside, plaintiff offers no argument as to why the ERA would entitle him to relief on the merits. And even if plaintiff could show a likelihood of success on the merits, granting him relief would be profoundly inequitable. The requested injunction would halt a nonparty agency's hiring process for an internship that plaintiff will not commit to accepting even if offered. Because plaintiff fails to satisfy any of the factors necessary to justify an injunction pending appeal, the motion should be denied.

# STATEMENT

## A.  Constitutional and Statutory Background

1. The Military Selective Service Act (MSSA) has long required all male citizens between the ages of 18 and 26, with some exceptions, to register with a federal agency known as the Selective Service System. 50 U.S.C. §§ 3802(a), 3809(a)(1); *see also id.* § 3806 (exemptions and deferments). These registrations must be in accordance with the MSSA's implementing regulations, *see id.* § 3802(a), and their purpose "is to

facilitate any eventual conscription" into the armed forces in the event of a military draft. *Rostker v. Goldberg*, 453 U.S. 57, 59-60 (1981); *see also* 50 U.S.C. § 3801. The MSSA does not require women to register. 50 U.S.C. § 3802(a). The Supreme Court has upheld the registration requirement for men. *See Rostker*, 453 U.S. 57.

Individuals who are required to register for the Selective Service, but are not so registered, are ineligible for certain benefits, including appointments to Executive agencies. 5 U.S.C. § 3328(a); *see also Elgin v. Department of the Treasury*, 567 U.S. 1, 7 (2012).

2. Article V provides that Congress may propose new amendments to the Constitution "whenever two thirds of both Houses shall deem it necessary." U.S. Const. art. V. Congress has traditionally done so through a joint resolution that has two parts: a "proposing clause" that describes what Congress has done and the text of the amendment as it would appear in the Constitution. Article V further provides that an amendment "shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress." *Id.*

On March 23, 1972, both Houses of Congress adopted (by two-thirds majority) a joint resolution to submit the ERA to the state legislatures. H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972). As it had done several times before, Congress imposed a seven-year deadline for ratification. The proposing clause stated that the amendment

2

would become "part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress." *Id.*

By 1978, the requisite number of States had not ratified the ERA. Moreover, four States voted to rescind previous ratifications, and a fifth passed a resolution stating that its prior ratification would be rescinded if the ERA were not adopted within the seven-year period. *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C., slip op. at 6-7 & nn.7-8 (2020), https://perma.cc/Q56X-KQ7Z (*Ratification of the ERA*). Congress decided to give States more time, and by simple majorities, both Houses passed a joint resolution extending the deadline for the ERA's ratification by three years to June 30, 1982. H.R.J. Res. 638, 95th Cong., 92 Stat. 3799 (1978). This extension was challenged by several States and state legislators, *see Idaho v. Freeman*, 529 F. Supp. 1107 (D. Idaho 1981), but the Supreme Court dismissed the complaints as moot after the extended deadline elapsed, *see National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982).

In 2017, 2018, and 2020, three additional States passed resolutions to ratify the ERA. S.J. Res. 2, 2017 Leg., 79th Sess. (Nev. 2017); S.J. Res. Const. Amend. 4, 100th Gen. Assemb. (Ill. 2018); H.R.J. Res. 1, 2020 Sess. (Va. 2020). If those three actions counted as timely ratifications, and the States that have voted to rescind their ratifications were not subtracted, then three-quarters of the States would have voted to ratify the ERA.

3

On January 6, 2020, the Office of Legal Counsel in the Department of Justice issued an opinion concluding that the ERA "failed of adoption" because the "binding" deadline set by Congress for ratification had "lapsed without ratifications from the requisite thirty-eight States," and actions taken by state legislatures after that deadline could "not complete the ratification of the amendment." *Ratification of the ERA*, at 24, 37.[1] Relying on that advice, the Archivist of the United States had not certified the adoption of the ERA or published it as part of the Constitution.

### B. Prior Proceedings

1. On June 20, 2023, Plaintiff brought this suit challenging the constitutionality of the Selective Service registration requirement in the district court.[2] Plaintiff alleges that he is required to register under the MSSA, but he has "knowingly and willfully refused" to do so. Doc. 51. ¶¶ 21-23. The complaint asserts that the registration requirement is unconstitutional under the ERA, which it refers to as the "28th Amendment," and the Fifth Amendment. *Id.* ¶¶ 52-83.

---

[1] In a subsequent opinion not relevant here, the Office of Legal Counsel noted that its 2020 opinion "does not preclude" either "the House or the Senate from taking further action regarding ratification of the ERA" or "judicial consideration of the pertinent questions." *Effect of 2020 OLC Opinion on Possible Congressional Action Regarding Ratification of the Equal Rights Amendment*, 46 Op. O.L.C., slip op. at 2-3 (2022), https://perma.cc/H4ZS-GP3G.

[2] The parties consented to magistrate judge jurisdiction. *See* 28 U.S.C. § 636(c). Because this appeal arises from the grant of a motion to dismiss, the facts in plaintiff's operative complaint (Doc. 51) are assumed to be true.

While this suit was pending, *see* Mot. 2, plaintiff applied for a Temporary Summer Student Program internship with the Nuclear Regulatory Commission (NRC). The NRC tentatively selected plaintiff for an internship, but it informed him that, in order to receive a final offer, he must (among other things) register for the Selective Service or provide an exemption. Doc. 67-1. To date, plaintiff has done neither. Plaintiff also has not committed to accepting any internship offer, as he would decline an offer if he "receive[s] a better offer from another employer." Doc. 52-1, ¶ 16; *accord* Doc. 51, ¶ 48. Upon being told by the NRC that he would need to register to receive a final offer, Plaintiff moved for a temporary restraining order. Doc. 57.

2. The district court dismissed the complaint for failure to state a claim and denied the motion for a TRO. Doc. 61. The court observed that plaintiff cited no judicial authority supporting the proposition that the ERA had been ratified, *id.* at 5, and held that plaintiff "cannot state a claim for relief under a constitutional amendment that does not exist," *id.* at 6.[3] The court further noted that plaintiff concedes that precedent forecloses his claims pleaded in the alternative under the Fifth Amendment. *Id.* at 3 n.1.

---

[3] The district court's order declined to address plaintiff's standing. Doc. 61, at 3 n.2. Plaintiff's motion in this Court does not set forth his basis for asserting standing.

After noticing this appeal, plaintiff sought from the district court an injunction pending appeal to prevent the NRC from revoking his tentative selection for the internship. Doc. 64. The district court denied that motion on January 25, 2024. Doc. 68. The court held that plaintiff failed to show any likelihood of success on the merits; that plaintiff had not established irreparable harm, "especially" because he might not even accept the NRC internship; and that the equities favored the government, as any delay in the NRC hiring process "would likely unfairly trickle down to other qualified candidates." *Id.* at 2.

3. On January 29, 2024, plaintiff sought an emergency injunction pending appeal from this Court. That motion requests relief by February 9, 2024, because the NRC voluntarily has agreed not to rescind his provisional selection for the internship before then. Mot. 3.

## ARGUMENT

To obtain the extraordinary remedy of an injunction pending appeal, plaintiff must establish that his "claims are likely to prevail, that denying [him] relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S.14, 16 (2020) (per curiam). An injunction pending appeal "demands a significantly higher justification" than a stay because "an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Me. PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted). Plaintiff therefore

must make a "strong showing" that he will prevail on the merits. *Roman Catholic Diocese*, 592 U.S. at 16.

## I. Plaintiff is unlikely to succeed on the merits.

Plaintiff principally contends that the Selective Service's registration requirement violates the ERA. But as the district court recognized, the ERA was never ratified. Doc. 61, at 5-6. All agree that the congressionally established deadline for ratification elapsed before three-fourths of the States ratified the proposed amendment, and no court has ever recognized its ratification. *See, e.g., Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023).

A. 1. The congressionally established deadline for the ERA lapsed long before the purported 38th ratification occurred in 2020. Thus, the only way that the ERA could have become effective is if "the deadline was somehow invalid in the first place." *Ratification of the ERA*, at 12. The Supreme Court has made clear that Congress has the constitutional authority to set the deadline for ratification, foreclosing the contrary arguments offered by plaintiff.

Article V expressly empowers Congress to select a mode of ratification—whether by State legislatures or conventions—for proposed Constitutional amendments. The Supreme Court has explained that a ratification deadline is "a matter of detail which Congress may determine as an incident of its power to designate the mode of ratification." *Dillon v. Gloss*, 256 U.S. 368, 376 (1921). The Court accordingly rejected a challenge to the validity of the Eighteenth Amendment

7

on the ground that it included a time limit for ratification. *See id.* at 370-71; *see also Coleman v. Miller*, 307 U.S. 433, 452 (1939) (noting that *Dillon* "held that the Congress in proposing an amendment may fix a reasonable time for ratification").

That principle is confirmed by the Supreme Court's 1982 decision that the controversy regarding Congress's extension of the ERA's deadline became moot when the extended deadline expired. After the district court held that Congress lacked the power to extend the initial deadline set in the proposing clause, *Idaho v. Freeman*, 529 F. Supp. 1107, 1153 (D. Idaho 1981), the federal government and others sought immediate review in the Supreme Court. The Court granted certiorari before judgment, but the June 1982 deadline expired before the case could be argued. The Solicitor General urged the Court to dismiss the case as moot because "the Amendment has failed of adoption no matter what the resolution of the legal issues presented." Memorandum for the Administrator of General Services Suggesting Mootness at 3, *National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982) (Nos. 81-1282 et al.). Citing that filing, the Court vacated the district court's judgment and remanded the case with instructions to dismiss the complaints as moot. *National Org. for Women*, 459 U.S. at 809. That action necessarily implies that the ratification deadline had legal effect: were it otherwise, a live controversy would have remained because additional State ratifications could have caused the ERA to reach the requisite threshold.

Plaintiff disputes these principles by attempting to distinguish deadlines contained in the proposing clause from those contained in the text of the amendment

8

itself, arguing that only the latter are valid. Mot. 9-13. There is no legal salience to Congress's choice of where to place the deadline. *Ratification of the ERA*, at 18-24; *see also Illinois*, 60 F.4th at 719. As noted, Congress's power to set a ratification deadline is "incident of its power to designate the mode of ratification." *Dillon*, 256 U.S. at 376. Congress has specified the mode of ratification in the proposing clause for every proposed constitutional amendment since the First Congress. *Ratification of the ERA*, at 14-15 & n.15. A ratification deadline is therefore properly included in the proposing clause. *See Coleman*, 307 U.S. at 452 (looking to whether Congress included a "limitation of time for ratification . . . either in the proposed amendment or in the resolution of submission").

Plaintiff mistakenly argues that *United States v. Sprague*, 282 U.S. 716 (1931), requires any deadline to be included in the proposed amendment's text. Mot. 16. *Sprague* simply held that Congress may choose to submit a proposed amendment for ratification by either State legislatures or conventions, regardless of the proposed amendment's content. 282 U.S. at 732. That decision did not address a ratification deadline, nor did it restrict how or where Congress could designate the mode of ratification.

2. Even if plaintiff could show that the ERA's ratification deadline was inoperative, he cannot prevail without showing that several States' attempts to rescind their ratification of the ERA also were ineffective. He has made no effort to do so, offering no argument about whether the Constitution permits a State to revoke an

9

earlier ratification. Absent that showing, he cannot demonstrate any likelihood of success.

B. Even assuming the ERA had been ratified, plaintiff does not explain why that amendment would forbid the challenged registration requirement. The Supreme Court held that the registration requirement is not unconstitutional sex-based discrimination under the equal protection component of the Fifth Amendment's Due Process Clause. *Rostker v. Goldberg*, 453 U.S. 57 (1981). Plaintiff makes no effort to show that the ERA would impose a different standard, to articulate what that standard would be, or to demonstrate why that new standard would require a different result. That forfeiture is an independently sufficient ground to hold that plaintiff has failed to show the requisite likelihood of success on the merits. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) (noting that arguments "omitted from the opening brief are deemed forfeited").

## II. The remaining equitable factors favor the government.

Plaintiff's failure to establish a likelihood of success on the merits is sufficient to deny his motion. *See, e.g.*, *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1240 (9th Cir. 2023) ("Because plaintiffs fail to show any likelihood of success on any of their claims, we have no need to address any of the remaining [preliminary injunction] factors."). But as the district court held, plaintiff also cannot satisfy the remaining equitable factors necessary to obtain an injunction. Doc. 68, at 2. He has not

10

established any irreparable injury, and an injunction would harm the government and the public interest.

    A. Plaintiff has not shown that he would suffer any irreparable harm absent an injunction. As an initial matter, plaintiff's reliance "on the merits of his constitutional claims" (Mot. 15) fails for the reasons discussed above.

    Plaintiff's invocation (Mot. 15-16) of various cases regarding discharges from employment are inapposite for multiple reasons. Most significantly, plaintiff has repeatedly stated that he would not necessarily accept the NRC internship even if he received a final offer. Doc. 52-1, ¶ 16; Doc. 51, ¶ 48; *see also* Mot. 15-18 (not asserting that plaintiff would accept the offer). Plaintiff's admission (Doc. 51, ¶ 48) that he would voluntarily forego the NRC internship if his "circumstances" change or if he receives "a better offer from another employer" precludes any argument that the loss of this opportunity constitutes irreparable injury. These statements also place plaintiff in a substantially different from position from a discharged employee seeking to return to her former job. In any event, plaintiff's assertion of stigmatic harm arising from "discrimination" is misplaced. Mot. 15-16. Plaintiff has not shown that he experiences any stigma by being subject to a longstanding statutory requirement that the Supreme Court has upheld against claims of sex-based discrimination. *See Rostker*, 453 U.S. at 72.

    B. Any injunction will irreparably harm the government and the public interest. The NRC has determined that it will not revoke plaintiff's tentative selection for the

internship until February 9 to allow orderly resolution of this motion. Further delay will threaten the NRC's ability to select another candidate for the internship and complete the personnel security processes required by the Atomic Energy Act of 1954. *See* 42 U.S.C. § 2165(b). The NRC has a strong interest in moving forward with the selection process and hiring a qualified candidate. *Cf. Sampson v. Murray*, 415 U.S. 61, 83 (1974) (holding that courts must "give serious weight to the obviously disruptive effect" of granting temporary relief to a discharged employee).[4] And whatever equities plaintiff may have in obtaining that internship, the interests of other qualified candidates—who have properly completed the application and prerequisites for the internship—are at least as strong. Keeping the position open indefinitely while this appeal is pending would disadvantage those other applicants unnecessarily.

Plaintiff tacitly concedes (Mot. 20) that the government also suffers irreparable injury from an inability to enforce its duly enacted laws. *See Maryland v. King*, 567 U.S.

---

[4] Plaintiff indicates that the NRC had "actual knowledge" of his Selective Service registration status based on its application. Mot. 17. In fact, plaintiff's application incorrectly stated that he had obtained an exemption from registration. *See* Doc. 52-1, ¶ 11 (stating that plaintiff "answered yes" to a question asking whether he had an exemption from registration based on his belief that the registration requirement is unconstitutional under the ERA). The bases for exemptions are set forth in 50 U.S.C. § 3806; plaintiff nowhere contends that he has obtained such an exemption, and he appears to admit that he is ineligible to obtain one. *See* Doc. 30-1, ¶ 5. Plaintiff's motion also states (at 17) that he "mentioned this suit" during his NRC interview. That assertion is unsupported by the cited record material. The first indication in the record that the NRC was aware of this lawsuit was in January 2024, after plaintiff was offered a position and after the NRC requested that he provide information necessary to finalize his employment.

1301, 1303 (2012) (Roberts, C.J., in chambers). Plaintiff mistakenly suggests that the principle does not apply here because *Rostker* "is due to be overruled." Mot. 20. This Court remains bound by *Rostker*'s holding unless and until the Supreme Court overrules it. *See Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 136 (2023) (holding that a court must follow Supreme Court precedent "even if [it] thinks the precedent is in tension with some other line of decisions" (quotation marks omitted)); *see also National Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549 (5th Cir. 2020) ("Th[e] holding [of *Rostker*] is controlling on this court."), *cert. denied*, 141 S. Ct. 1815 (2021). The government therefore would suffer irreparable injury from an injunction pending appeal.

## CONCLUSION

For the foregoing reasons, the emergency motion for an injunction pending appeal should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
THOMAS PULHAM

*s/ Simon C. Brewer*
SIMON C. BREWER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7529*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5367*
   *Simon.C.Brewer@usdoj.gov*

February 2024

## CERTIFICATE OF COMPLIANCE

I certify that this response to plaintiff-appellant's motion complies with the requirements of Circuit Rule 27-1(1)(d), because it does not exceed 20 pages.

                                                      *s/ Simon C. Brewer*
                                                      Simon C. Brewer

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. Service will be accomplished by the ACMS system.

*s/ Simon C. Brewer*
Simon C. Brewer