No. 24-369
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

VIKRAM VALAME,

*Plaintiff-Appellant*,

v.

JOSEPH R. BIDEN, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-03018-NC
Hon. Nathanael Cousins

**APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR
AN INJUNCTION PENDING APPEAL**

Vikram Valame
*Pro Se*
4039 2nd Street, Palo Alto, California
(208) 994-3067
vik.valame@gmail.com

*Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................2

ARGUMENT .........................................................................................................1

      A.      Standard of Review...........................................................................1

      B.      The Merits .........................................................................................2

      C.      The Equities......................................................................................6

CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)................2

*Am. Fed'n of Gov't Emps. Nat'l Council, 118-ICE v. Fed. Labor Relations Auth.*, 926 F.3d 814 (D.C. Cir. 2019)................................................................................4

*Coleman v. Thompson*, 501 U.S. 722 (1991)......................................................9

*Dillon v. Gloss*, 256 U.S. 368 (1921) ...................................................................2

*Elrod v. Burns*, 427 U.S. 347 (1976)....................................................................7

*Gratz v. Bollinger*, 539 U.S. 244 (2003)...............................................................8

*Heffernan v. City of Paterson*, 578 U.S. 266 (2016)............................................9

*National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982) .............................4

*Obergefell v. Hodges,* 576 U.S. 644 (2015)..........................................................8

*Respect Me. PAC v. McKee*, 562 U.S. 996 (2010)................................................2

*Roman Catholic Diocese of Brooklyn v. Cuomo,* 592 U.S.14 (2020)....................2

*Sampson v. Murray*, 415 U.S. 61 (1974) .............................................................9

*United States v. Zubaydah*, 142 S. Ct. 959 (2022)..............................................10

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021)......................................6

*Wisconsin Dept. of Revenue v. Wrigley Co*..........................................................4

## OTHER AUTHORITIES

116 Cong. Rec. 28028–29 (1970) (statement of Rep. Chisholm) ...........................7

J. JAMESON, A TREATISE ON CONSTITUTIONAL CONVENTIONS 632 (1887) ...................................................................................................................6

*Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. (2020), https://perma.cc/Q56X-KQ7Z...........................................................................3

*Statement From President Joe Biden on Equal Rights Amendment Centennial*, August 26th, 2023, available at www.whitehouse.gov/briefing-room/statements-releases/2023/08/26/statement-from-president-joe-biden-on-equal-rights-amendment-centennial/ .......................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. XXVIII §1................................................................................7

U.S. Const. Art. VI ...................................................................................................7

III

# ARGUMENT

The Government's Response confirms that preliminary relief is warranted in this case. Far from refuting the merits of Appellant's motion, the government *does not dispute* that the district court's reliance on certification was erroneous. Instead, Appellees rely on an inapposite sentence in *Dillon v. Gloss*, 256 U.S. 368, 376 (1921), thoroughly distinguished in Appellant's initial papers and fragments of non-precedential decisions. Defendants' equitable concerns are also unavailing, as they rely on mischaracterizations of the relief requested by Appellant and lack support in the record. The Motion for Injunctive Relief Pending Appeal should be granted.

## A. Standard of Review

It is unclear whether the government disputes that the "serious questions" standard applies to Appellant's motion. The government cites a pair of Supreme Court decisions dealing with requests for emergency injunctive relief in that Court. *See Roman Catholic Diocese of Brooklyn v. Cuomo,* 592 U.S.14, 16 (2020) (per curiam); *Respect Me. PAC v. McKee*, 562 U.S. 996, 996 (2010). Neither decision purported to displace this Court's precedent applying the "serious questions" standard, which continues to bind this panel. *See* e.g., *Alliance for the Wild Rockies*

1

*v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("the 'serious questions' approach survives *Winter*).

### B. The Merits

While most of the Government's arguments were refuted in Appellant's Motion, seven points warrant further discussion.

*First*, it is undisputed that the district court erred in relying on the Archivist's refusal to certify the ERA to dismiss Appellant's claims. Motion at 6-7. As noted in Appellant's initial motion, this error of law infected the entirety of the District Court's analysis and demonstrates that Plaintiff is likely to succeed in his appeal.

*Secondly*, the government concedes that the "proposing clause" of an amendment does **not** become part of the constitutional text when ratified by the states. Opposition at 2. The proposing clause of an amendment therefore cannot "amend the effect that Article V would otherwise have" on an amendment ratified by three-fourths of the states in the same way that a textual deadline or delay in effectiveness operates. *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C., slip op. at 22 (2020), https://perma.cc/Q56X-KQ7Z. This distinction alone proves that there is "legal salience" to the location of the deadline.

*Thirdly*, Defendants do not dispute that their position would vest extraordinary control over the ratification process into Congress. Indeed,

2

Defendant Biden has publicly declared that bare majorities in Congress can waive the supposedly "binding" deadline contained in the ERA proposing clause. *Statement From President Joe Biden on Equal Rights Amendment Centennial*, August 26th, 2023, available at [www.whitehouse.gov/briefing-room/statements-releases/2023/08/26/statement-from-president-joe-biden-on-equal-rights-amendment-centennial/](www.whitehouse.gov/briefing-room/statements-releases/2023/08/26/statement-from-president-joe-biden-on-equal-rights-amendment-centennial/). Since everyone agrees that the *text* of proposed Amendments cannot be altered by Congress, this position also relies on assigning "legal salience" to the location of the deadline.

*Fourth,* the Supreme Court's dismissal of *National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982) for mootness cannot support Defendants. Summary vacatur for mootness is a doctrine "specifically aimed at preventing a decision subsequently mooted 'from spawning any legal consequences,'" *Am. Fed'n of Gov't Emps. Nat'l Council, 118-ICE v. Fed. Labor Relations Auth.*, 926 F.3d 814, 819 n.3 (D.C. Cir. 2019). Attempting to divine legal answers from such an unreasoned order would contradict the rationale behind the practice. The Supreme Court recognized as much in *Wisconsin Dept. of Revenue v. Wrigley Co.*, which found that a dismissal of a granted petition for certiorari on mootness grounds "did not . . . have any legal significance". 505 U.S. 214, 221 (1992). This court should adhere to that decision.

Even if this Court were to disregard *Wrigley* and consider *N.O.W. v. Idaho*, there is no indication that the Supreme Court considered or assumed the validity of

3

the deadline. The Supreme Court's citation to the Solicitor General's brief may merely reflect the fact that the Solicitor General was the first to file a suggestion of mootness upon the expiry of the extended deadline. Additionally, the Supreme Court issued a stay of the Idaho District Court declaratory judgment, despite there being no coercive order to "stay". This indicates that the Court may have been more concerned about the effect of the deadline extension on ongoing ratification deliberations, and not any question regarding the original ERA or state recessions.[1]

*Fifth*, Appellees contend that Congress "has specified the mode of ratification in the proposing clause for every proposed constitutional amendment". Opposition at 9. This statement is true *only* if this Court rejects the government's position. After all, Congress included a deadline in the text of the 18th, 20th, 21st, and 22nd Amendments. If the government is right that each of these deadlines constituted the "mode" of ratification in the same sense that ratification by legislatures or conventions is the mode of ratification, then it is simply not true that the mode of ratification is always contained in the proposing clause of an amendment. In contrast, Plaintiff-Appellant's position—that a "mode" of ratification is limited to

---

[1] To Appellant's knowledge, the *N.O.W. v. Idaho* docket is not publicly available.

4

ratification by legislatures or by conventions—is consistent with every amendment including the 18th Amendment considered in *Dillon*.

*Sixth*, the government asserts that Plaintiff has failed to prove that state recissions are ineffective, and therefore cannot secure relief. This argument fails. Plaintiff argued that state recissions were ineffective in his Motion for Summary Judgment below. Doc. 30, 12-15. Instead of disputing this point, the government chose only to argue that the validity of recissions was a political question. Doc 38, 11-12. "Failure to argue a point in a motion for summary judgment qualifies as failing to raise that issue below." *Villanueva v. California*, 986 F.3d 1158, 1164 n.4 (9th Cir. 2021). Waived arguments cannot support affirmance.

In any event, recissions are not permitted by Article V. Judge Jameson (among others) explains why:

> The power of a State legislature to participate in amending the Federal Constitution exists only by virtue of a special grant in the Constitution. . . . So, when the State legislature has done the act or thing which the power contemplated and authorized—when the power ,[to ratify] has been exercised—it, ipso facto, ceases to exist. . ..

See J. JAMESON, A TREATISE ON CONSTITUTIONAL CONVENTIONS 632 (1887).

*Seventh*, the government asserts, for the first time in this entire case, that the sex-selective draft could survive *even if* the ERA was properly ratified. This argument borders on frivolous. It was waived below. Doc. 47, at 4 (mentioning the

5

issue, and then declining to argue it). Plaintiff *certainly* did not "forfeit" it on appeal, *see* Motion at 4. The Equal Rights Amendment also clearly invalidates the sex-discriminatory draft. The plain text creates an absolute bar to discrimination based on sex by any Government, far more restrictive than the deferential version of intermediate scrutiny used by the Supreme Court in *Rostker*. *See* U.S. Const. Amend. XXVIII §1. The history of the ERA provides further support for this conclusion about its original public meaning. *See* 116 Cong. Rec. 28028–29 (1970) (statement of Rep. Chisholm) ("the selective service law would have to include women").

### C. The Equities

The most important point on the equities of this case is that the government does not dispute that Plaintiff is entitled to an injunction if this Court concludes he is likely to succeed on the merits. Any violation of constitutional rights "for even minimal periods of time" constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Any countervailing interest in enforcing federal law must also yield to the "supreme Law of the Land" that is the Constitution. U.S. Const. Art. VI.

In any event, the government's equitable arguments rely primarily on mischaracterizations of the relief requested by Appellant's Motion and factual assertions unsupported by the record. They should be rejected.

*Firstly*, Plaintiff's statement that he would accept a better offer from another employer does not grant the government a license to discriminate against him because of his sex. Defendants cite no case to support their position, which conflicts with the rule in equal treatment cases that injury results from "denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). Plaintiff's statements do not distinguish him from other discharged employees, who would presumably be just as willing to forgo reinstatement if they received a better offer from a non-discriminatory firm, despite—or perhaps because of—the stigmatic injuries caused by discrimination.

*Secondly*, Plaintiff's stigmatic injuries do not vanish because sex-selective discrimination against men has existed for several decades. *See Obergefell v. Hodges,* 576 U.S. 644, 673 (2015) ("new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged"). Such a view would require believing that the massive, intergenerational, injuries asserted in *Brown v. Board of Education* were trivial because the evil of Jim Crow had existed for ninety years before the decision was handed down.

*Thirdly*, the government asserts that an injunction here would harm other qualified applicants. Opposition at 12. However, the government has failed to

7

produce *any* admissible evidence that other qualified applicants to Plaintiff's position exist, or that failing to obtain an employee will inflict "irreparable" harm to any government operations. The government also misunderstands the relief requested by this Motion. Plaintiff is **not** requesting that the government keep his position "open indefinitely". Rather, an injunction should require the government to process Plaintiff's OF-306 form in the same way it processes forms submitted by women applicants. If the government requires a binding commitment to employment by some date, Plaintiff will provide one alongside every other applicant for federal service.[2] *Sampson v. Murray*, 415 U.S. 61 (1974), is inapplicable because the plaintiff there pressed only regulatory claims and attempted to circumvent an ongoing administrative appeal process by filing suit.

*Fourth* and finally, the government invokes the generalized interest of a sovereign in enforcing its laws. Opposition at 13. This argument is in considerable

---

[2] The government had actual notice of Plaintiff's lawsuit and registration status well before it decided to offer him employment. *See* Motion at 17. Additionally, under basic principles of agency law, the negligence and knowledge of an attorney is imputed to a client. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The government knew of Plaintiff's employment application and lack of registration on December 13th, 2023, when Plaintiff verbally informed Attorney Andrew J. Rising of those facts, and received notice in writing on December 20th, 2023, when Plaintiff filed his First Amended Complaint. The Supreme Court has relied on these principles to dismiss many death row habeas petitions, and what's good for the goose must be good for the gander. *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016).

8

tension with the government's Supplemental Brief on Article III Standing (Doc. 54), where the government emphatically claimed that the Military Selective Service Act has gone unenforced for some thirty-eight years as part of longstanding executive branch policy. Doc. 54 at 3-5. The government further disclaimed any interest in enforcement because The Final Report of the National Commission on Military, National, and Public Service (March 2020), had concluded that sex-discriminatory enforcement of the Military Selective Service Act was contrary to the public interest. At this stage in the litigation, the government cannot credibly invoke an interest in enforcement it has repeatedly disclaimed.

The government's argument is even weaker because *Rostker*'s foundation—the inability of women to serve in combat—has vanished. Of course, the *holding* of *Rostker*—that the Fifth Amendment does not prohibit sex-selective registration—is binding on this court. However, "[t]here comes a point where we should not be ignorant as judges of what we know to be true as citizens." *United States v. Zubaydah*, 142 S. Ct. 959, 985 (2022) (Gorsuch J., Dissenting). *Rostker* is due to be abandoned, and this court should account for this when evaluating the government's claims of "irreparable harm".

## CONCLUSION

This Court should enjoin the government from discriminating against Plaintiff-Appellant Vikram Valame based on his sex with respect to government employment, pending a final disposition of this appeal.

Date:  Wednesday, February 7th, 2024

<u>/s/ Vikram Valame          </u>.
*Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-369

I am the attorney or **self-represented party**.

**This brief contains 2012 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). This brief complies with the appellate rules because it contains 10 Pages or less of argument.

**Signature:** *s/Vikram Valame*

**Date: February 7th, 2024**