No. 24-369

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

VIKRAM VALAME,

*Plaintiff-Appellant*,

v.

JOSEPH R. BIDEN, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-03018-NC
Hon. Nathanael Cousins

EXCERPTS OF RECORD
Volume 1 of 1

Vikram Valame
*Pro Se*
4039 2nd Street, Palo Alto, California
(208) 994-3067
vik.valame@gmail.com

*Appellant*

# INDEX

Withdrawal of Student Internship Offer,
ACMS Docket No. X (delivered February 12, 2024)……………………………..…3

Supplemental Declaration of Vikram Valame in Support of TRO
Docket No. 57 (filed January 19, 2024)……………………………………………..…4

Supplemental Declaration of Vikram Valame
Docket No. 52 (filed December 19, 2023)…………………………………………..…7

First Amended Complaint
Docket No. 51 (filed December 19, 2023)…………………………………………..11

Transcript of Proceedings held on 12/13/23 before Magistrate Judge Cousins
Docket No. 72 (proceedings on December 13, 2023)………………….....……….23

Declaration of Vikram Valame
Docket No. 30 (filed September 15, 2023)…………………………………………..83

Order Granting Defendants' Motion to Dismiss
Docket No. 61 (filed January 20th, 2024)………………………………………....87

District Court Docket Sheet……………………………………………………….....93



**UNITED STATES**
**NUCLEAR REGULATORY COMMISSION**
WASHINGTON, D.C. 20555-0001

February 12, 2024

Vikram Valame
4039 2nd Street
Palo Alto, CA 94306

Dear Vikram:

This is to inform you that the U.S. Nuclear Regulatory Commission (NRC), Office of the Chief

Human Capital Officer, is withdrawing its tentative offer of employment as a Summer 2024

Student Intern. The NRC's policy regarding Selective Service registration and next steps to

continue with the internship offer were shared with you via email on January 18, 2024. As you

have not submitted an updated OF-306 confirming your registration for the Selective Service,

we are unable to continue with the offer as you are not eligible for employment with the NRC.

Thank you for your interest in the NRC's Summer Student Internship Program, and we wish you

success in your future endeavors.

Sincerely,

*Debby Hackett*

Deborah Hackett
Senior Human Resource Specialist
Workforce Management and
  Benefits Branch
Human Resources Operations
  Policy Division
Office of the Chief Human Capital Officer

cc: Karen Cobbs

ER-3

1    Vikram Valame

2    4039 2nd Street Palo Alto, California 94306

3    (208) 994 3067

4    vik.valame@gmail.com

5

6

7                    **UNITED STATES DISTRICT COURT**
8                   **NORTHERN DISTRICT OF CALIFORNIA**

9                                        )   Case Number: 5:23-cv-03018-NC
     Vikram Valame                       )
10                                       )   **SUPPLEMENTAL DECLARATION OF**
                    Plaintiff,           )   **VIKRAM VALAME**
11                                       )
          vs.                            )   **IN SUPPORT OF PLAINTIFF'S MOTION**
12                                       )   **FOR A TRO**
     Joseph R. Biden, President of the United   )
13   States, et. al.                     )
                                         )
14                  Defendants.          )
                                         )
15                                       )
                                         )
16                                       )
                                         )
17                                       )
                                         )
18                                       )
                                         )
19                                       )
                                         )
20   _____ )

21

22        I, *Vikram Valame* declare as follows:

23        1.    I am the *pro se* plaintiff in this lawsuit against the United States Federal
24   Government and its officials.

25        2.    I have personal knowledge of all facts stated in this declaration, and if called to
26   testify, I could and would testify competently thereto.

27        3.    I have knowingly and willfully refused to register for the draft despite the
28   purported registration requirement contained in the Military Selective Service Act and its

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT of Plaintiff's Motion for
a TRO

CASE NO. 5:23-cv-03018-NC; PAGE 1 OF 3 [*JDC TEMPLATE Rev.2015*]          ER-4

implementing regulations. I will not obey the registration obligation in the future unless a court finally finds that I am obligated to.

4.    In early December, the Nuclear Regulatory Commission contacted me to conduct a panel interview for my internship application. I conducted the interview shortly before leaving for Germany. The interview went well, and a few days later the NRC contacted me and asked for two U.S. Citizen references, which I provided.

5.    On January 11th, 2024, Debby Hackett from the NRC contacted me and informed me that I had been tentatively selected for the NRC internship in the Office of Administration's Acquisition Management Division. Hackett informed me that after I filled out the OF-306 declaration for federal employment and completed some other paperwork, I would receive a final offer.

6.    I can provide a copy of this email correspondence if requested. I have already provided a copy to the government's lawyers.

7.    The OF-306 document required me to disclose my registration status with the Selective Service under penalty of perjury.

8.    I clicked "no" for registration, and then filled out a box asking for an explanation. I explained that the MSSA was unconstitutional, and that I was therefore not required to register. I then filled out the rest of the form by clicking "no" on several criminal background questions and signing it electronically.

9.    On January 18, 2024, Debby Hackett contacted me and told me that that the NRC's policy prohibited me from gaining employment absent draft registration. Hackett said that if I did not resubmit the OF-306 with a "yes" to registration status my offer would be revoked.

10.   Hackett included the following policy in her email: "A male born after December 31, 1959, who was or is required to register under section 3 of the Military Selective Service Act, and who is not so registered or knowingly and willfully did not so register before the requirement terminated or became inapplicable to him, is not eligible for employment with the NRC"

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for a TRO

CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 3 [*JDC TEMPLATE Rev.2015*]

ER-5

11.     I provided email notice to Defendants counsel that I would file an application for a TRO in response to this unlawful discrimination. Defendants' counsel acknowledged my notice.

12.     I am now even more anxious and frustrated about my position in society and my future career prospects. Following the internship offer, I had discussed acquiring accommodations in Washington D.C., arranged a means of making initial payments for housing at Georgetown University, and made plans to visit the Supreme Court in late June for its opinion announcements from the bench. The government has forced me to put these plans on hold.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on January 19th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

Phone Number: (208) 994 3067

2nd Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for a TRO

CASE NO. 5:23-cv-03018-NC; PAGE 3 OF 3 [*JDC TEMPLATE Rev.2015*]

ER-6

Vikram Valame

4039 2nd Street Palo Alto, California 94306

(208) 994 3067

vik.valame@gmail.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Vikram Valame

          Plaintiff,

   vs.

Joseph R. Biden, President of the United States, et. al.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 5:23-cv-03018-NC

**SUPPLEMENTAL DECLARATION OF VIKRAM VALAME**

**IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, *Vikram Valame* declare as follows:

1.    I am the *pro se* plaintiff in this lawsuit against the United States Federal Government and its officials.

2.    I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3.    I have knowingly and willfully refused to register for the draft despite the purported registration requirement contained in the Military Selective Service Act and its

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 1 OF 4 [*JDC TEMPLATE Rev.2015*]

ER-7

implementing regulations. I will not obey the registration obligation in the future (unless ordered to do so by a court).

4.      I will not obey the purported notice and address updating requirements of the Military Selective Service Act or its implementing regulations (unless ordered to do so by a court).

5.      On Thursday December 14th, 2023, at 11:47 a.m., I asked Andrew J. Rising, Andrew E. Carmichael, and Michael J. Gerardi via email if the government would be willing to disavow enforcement of the Military Selective Service Act against me during the pendency of my lawsuit.

6.      On Friday December 15th, 2023, at 2:07 P.M., Andrew J. Rising declined my offer via email.

7.      I can provide copies of this email exchange if required.

8.      While studying in Germany, I applied to the "Temporary Summer Student" program with the Nuclear Regulatory Commission. The program offers paid work opportunities at the NRC's headquarters in Rockville, Maryland. I believe that I applied in either late September or Early October.

9.      The Nuclear Regulatory Commission's Website & job application lists the job requirements as (1) Having United States Citizenship, (2) be attending an accredited college in pursuit of a Bachelors, Masters, or Doctoral Degree, (3) have a GPA of at least 2.85, and (4) have completed at least 30 semester-hours of work by the summer of 2024.

10.     I am a United States Citizen attending an accredited college (Northeastern University). Based on my academic performance this semester and previously, I believe I will almost certainly obtain a 2.85 GPA in 30 semester-hours of classes by the summer of 2024.

11.     The online application to apply for the NRC position asked (yes or no) whether I had registered with the Selective Service and whether (yes or no) I had an applicable exemption from registration. I truthfully answered "no" to the registration question because I had not

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment
CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 4 [*JDC TEMPLATE Rev.2015*]

registered. I truthfully answered yes to the exemption question, because the 28th Amendment exempts me from the unlawful registration requirement.

12. While studying in Germany, I applied for the Defense Counterintelligence and Security Agency's "Student Intern: Mission Support" program. The program offers paid work opportunities in several locations around Washington D.C. I applied via email on November 13th, 2023.

13. The Defense Counterintelligence and Security Agency's application instructions included the following job requirements: (1) U.S. Citizenship, (2) Selective Service Registration, (3) a submitted resume, (4) willingness to undergo drug testing, (5) ability to report to an office on a regular basis, (6) suitability for federal employment as determined by a background check, (7) maintaining a security clearance, (8) Currently enrolled in an accredited undergraduate degree-seeking program in Fall 2024 with an expected graduation date of Spring 2025 or later, (9) have and maintain a 3.0 GPA or higher.

14. Although I cannot predict the results of a background check or security clearance registration process, I am not aware of any reasons why I would be recommended unfavorably for Federal Employment or a Security clearance. I expect to receive a GPA higher than 3.0 based on my academic performance and meet every other job requirement except Selective Service registration already.

15. I visited the Defense Counterintelligence and Security Agency's website after applying for the internship. Under a section for employment eligibility, the website stated that registration with the Selective Service was required for all men born after December 31st, 1959 and ever subject to a registration requirement.

16. Although I knew of the Selective Service registration requirement when I applied to these job positions, I did not apply for these positions for the sole or primary purpose of manufacturing standing in my pending lawsuit. I am genuinely interested in the work performed by both the Nuclear Regulatory Commission and the Defense Counterintelligence and Security

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment
CASE NO. 5:23-cv-03018-NC; PAGE 3 OF 4 [*JDC TEMPLATE Rev.2015*]

ER-9

Agency. If I am accepted into either of the positions I applied for, I anticipate taking the offer unless an unexpected development occurs, or I receive a better offer from another employer.

17.     The discriminatory registration requirements have caused significant anxiety in my mind over my role as a man in modern society. Not only am I anxious about the prospect of injury or death in War, I worry that my achievements and path to success are predetermined more by the coincidental alignment of chromosomes than the genuine work of myself or even my parents. The frustration I feel isn't necessarily that I will feel less success or prosperity overall, but that the method I use to pursue happiness is constricted by my sex.

18.     I have reviewed an uploaded PDF copy of the Selective Service System's response to a FOIA inquiry filed by USA Today regarding certain statistics about Registration enforcement. The Document appears to bear the insignia of the Selective Service System and a signature by an officer of the Selective Service System authorized to authenticate documents. I have attached the uploaded PDF from USA Today as Exhibit E attached to this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 19th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

Phone Number: (208) 994 3067

Supplemental DECLARATION of Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 4 OF 4 [*JDC TEMPLATE Rev.2015*]          ER-10

1  Vikram Valame

2  4039 2nd Street Palo Alto, California 94306

3  208-994-3067

4  vik.valame@gmail.com

5  Pro Se *Plaintiff*

6  ## UNITED STATES DISTRICT COURT

7  ## NORTHERN DISTRICT OF CALIFORNIA

8  ### *San Jose Division*

9

10         Vikram Valame ) Case Number: 5:23-cv-03018-NC
)
11         Plaintiff, )
)
12         vs. ) First Amended Complaint
)
13      **Joseph Robinette Biden**, in his )
official capacity as President of the United )
14  States; **Craig T. Brown**, in his official )
capacity as Acting Deputy Director of the )
15  Selective Service System; **Joel C.** )
**Spangenberg**, in his official capacity as )
16  Acting Director of the Selective Service )
System; **Steven L. Kett**, in his official )
17  capacity as Regional Manager of Region III )
of the Selective Service System; **The United** )
18  **States**; **Selective Service System**, an Agency )
of the United States; **Steven L. Kett**, in his )
19  personal capacity; **Ismail Ramsey**, in his )
official capacity as U.S. attorney for the )
20  Northern District of California; and **John** )
**Arbogast**, in his official capacity as Selective )
21  Service California State Director. )

22

23         Defendants.
_____

24

25  I, Vikram Valame (hereinafter "Plaintiff"), bring this action against Defendant agency Selective

26  Service System (hereinafter "SSS"), official Defendants President Joseph R. Biden, SSS Acting

27  Deputy Director Craig T. Brown, U.S. Attorney for the Northern District of California Ismail

28  Ramsey, SSS Acting Director Joel C. Spangenberg, and Regional Manager Steven L. Kett

(hereinafter "official defendants"), individual Defendant Steven L. Kett (hereinafter "Kett"), and

the United States Federal Government. Plaintiff requests injunctive, declaratory, and monetary relief requiring official defendants and agencies to treat women and men equally regarding registration for the military draft. Plaintiff requests nominal damages against defendant Kett for violation of plaintiff's constitutional rights.

## **Parties**

1. Plaintiff Vikram Valame is a natural person. Vikram is a male aged 18, U.S. resident, and U.S. citizen residing in the Northern District of California. Plaintiff has recently become required to register for the draft under the Military Selective Service Act (hereinafter "MSSA") due to reaching the age of 18.

2. Defendant SSS is an agency of the United States Federal Government. The SSS gathers and stores information on men subject to a potential draft under the MSSA. Male citizens and certain categories of male immigrants are required to register if they are between the ages of 18 and 25, inclusive. This registration is mandatory within 30 days of a male individual's 18th birthday. The SSS must be notified of any changes to the information provided on the draft registration, including an address change. According to a FY 2021 report by SSS, the registration rate for men aged 18 through 25 was 91%. Information collected by SSS is distributed to other entities within the United States Federal Government.

3. Defendant United States Federal Government is the Federal Government created by the Constitution of the United States.

4. Defendant Joseph Robinette Biden is the President and Commander-in-Chief of the United States. The President establishes the protocols of the selective service via proclamation pursuant to the MSSA. This defendant is sued in an official capacity.

5. Defendant Craig T. Brown is the Acting Deputy Director of the SSS. Craig T. Brown was appointed as an Acting Deputy Director to fill a vacancy in the SSS. Craig T. Brown administers the registration requirements outlined above nationwide. This defendant is sued in an official capacity.

6. Defendant Joel C. Spangenberg is the Acting Director of the SSS. Joel C. Spangenberg leads the national office of the SSS and is filling a vacancy in the position of Director of the SSS. Joel C. Spangenberg enforces the registration requirements outlined above nationwide. This defendant is sued in an official capacity.

7. Defendant Arbogast is sued in an official capacity. In Arbogast's official capacity, Arbogast acts as the California State Director of Selective Service. Arbogast enforces the registration requirements outlined above within the state of California.

8. Defendant Kett is sued in a personal and official capacity. In Kett's official capacity, Kett is the Regional Manager of Region III of the SSS. Region III includes the state of California for registration purposes. In Kett's personal capacity, Kett is a natural person residing in the state of Colorado and employed by the SSS.

9. Defendant Ismail Ramsey is the United States Attorney for the Northern District of California. Ismail Ramsey enforces criminal laws, including criminal sanctions for failure to register under the MSSA, in the Northern District of California. Ismail Ramsey also implements the federal prohibitions on the hiring of males who have not registered for the raft. Ismail Ramsey is being sued in an official capacity.

10. Each official defendant enforces and/or implements the sex-discriminatory requirements for Selective Service registration upon Plaintiff.

11. There is not (nor has there been) any other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint.

## Jurisdiction

12. Plaintiff brings this action under the Twenty-Eighth Amendment to the Constitution of the United States, which provides that "Equality of rights under the law shall not be denied or abridged by the United States or by any state on account of sex" U.S. Const., amend. XXVIII, §1.

13. This Court has jurisdiction over this action under Article III of the constitution because at least one defendant has caused concrete injury fairly traceable to the actions of that defendant redressable by this Court.

14. This Court has statutory jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution or Laws of the United States

15. This Court additionally has jurisdiction over this action because 28 U.S.C. § 1343 provides jurisdiction over actions enforcing constitutional guarantees of equal treatment under the law.

16. This Court additionally has jurisdiction to issue equitable relief to enjoin *ultra vires* action by Government officials under an equitable cause of action.

17. This Court additionally has jurisdiction to review SSS and official defendants' (sans Joseph R. Biden) unlawful actions under the Administrative Procedures Act grant of jurisdiction.

## Venue

18. Venue is proper in the Northern District of California under each clause of 28 U.S.C. § 1391(e)(1) because official defendant Ismail Ramsey resides in the Northern District of California, a substantial part of the acts or omissions giving rise to the claim arose within the Northern District of California, and because Plaintiff is a resident of the Northern District of California.

19. Intradistrict assignment is proper in San Jose under Civil Local Rule 3-2(e) because a substantial part of the acts or omissions giving rise to this complaint occurred in Santa Clara County.

## General Allegations

20. Plaintiff is harmed by the requirements to register for the draft. Plaintiff does not wish to spend time, postage money, cellular data, or other limited resources registering for the military draft.

21. Plaintiff is not a current member of the military, a student at military academies, or in any other way statutorily exempt from the draft.

22. Plaintiff is thus statutorily required to register for the draft.

23. Plaintiff has knowingly and willfully refused to register for the draft, despite his obligation to do so under the MSSA.

24. The MSSA implementing regulations require people subject to the unconstitutional draft
    eligibility criteria to notify defendant SSS within 10 days of any change in mailing
    address. That regulation can be found at 32 C.F.R.  Subtitle B, Chapter XVI, § 1621.1(a).

25. Plaintiff is harmed by the requirement to notify defendants of a change in mailing address
    because doing so requires the expenditure of time and money to pay for communications
    to the SSS. Plaintiff will not obey the notification requirement.

26. The 28th Amendment was ratified pursuant to Article V of the Constitution on or about
    January 15th, 2020. Under §3 of the 28th Amendment, the substantive provisions of the
    Amendment took effect two years after the date of Ratification.

27. The 28th Amendment, or the "Equal Rights Amendment" was proposed by 2/3 of the
    House of Representatives on October 12, 1971, and 2/3 of the Senate on March 22, 1972.
    The "Mode of Ratification" chosen by Congress was ratification by the legislatures of the
    states.

28. The 28th Amendment was subsequently ratified by the legislatures of ¾ of the states in
    the United States.

29. Because the SSS and other defendants presently enforce the draft registration
    requirements only on male citizens and immigrants, the registration requirements violate
    the 28th Amendment.

30. The 28th Amendment thus supersedes the decision of the Supreme Court of the United
    States in *Rostker v. Goldberg*, 453 U.S. 57. *Rostker* held, in response to a lawsuit from a
    group of men wishing to be excluded from the draft, that Congress had sufficient
    justification to discriminate between men and women for the purposes of draft
    registration under the equal protection component of the due process clause of the Fifth
    Amendment.

31. Although the National Commission on Military, National, and Public Service has
    concluded ending the male-only nature of draft registration would be in the best interests
    of the United States, no action has been taken to remove the sex-discriminatory draft
    requirements from Federal Law. See

https://www.volckeralliance.org/sites/default/files/attachments/Final%20Report%20-%20National%20Commission.pdf page 122 (130 of the PDF)

32. The United States Federal Government lacks a compelling interest in enforcing the male-only draft. Roughly doubling the pool from which the nation might obtain conscripts would improve military readiness, according to the National Commission. See https://www.volckeralliance.org/sites/default/files/attachments/Final%20Report%20-%20National%20Commission.pdf page 115 (123 of the PDF)

33. No congressional or executive factual analysis has been relied upon to counter the analysis presented in the National Commission's Final Report.

34. Defendant SSS has stated that failure to register by virtually any male "will result in referral to the department of Justice for possible investigation and prosecution", in addition to conferring lifetime ineligibility for certain state and federal benefits. See https://www.sss.gov/register/benefits-and-penalties/

35. The United States Federal Government's enforcement of a male-only draft is not narrowly tailored to serve a compelling governmental interest. Some women are more qualified than men subject to the draft even in combat-intensive roles. Almost 80% of U.S. military positions are non-combat roles that could be adequately filled by women.

36. Plaintiff is harmed by the sex-discriminatory requirements of the MSSA registration requirements because he is subject to criminal prosecution, fines, and imprisonment under 50 U.S.C. §§ 462(a) and 3811 based on unconstitutional registration and reporting requirements.

37. Defendants have <u>not</u> disclaimed enforcement of the MSSA through criminal and other process in litigation, or anywhere else.

38. Plaintiff is further independently harmed by the sex-discriminatory requirements of the MSSA because they deny him equal treatment under law to which he is entitled to under the 28th Amendment.

39. Plaintiff suffers serious stigmatic injury from the implicit view that he is expendable and required to defend his county on an unequal basis with his fellow citizens. Plaintiff has

suffered and is suffering frustration and significant anxiety about his role in society due the discriminatory classifications of the MSSA.

40. Plaintiff is further independently harmed by the sex-discriminatory requirements of the MSSA and implementing law 5 U.S.C. §3328 because these provisions deny him job opportunities provide by the federal government on a discriminatory basis.

41. 5 U.S.C. §3328 provides that Plaintiff, who knowingly and willfully failed to register under the MSSA, "shall be ineligible for appointment to a position within an executive agency".

42. Plaintiff recently filed two job applications to work within positions at Executive Branch agencies. One application was sent to the Nuclear Regulatory Commission (the "NRC") for their Temporary 89-Day Summer Student Internship, and the other was sent to the Defense Counterintelligence and Security Agency (the "DCSA") for work as a "Student Intern — Mission Support".

43. The NRC and DCSA are both executive branch agencies subject to 5 U.S.C. §3328.

44. The NRC written application asked whether plaintiff was registered for the Selective Service, and—if not—whether he fell within an applicable exception. Plaintiff truthfully stated that he was not registered, but that he was exempt from the registration requirement since the MSSA is unconstitutional.

45. Plaintiff conducted a panel interview with NRC staff members on December 8th, 2023.

46. The DCSA's website indicates under "eligibility" for employment that all male applicants born after 12-31-1959 must be registered with the Selective Service. *See* https://www.dcsa.mil/About-Us/Careers/Application-Process/

47. Both the NRC and DCSA student internship positions are paid postings. The internships also allow for potential competitive or non-competitive conversion into federal civil service positions after college graduation.

48. Plaintiff is seriously applying to these jobs. Plaintiff did not submit these job applications for the purpose of manufacturing standing in this case. If accepted at either job, Plaintiff will accept the offer of employment unless an unforeseeable change in material circumstances occurs or he receives a better offer from another employer.

49. Absent the MSSA's registration requirement, Plaintiff would be fully qualified to hold and work at the Federal Executive Branch jobs he has applied for.

50. Plaintiff is harmed by Defendants' imposition of an unequal playing field for applicants to these positions, even if the discriminatory regulations are not ultimately a "but for" cause of his rejection. *See Northeastern Fla. Chapter of the Associated Gen. Contractors of America v. Jacksonville,* 508 U.S. 656 (1993) at 666.

51. Plaintiff intends on filing further job applications to government internship positions in the near future.

### Claims for Relief

**Claim One: Declaratory Judgment against Official Defendants, The United States, and SSS**

52. Plaintiff realleges and incorporates all prior paragraphs as if set forth herein.

53. The Administrative Procedures Act provides a cause of action for declaratory relief against the United States, its Agencies, and its Officers acting *ultra vires*. The Administrative Procedures Act additionally waives sovereign immunity as to such claims.

54. By enforcing a male-only draft, Official Defendants, The United States, and SSS have violated Plaintiff's rights under the 28th Amendment to the constitution of the United States.

55. This court should thus issue a declaratory Judgment under 28 U.S.C. § 2201 finding enforcement of the MSSA against Plaintiff unlawful under the 28th Amendment to the Constitution of the United States.

### Claim Two: Injunctive Relief against Official Defendants, The United States, and SSS

56. Plaintiff realleges and incorporates paragraphs 1-51 as if set forth herein.

57. The Administrative Procedures Act provides a cause of action for injunctive relief against the United States, its Agencies, and its Officers for acting in excess of their authority. The Administrative Procedures Act additionally waives sovereign immunity as to such claims.

58. By enforcing a male-only draft, Official Defendants, The United States, and SSS have violated Plaintiff's rights under the 28th Amendment to the constitution of the United States.

59. Plaintiff does not request injunctive relief against the President of the United States. See Franklin v. Massachusetts 505 U.S. 788 at 802.

60. Due to the Sovereign Immunity of the United States and Official Defendants from retrospective monetary damages, there is no other adequate remedy for the infringement of Plaintiff's constitutional rights by these defendants.

61. Deprivation of constitutional rights is an irreparable injury, particularly because Plaintiff will be forced to suffer constitutional deprivation without foreseeable end due to the collateral consequences of failure to register.

62. This court should thus issue an injunction against official and agency defendants (and those acting in concert with them) prohibiting enforcement of the male-only draft registration policy as applied to Plaintiff, including any federal collateral consequences of failure to register.

### Claim Three: Administrative Procedures Act Vacatur

63. Plaintiff realleges and incorporates paragraphs 1-51 as if set out fully herein.

64. On July 18th, 1980, defendant SSS published a "Final rule" requiring certain actions by "A person required by the selective service law to register". This rule can be found at 32 C.F.R.  Subtitle B, Chapter XVI, § 1615.4.

65. Because the Selective Service Law (defined to include the MSSA under § 1602.21) method of determining who is required to register is unconstitutional under the 28th Amendment due to sex discrimination, the final rule incorporating the requirements of the Selective Service Law is itself contrary to constitutional privilege as laid out in § 706 of the Administrative Procedures Act.

66. In the same rule, defendant SSS proclaimed that people not required to register under the MSSA and its implementing proclamations were not required to register. Because the

MSSA unconstitutionally excludes women, this regulation (§ 1615.5) is also unconstitutional.

67. The regulations published in the federal register on July 18th, 1980 constitute final agency action.

68. This court should thus "set aside", under § 706 of the Administrative Procedures Act, the implementing regulations issued on July 18th, 1980 insofar as they apply or implement sex-discriminatory requirements in any of their applications. Since vacatur operates on the challenged regulations themselves, this court should hold that the regulations no longer exist and allow the SSS to either extend the draft requirement to women (as allowed by law) or end the registration requirement entirely.

**Claim Four: Bivens Nominal Damages (Individual Defendants)**

69. Plaintiff realleges and incorporates paragraphs 1-51 as if set out fully herein.

70. Individual defendant Kett administers the MSSA on behalf of defendant SSS in the State of California.

71. Individual defendant Kett has participated in threats by the SSS to refer for criminal prosecution any person who does not register for the draft.

72. Individual defendant Kett focuses registration efforts exclusively on male persons, despite the command for sex equality enshrined in the 28th Amendment.

73. Due to his extraordinary effectiveness throughout long years in faithful government service, individual defendant Kett directly contributed to the credibility of the unconstitutional threats made by defendants and the severity of injury caused by the risk of criminal referral of registration-eligible men who do not register under the MSSA.

74. In *Bivens v. Six Unknown Agents* 403 U.S. 388, the Supreme Court recognized a limited ability for federal courts to recognize causes of actions against federal officers for violations of constitutional rights.

75. Individual defendant Kett has violated Plaintiff's constitutional rights under the 28th Amendment to be free from sex discrimination under color of federal law.

76. No special factors counsel against creating a nominal damages remedy against individual officers for violation of constitutional rights.

77. Therefore, this court should award Plaintiff nominal damages not to exceed 0.01$ against individual defendant Kett.

### Claim 5: Bane Act (Individual Defendants)

78. Plaintiff realleges and incorporates paragraphs 1-51 and 69-73 as if set out fully herein

79. The California Bane Civil Rights act extends civil liability to any person or persons who interferes with by threat, coercion, or attempted threat or coercion with rights secured by the Constitution of the United States.

80. Individual defendant's threats of referral to the department of Justice are specifically intended to cause interference with plaintiff's constitutional rights under the 28th Amendment of the Constitution of the United States.

81. Plaintiff requests statutory damages of 21$ against defendant Kett under California civil code Division 1, Part 2, § 52(a) as Kett has made a "distinction" based on sex contrary to the constitution of the United States and California civil code Division 1, Part 2, § 51.

### Claims 6-10: Fifth Amendment Analogues

82. Plaintiff realleges claims 1-5 substituting references to the 5th Amendment for references to the 28th Amendment.

83. Plaintiff acknowledges that these claims are foreclosed by binding precedent under *Rostker* and raises them only to preserve potential appellate review and rejection of that precedent.

### **Prayer for Relief**

For these reasons, Plaintiff respectfully requests that the Court enter an order against the defendants specified in each claim, including their employees, agents, successors, and all persons in active concert and participation with them. Plaintiff respectfully requests that such an order

ER-21

A.  Declare that the MSSA and its implementing proclamations and regulations violate the 28th Amendment to the Constitution of the United States insofar as they apply to Plaintiff on a sex-discriminatory basis;

B.  Enjoin the official and agency defendants (sans the President) from implementing, enforcing, referring, or prosecuting violations of the MSSA and its implementing proclamations and regulations insofar as they apply to Plaintiff on a sex-discriminatory basis, including any federal collateral consequences of failure to register;

C.  Vacate 32 C.F.R.  Subtitle B, Chapter XVI, §§ 1615.3-5 and any other implementing regulations of the MSSA insofar as they contain or implement distinctions based on sex against any person;

D.  Award nominal monetary damages in an amount not to exceed 0.01$ against defendant Kett in his individual capacity under Bivens;

E.  Award statutory damages in an amount not to exceed 21$ against defendant Kett in his individual capacity;

F.  Award costs, fees, attorney's fees, and other expenses as may be awarded in this action; and

G.  Grant all other relief that is just and proper, keeping in mind that this complaint is filed Pro Se.

A jury trial is requested on all claims so triable.


Date: December 19, 2023          Sign Name: _____

                                 Print Name: Vikram Valame

1      UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3 Before The Honorable Nathanael M. Cousins, Magistrate Judge

4

5 VALAME,       )
           )
6    Plaintiff,  )
           )
7 vs.        ) No. C 23-03018-NC
           )
8 BIDEN, et al.,   )
           )
9    Defendants.  )
 _____)
10

11         San Jose, California
          Wednesday, December 13, 2023
12

13 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
    RECORDING 11:21 - 12:33 = 1 HOUR 12 MINUTES
14

 APPEARANCES:
15

 For Plaintiff:
16         4039 2nd Sreet
         Palo Alto, California 94306
17      BY: VIKRAM VALAME, PRO SE

18 For Defendants:
         Department of Justice
19         Civil Division
         1100 L Street NW
20         Suite 11406
         Washington, DC 20005
21      BY: ANDREW J. RISING, ESQ.

22 Transcribed by:    Echo Reporting, Inc.
         Contracted Court Reporter/
23         Transcriber
         echoreporting@yahoo.com
24

25

*Echo Reporting, Inc.*

1

1 <u>Wednesday, December 13, 2023</u>                           <u>11:21 a.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                               --oOo--

4            THE COURT:  We'll take your appearances here.  One

5 second.

6            THE CLERK:  And calling civil 23-03018, Vikram

7 Valame.  Is that correct?

8            THE COURT:  What's the correct pronunciation?

9            MR. VALAME:  Vikram Valame.

10            THE COURT:  Valame.  Thank you.

11            THE CLERK:  Versus Joseph Biden and others.

12 Counsel -- or will the parties please state your appearances

13 for the record?

14            MR. VALAME:  I'm Vikram Valame representing

15 myself.

16            THE COURT:  Welcome.

17            MR. RISING:  Andrew Rising from the Department of

18 Justice representing the defendants, and my colleague Daniel

19 Lauretano with the Selective Service, also (indiscernible).

20            THE COURT:  Welcome to you both.  Thanks for being

21 here.  And, Mr. Valame, thank you for being here.

22       All right.  We were finishing some other case

23 management conferences on the phone.  That's why we started

24 a little late.  Thanks for your patience.

25       For logistics for the hearing, if you'll please do

*Echo Reporting, Inc.*

2

1  speak into a microphone because we are making a recording of
2  what's being said, both what you say and what I say. And if
3  any party wishes to request a transcript from the hearing --
4  you're not required to. But if you seek a transcript, that
5  transcript will come from the recording. So it's important
6  that we have a good recording of what's said and not overlap
7  with each other to the extent possible to aid in the
8  creation of a good record.
9      And if at any point you can't hear me, also important,
10 tell me to repeat myself or slow down so that you can hear
11 what my questions or comments might be.
12     The two motions before the Court are plaintiff's motion
13 for partial summary judgment on claims one through three.
14 That's at docket 30. And the defendants' motion to dismiss
15 or, in the alternative, motion for a summary judgment,
16 that's at docket 38.
17     And there's a small detail which I'll get into, but not
18 first, about if I were to grant defendants' motion. I think
19 -- I believe that you'll tell me more about it. There's
20 still an individual claim against Defendant Kett, K-E-T-T,
21 that is not subject to the motion. But that's a detail we
22 can get to.
23     So those are the issues presented to the Court today.
24 All parties have consented to the jurisdiction of magistrate
25 judge. So we have that jurisdictional threshold resolved.

*Echo Reporting, Inc.*

3

1  But there is an important jurisdictional issue I want to ask
2  you about first, and that's standing.  Both parties
3  referenced standing in your briefs.  But even if you hadn't
4  mentioned standing in your briefs, the Court has an
5  independent duty and has to be satisfied that there's a case
6  or controversy and that Article III standing, which has both
7  a constitutional component and also prudential
8  considerations, that not only is there an injury that's
9  occurred -- that there's a violation that's occurred out
10 there in the world, but that the plaintiff is the right
11 person or -- and you are a person in this case -- sometimes
12 there's an entity.  But you're the right person to bring the
13 claim that there's been an injury, but that that injury is
14 concrete and particularized, that there's an injury in fact
15 that has occurred, that there's causation, that the injury
16 was caused by the defendant's conduct or omissions, that
17 there's redressability, there's a likelihood that the injury
18 that is asserted by the plaintiff will be redressed by the
19 lawsuit.  And then there's some additional prudential
20 considerations all going to the idea that the Court does not
21 rule on generalized grievances.  There has to be a real case
22 or controversy in order for the Court to take on a case,
23 because the alternative is that there could be lots of
24 theoretical arguments or abstract arguments between parties
25 that maybe aren't even -- that may not be the right time or

4

1  the right person or the right Court.  Doesn't mean that

2  there's not a way to redress the problem.  The question is,

3  is the federal court the right court at the right time to

4  address a harm that is raised in a lawsuit?

5      So I want to talk about that more first, because if the

6  Court lacks -- if the plaintiff -- and the plaintiff is the

7  one who comes to Court -- has the burden to establish

8  standing to sue, if I'm not satisfied that there's standing

9  to sue and I have jurisdiction to hear this case, then I

10  won't reach all -- to any other arguments that the parties

11  have raised in their briefs.  At least I won't raise them --

12  I won't decide them until I'm satisfied that there is

13  standing to sue.

14      And I'm going to talk a little more.  Overlapping with

15  that question of standing is -- and this goes to, I believe,

16  the redressability and prudential concerns that are part of

17  the standing analysis is a political question doctrine which

18  overlaps with some jurisdictional issues of -- even, Mr.

19  Valame, if there's a constitutional problem or an

20  administrative procedure problem, a question presented is,

21  is the court the right place to grant the remedy you seek,

22  or is it somewhere different?  And there's a number of cases

23  in different contexts, not just about the Selective Service,

24  but in different contexts where Courts have found, well --

25  even if I were to concede -- and I'm not conceding anything,

*Echo Reporting, Inc.*

5

but even if I were to say I think there's a constitutional
violation or a violation of the Administrative Procedures
Act, in some circumstances, the Court has said, well, that
is a problem that is redressable with the political
branches, with the legislature, either the federal
legislature or a state legislature, or both, or with the
executive branch. It's something that should be addressed
by the executive branch. You can go talk to the executive
branch directly. They might give you relief. But for some
types of controversies, the Court says we're not going to --
for some of these prudential concerns and redressability
concerns, we're not -- even if I were to agree that there's
a problem and that you're the right person who has the
problem and the problem is now, we're not going to grant a
remedy in this situation, other than to say you should take
your concerns to the executive branch or you should take
your concerns to the legislative branch, that they're in a
position to do something about it. And maybe after you've
talked further with them to address your concerns, maybe
then would be the right time to come back to the Court and
ask the Court to do something about it, that either, "No,
I'm not going to do something about it," or, "The time is
not right now until there has been a further effort through
direct lobbying and addressing your concerns to those other
branches of government before the Court is going to wade

6

1 into it."

2      So that's a lot of lead-in to this.  But you have very

3 thoughtfully already presented me many arguments on both

4 sides on the issues of -- that are in your motions, the

5 claims that are in your case, Mr. Valame, and the defenses

6 that the government has raised.

7      But I do want to start with standing to see if there is

8 a case or controversy here that I have power to rule on.

9      So, Mr. Valame, I want to address this to you.  First

10 thing, you're self-represented, although you've been

11 extremely thorough in your papers.  If you do have any

12 questions for me procedurally, I want to answer them so that

13 you're not being taken advantage of in any way in this case.

14 And we also have a pro se help desk attorney, Haohao Song,

15 on the second floor.  And I think we've given you his phone

16 number, but I wanted to see -- start by asking you, do you

17 have any procedural questions for me about what we're doing

18 today or in the case that I can answer for you?

19           MR. VALAME:  Sure.  Two things.  First of all, I

20 talked to the pro se help desk.  They said they wouldn't

21 represent me because they don't allow claims against the

22 federal government at that help desk.  That's what I was

23 told when I talked to two employees at the court.  So --

24           THE COURT:  And there's -- I'm going to respond

25 not by disagreeing, but just to understand more what you

7

1  were told.  There is representation, and I understand that
2  the -- and I'm not speaking about representation of somebody
3  being an attorney for you, but just giving you advice
4  procedurally about what to do.  Did you speak with Mr. Song?
5           MR. VALAME:  I called -- there's a pro se help
6  desk number on the court's website.
7           THE COURT:  Yes.
8           MR. VALAME:  I called that.  I explained my case
9  to the person on the other line, and they said that they
10 didn't offer help for my kind of case against the federal
11 government.  And then when I filed my case, I talked with
12 the clerk at the desk, and she said, yeah, that that office
13 doesn't represent claims against the federal government.  So
14 that's -- not represent, but give advice even.
15      Secondly, if -- so you brought up standing.
16          THE COURT:  Yes.
17          MR. VALAME:  I guess I would respectfully ask that
18 if you're going to rule on standing or have serious
19 concerns, I have an opportunity to file something extra on
20 the issue because -- I guess, like, notice considerations,
21 and I didn't raise it in my second brief because the
22 government didn't make any arguments.
23          THE COURT:  Yeah.
24          MR. VALAME:  And I understand that you cannot
25 waive standing, but --

*Echo Reporting, Inc.*

8

1        THE COURT:  You're right.  So let me respond to

2  those things.  You're right.  You can't waive standing.  I'm

3  raising it independently.  Even if they made no mention of

4  it and you made no mention of it, I would still raise the

5  issue because it's still your burden to establish.  And,

6  yes, for purposes of due process and notice, and to have a

7  full record, I would absolutely give you an opportunity to

8  respond in writing after we have this conversation today and

9  before I rule, and we can talk about how much time you need

10  and what you have in mind.  And the defendants too might

11  have something that they want to say about standing, and

12  they can tell me today.  And if they wish to, they can give

13  me something in writing, and we can talk about that.  So,

14  absolutely.

15        And I want to -- I'll look into this question about

16  whether they can help you or not at the help desk because of

17  the nature of your claims before I comment further on that.

18  But I'm glad that you at least have the number and have

19  responded so far.

20        So any other procedural questions?

21        MR. VALAME:  Like, on standing, I guess -- again,

22  this is more in the actual argument, but I think that I

23  could have -- if I had the opportunity to amend my

24  complaint, I think I would be able to further establish

25  standing.  That's because I recently filed two job

9

1  applications with the federal government, and I know -- I

2  think 5 U.S.C. 3328 prohibits me from working in the

3  executive branch if I haven't registered.  And I think if

4  the government denied my job applications on that basis or

5  even just declared me unable to work for them, that would be

6  also sex discrimination.  That's, I think, very clearly an

7  injury in fact.  I don't think I need that, but I think it

8  would help if you think the other two bases for standing are

9  insufficient.  So leave to amend, I guess, if you dismiss.

10           THE COURT:  All right.  I'm taking notes here that

11  you're requesting leave to amend.  As -- just to follow up

12  and -- absolutely, if you were to file an amended complaint,

13  these assertions would be in writing.  But as to the job

14  applications you've made, have you received responses to

15  them, or it's an application at this point?

16           MR. VALAME:  So I just had an interview with the

17  Nuclear Regulatory Commission.  They have a job in Maryland

18  that I'm applying to.  And I also submitted an application

19  to the Defense Counterintelligence and Security Agency for

20  an auditing position.  I don't -- I haven't received a

21  response for that as far as I'm aware, but I think they

22  review them a bit later from what I've been told on their

23  website.

24           THE COURT:  Thank you.  And speaking to

25  applications -- this may be in the record, and I -- there's

10

1  many things in the record, so I may have missed it.  It may

2  be even in a complaint.  Have you filed with the Selective

3  Service?  Or at this moment, have you not?

4          MR. VALAME:  I'm not registered for the draft.

5          THE COURT:  All right.  And -- thank you.  And I

6  will give you a chance in writing to provide more

7  information, but just to -- if you're prepared to address

8  this question right now, what would you say is your concrete

9  and particularized injury right now, even if I -- without

10 need to -- for leave to amend?

11         MR. VALAME:  Oh, yeah.

12         THE COURT:  Maybe you've got it right now.  So

13 what's your concrete and particularized injury right now?

14         MR. VALAME:  So there's two injuries that I have.

15 First is the sex discrimination.  The US Government has

16 expressly threatened me with prosecution through several

17 means.  On their website which I accessed they said they'll

18 prosecute me.  The Department of Justice, the US attorney

19 for this district says that he expects his office to comply

20 with the act and says, you know, he's taking responsibility

21 to enforce it.  There is a case --

22         THE COURT:  If I might ask, when they -- when you

23 say they threatened to prosecute you, is it individualized

24 to you, or they threatened to prosecute someone in the

25 situation where they don't register?

11

1          MR. VALAME:  Yeah, in the situation where they
2  don't register.  But I would also know, I think, <u>Cal.</u>
3  <u>Trucking Association v. Bonta</u> 996 F.3d 644 says that if the
4  government refuse to disavow enforcement of a challenged
5  statute in litigation, that itself is "strong evidence of a
6  credible threat of enforcement."  The government has
7  conspicuously not disclaimed enforcement in any of their
8  briefing.  So I think on that basis alone, you could decide
9  the question.
10          Also, even if the threat of prosecution isn't going to
11  happen, I think the fact that they've -- and so my second
12  injury, I guess, has classified me on a sex discriminatory
13  basis, in itself, injury.  So <u>Havens Realty</u>, <u>Allen v.</u>
14  <u>Wright</u>, the Supreme Court expressly said that where you have
15  discriminatory classifications, that's an extremely severe
16  injury, and that is sufficient for Article III standing,
17  even where it does not directly impact life, liberty, or
18  property.  And I think you can kind of get that from the
19  Constitution, because the Constitution says you can't be
20  deprived of life, liberty, and property without due process.
21  But it separately says you can't be discriminated against
22  based on your sex.  And it will be very odd to say the
23  latter is identical to the former when they're separate
24  provisions that presumably the Framers thought were doing
25  separate work.

12

1     So -- yeah.  And then I guess -- you know, there's

2 other cases on the discriminatory injury theory.  I guess --

3 in cases where plaintiffs have alleged discrimination and

4 the Court has not found standing, it's usually been because

5 the discrimination was against someone else.  So I think in

6 some stigmatic injury cases like Steffel v. Thompson maybe,

7 like, some plaintiffs have complained that, you know, the

8 federal government subsidizes discriminatory schools

9 somewhere else, and that's a stigmatic injury on my entire

10 race.  The Court has said that's not sufficient because you

11 are not the one being discriminated against.  But I am being

12 discriminated against, because the regulations say -- you

13 know, I'm a male over 18.  I'm required to register.  That's

14 a personalized injury to me.  I am the one being

15 discriminated against, not someone else in Maine or Hawaii

16 who's being discriminated against.

17     So I think that's the only reason why the Court has

18 denied standing in discrimination cases is that someone was

19 complaining someone else was being discriminated.  I guess I

20 would also point out that plaintiffs in Rostker vs.

21 Goldberg, the plaintiffs in the prior Selective Service case

22 in the Ninth Circuit both demonstrated standing.  And they

23 had registered for the draft, so they weren't even subject

24 to criminal prosecution.  And the Courts nevertheless found

25 standing both here and in the Fifth Circuit

*Echo Reporting, Inc.*

13

1      THE COURT:  Yes, I'm familiar with cases where a
2  person who had registered was found to have standing both in
3  the district and the decisions.  And it seems like your
4  situation is a little different from those cases in that you
5  -- or it could be.  Maybe it's not different.  But
6  factually, there's a difference in that you have not
7  registered.  So my thinking out loud is, all right, is your
8  injury concrete now or is it still abstract?  Because you
9  have not -- you haven't registered, and maybe you'll never
10  register.  And in that situation -- and is your -- the
11  threat of prosecution a generalized one, or is it particular
12  to you in some way?  That's what I'm trying to evaluate.
13      MR. VALAME:  I would say that the fact that I
14  haven't registered makes the threat even more credible,
15  because the Supreme Court has said that -- yeah, this is
16  Steffel v. Thompson.  You don't have to subject yourself to
17  criminal prosecution anyways to get standing.  I could
18  register and then sue and be in the same position.  But I
19  have subjected myself to prosecution, so the threat is even
20  more credible now.  And that further supports standing.
21      It's also -- it's concrete and particularized to me.  I
22  am subject to prosecution.  Now, there might be other people
23  subject to prosecution.  I think maybe nine-percent of men
24  have not registered according to the Selective Service.  But
25  that doesn't displace the fact that I'm subject to

14

1 prosecution.  You know, if someone challenges a general

2 statute on First Amendment grounds, they can challenge it

3 even if the statute applies to lots of people.  It can apply

4 to everyone.  There's still a concrete, particularized

5 injury to the plaintiff.

6     And then -- again, same thing with the discrimination.

7 I personally am subject to the classification.  You know, if

8 I was like a temporary immigrant, maybe I wouldn't have

9 standing because I'm not included in the draft, but that's

10 not the case.  I'm subject to felony prosecution, $250,000

11 fine.  You know, all their websites say they'll prosecute

12 me.  They haven't disclaimed it.  I think that's sufficient.

13         THE COURT:  And speak to redressability.  The

14 injury you've asserted, how will that be redressed through

15 this lawsuit?

16         MR. VALAME:  So two things.  First of all, I think

17 the Ninth Circuit has already ruled on redressability.  That

18 opinion isn't precedential, but I think this Court should be

19 very hesitant about directly contradicting the Ninth Circuit

20 in the same exact procedural posture.

21     Secondly, the Constitution is silent.  The government

22 can require women to register or strike down the

23 registration requirement to men.  But the important thing is

24 that I -- my injury will be redressed either way.  All this

25 Court has to do is say the regulations are vacated.  The

15

1  government can decide what to do.  But either way, my injury

2  will be redressed, because if both people have to register,

3  then I'm not being discriminated against.  No more injury.

4  And I think that was the Court's rationale in the recent

5  First Amendment case, National Association of Political

6  Consultants vs. Barr, I want to say.  The Court said, "The

7  First Amendment injury is discrimination in speech.  We're

8  going to strike down the discriminatory requirement, the

9  plaintiff still have standing, and we've redressed their

10  injury."  You know, the dissents had something else to say

11  about that, but they were dissents.

12          THE COURT:  All right.  Thank you.  Anything else

13  you want to tell me now?  And, again, we'll give you a

14  chance to put the things in writing after today.  But

15  anything else that right now you would like me to consider

16  in support of your standing to sue?

17          MR. VALAME:  Yeah, one more thing.  So TransUnion

18  and Spokeo say that, you know, just being legally injured

19  sometimes is insufficient to get standing.  But TransUnion

20  also has this quote, "Traditional harms may also include

21  harm specified by the Constitution itself."  So that's why

22  you don't have to show further injury if your free speech or

23  free exercise rights have been violated.  And I think since

24  the -- since, you know, for standing you assume that my

25  legal arguments are correct, if you assume the Equal Rights

16

1 Amendment, the 28th Amendment, has been enacted, that's a

2 specific legal right created by the Constitution itself, and

3 that is always sufficient to confer Article III standing as

4 long as, you know, I'm not -- I'm alleging injury to myself,

5 my own rights.  So the Constitution can create rights that

6 are automatically enforceable, unlike statutory rights.

7           THE COURT:  And why should I assume applicability

8 of the Equal Rights Amendment to your situation?  I know

9 that your lawsuit is about that.  But why at this procedural

10 junction should I assume that that is -- that you win on

11 that issue?

12           MR. VALAME:  So for standing purposes, you assume

13 the legal truth of the arguments presented.  I don't have a

14 case cite for that off the top of my head, but I know I've

15 seen it in several cases.  And that makes sense because --

16 otherwise, if you say, "Well, I don't have standing because

17 the Equal Rights Amendment isn't ratified," you're just

18 deciding the merits of the case.  That's like, you know,

19 12(b)(6), not 12(b)(1).

20     So I would say, you know, if my legal argument -- my

21 non-frivolous legal arguments are right, then I have injury.

22 Now we go to the merits.  And maybe, you know, like in a

23 personal injury case, if I allege personal injury but fail

24 to prove it, you know, you could say I lack standing because

25 I wasn't injured.  But that's a merits question.

*Echo Reporting, Inc.*

17

1    THE COURT:  All right.  Thank you very much.

2    Mr. Rising, I want to get your weigh in on it now.  Of

3  course you didn't move under 12(b)(1) and -- but as Mr.

4  Valame has noted, there can't be a waiver of the Article III

5  standing.  So does Mr. Valame have standing in this case?

6  What do you recommend?

7         MR. RISING:  Yeah, that's correct, your Honor.  A

8  lot of new information just came in about the job

9  applications and things like that.  I'll need to speak with

10 my clients and those agencies before I can give a full

11 answer on something like this, of course.

12         THE COURT:  Yeah.

13         MR. RISING:  But you're right.  We have not moved

14 to dismiss on standing grounds explicitly in the complaint,

15 just based on what he has pled in the complaint.  Factually,

16 I think anything more would require a consultation with my

17 clients.  But we think this case is most easily resolvable

18 in the way that other Courts who considered ERA cases --

19 Taylor v. El Centro, some of the cases we cited, have

20 resolved this off the bat by just concluding that the ERA

21 does not provide a basis for a federal claim.  So I think

22 that would be the cleanest and most straightforward way to

23 look at this.  It's the reason we didn't contest standing in

24 the papers.  But I understand you have an obligation to look

25 at it as well.  So if you require additional briefing, the

18

1  defendants are happy to provide it.

2        THE COURT:  Yeah.  On the issue of cleanest and

3  efficiency, I'm going to segue, and I'll come back to the

4  topic of more briefing on standing.  Am I correct that if I

5  were to grant your motion, docket 38, as far as cleanness

6  goes, there would still be a slander claim remaining, which

7  would be the individual claim against Kett?

8        MR. RISING:  I believe plaintiff interpleading and

9  then also with us he's conceded that claim would fail.  So I

10  would expect a voluntary withdrawal or a -- I think this

11  Court has the power to dismiss it as well, because it would

12  fail for the same reasons.  But regardless, I think

13  resolving the motions before you would resolve the entire

14  case.

15        THE COURT:  Yes.  And I know Mr. Valame has said

16  -- well, he doesn't want to have that part hanging over if I

17  were -- if I granted your motion.  But I haven't decided

18  that question yet.  I haven't decided the motion.

19        MR. RISING:  Of course.

20        THE COURT:  But it goes a little bit to the

21  efficiencies of this.  And if there's no standing, then I --

22  it's not a balancing test of deciding -- of what's

23  efficient.  It's just -- there's not standing.  But I do

24  want to be mindful of what's going to be next and when it's

25  going to be.

19

1    All right.  All right.  So here's what I want to do on

2 standing -- and I'll hear your other arguments here.  You're

3 here, and I appreciate you all being here and the

4 preparation you've made for today's hearing.

5    Mr. Valame, how much time would you like to file a

6 further brief and any information you would like to present

7 in support of your standing to sue?

8         MR. VALMAE:  So a brief, not an amended complaint.

9         THE COURT:  If you wish to file amended complaint,

10 you could do that.  I'm not -- I haven't dismissed your

11 current complaint or made a finding you don't have standing.

12 So if I were to theoretically say that under your current

13 allegations you lack standing, I might give you leave to

14 amend.  You've requested leave to amend.  But before I do

15 that, I'll give you a chance to present, on your current

16 complaint, further argument in your brief.

17         MR. VALAME:  Okay.  I think that I could submit an

18 amended complaint in a brief within seven days.  Really,

19 it's not that much.  Just a few paragraphs and a few pages

20 of standing argument.  So seven days.

21         THE COURT:  All right.  And it could be that on

22 the merits that you would -- you know, separate apart from

23 standing, you might want to seek leave to amend your

24 complaint.  And so -- and, of course, the defense may have a

25 view as to whether that should be granted or not.  It's a

20

1  little bit of -- not unprecedented, but you've got on the
2  defense side a motion to dismiss and/or a motion for a
3  summary judgment.  And on a motion to dismiss, there's a
4  liberal standard for amendment.  Not a limitless standard,
5  but there's a liberal standard for amendment.  If I were to
6  rule on summary judgment that as a matter of law I'm
7  dismissing the case, you can still have leave to amend in
8  that circumstance.  But oftentimes, the defendant will say,
9  no, there should not be a leave to amend in that
10 circumstance.  But that does raise the issue of, well,
11 should I wait?  You know, if you are -- if you're telling
12 me, Mr. Valame, that you really do want to amend your
13 complaint -- and I don't know until I see your amended
14 complaint what all you might be amending -- should we have
15 the other arguments on the current complaint now, or should
16 we sort of wait and see what you put in your amended
17 complaint before we pick up the arguments?

18          MR. VALAME:  So I don't want to delay decision in
19 this case.  If I amended my complaint, I think I would only
20 add the job application arguments on standing and just
21 clarify that.  The merits would remain unchanged.  And I do
22 think that if this Court ruled against me on the merits, any
23 amendment will be futile because the Fifth Amendment claims
24 are foreclosed.  If there's no 28th Amendment, there's no
25 28th Amendment.

21

1        THE COURT:  Right.

2        MR. VALAME:  And I'll just take an appeal.

3        THE COURT:  Yeah.  Thank you.  All right.  That

4   gives me some clarity there.

5        All right.  So, Mr. Rising, then as to when you would

6   like to provide any more information and/or response on the

7   standing arguments, what deadline would you request?

8        MR. RISING:  Your Honor, I think it might depend

9   on whether we're filing a new motion to dismiss and for

10  summary judgment on a brand new complaint or not.  But given

11  the holidays -- I have another hearing in January as well.

12  I think preferably four weeks after plaintiff's.

13        THE COURT:  All right.  How about we set -- so we

14  request from Mr. Valame a further submission by December

15  20th, the date you suggested, you have a week.  And how

16  about we go January 12th for a response from the government?

17        MR. RISING:  Sure.

18        THE COURT:  Writing that down.  And would you like

19  to reply, Mr. Valame?  I know it's a bit abstract until you

20  see what their response is.

21        MR. VALAME:  It is a bit abstract.  I want to lean

22  towards no because I'm not sure how much it would help the

23  Court if I filed a reply brief, but, you know, if they make

24  something I haven't thought of.

25        THE COURT:  Yeah.  Here's what I'll leave it at,

22

1 after you read their -- after you read the -- what they

2 submit, if you seek leave to file a reply, I'm going to ask

3 you to make that decision quickly, just so I know what

4 you're doing.  So I'll ask you by the 13th -- by the next

5 day to either request leave to file a reply.  And the answer

6 is I'll likely give you leave to file a reply if you wish

7 to.  Or if you tell me you don't want to, then I'll know

8 that you're -- don't wish to file a reply.

9            MR. VALAME:  Yeah.  I think I can file a request

10 for reply the day after --

11            THE COURT:  Yeah.

12            MR. VALAME:  That's another week, yeah.

13            THE COURT:  Just a one paragraph saying you have

14 more you would like to say, or you don't have more you would

15 like to say, and then I'll know that it's been submitted.

16 And I don't anticipate having a need for a further hearing

17 to talk about standing issues.  I'll do it based on the

18 papers is my expectation.  But if I change my mind, then

19 I'll let you know with reasonable notice that I want to

20 reconvene for further conversation.

21      All right.  This is all very helpful, and I thank you

22 for your patience addressing standing.  So that -- let's put

23 that aside for the moment, and I will determine it before

24 making a final decision, but we've got a process in place to

25 figure it out.

*Echo Reporting, Inc.*

23

1    All right.  Mr. Valame, I'm going to have you go first

2  on your motion.  Now, you both got motion -- things you're

3  asking for from the order, so I'll give you a full chance to

4  argue these things.  But you do have a motion for summary

5  judgment as to the first three claims in your complaint.  So

6  I'll give you an opportunity to tell me why I should grant

7  your motion, and then I'll have Mr. Rising address your

8  arguments and what he disagrees with and his request for

9  judgment on their claims.  And then, Mr. Valame, I'll come

10  back to you for your reply on your arguments, but also on

11  his arguments, if that makes sense.

12            MR. VALAME:  Yeah.

13            THE COURT:  All right.  Mr. Valame, you may stay

14  there or come up to the podium, whichever is comfortable for

15  you.

16            MR. VALAME:  Thank you, your Honor.  The

17  defendants' position relies on the belief that text outside

18  of Article V can amend Article V, and that position is

19  untenable.  Everyone agrees that the prefatory text of

20  amendments does not become part of the Constitution of the

21  United States.  Every single amendment ratified, it's just

22  the text.  You don't see, you know, all or some of them in

23  the Bill of Rights.  You don't see any of the other

24  proposing texts, any of the other amendments.  And that

25  makes sense.  They're not part of the Constitution of the

24

1 United States.

2     However, defendants also concede in their OLC opinion

3 that to amend the effect Article V has on amendments, you do

4 have to include the text in the amendment.  So take section

5 three of the 28th Amendment.  That includes a two-year grace

6 period.  The OLC acknowledges that without that text,

7 Article V would say the amendment is ratified immediately.

8 What the section three does is it amends Article V to change

9 that aspect of the amendment.

10     And that is why the deadlines contained in the 18th to

11 22nd Amendments are all valid.  When the amendment is

12 ratified, the deadline immediately amends Article V and says

13 -- and imposes an additional condition on ratification.

14     When the deadline is in the proposing clause of the

15 amendment, it can't amend Article V.  It has no legal force

16 outside of what the Constitution allows Congress to specify.

17 And Congress' power in that area is extremely limited.  The

18 Constitution says the one mode or the other.  And the two

19 modes are ratification by legislatures or ratification by

20 Convention.  It's difficult to imagine how the Constitution

21 could have been clearer that Congress has only two options

22 with amendment ratification procedures.

23     And I think, you know -- I'll address <u>Dillon</u>, which is

24 their primary case.  But I think it's worth thinking about

25 what the consequences of the defendants' position is.

25

1 According to the defendants, Congress can impose any limit
2 on ratification in the proposing clause of an amendment.
3 Congress could say, "This amendment should be ratified when
4 four-fifths of the states have ratified it.  This amendment
5 takes effect five years after ratification" in the proposing
6 clause.  That's one thing.

7     But, second, and maybe more importantly, according to
8 the defendants, putting the deadline in the proposing clause
9 allows Congress to amend it at its leisure by bare
10 majorities without a presidential veto whenever Congress
11 wishes.  And that gives Congress enormous leverage over the
12 ratification process.  It essentially allows Congress to
13 revoke the proposal of an amendment.  If Congress proposes
14 an amendment, the next Congress doesn't like it -- you know,
15 scholars have all agreed that Congress can't revoke an
16 amendment under Article V.  But according to defendants,
17 they could just impose a one-year deadline and make it
18 impossible for the states to ratify.

19         THE COURT:  Or one-day deadline.

20         MR. VALAME:  Yeah.  One-day deadline, one second
21 deadline, whatever they want.  And, again, no presidential
22 veto, bare majorities in both houses of Congress.  And they
23 can do whatever they want.  There's no reason why it's
24 confined to a deadline.  The Congress, if it sees an
25 amendment nearing ratification, could say, "Well, we need

*Echo Reporting, Inc.*

26

1 all 50 states to ratify this amendment for it to be valid."

2       THE COURT:  Now, I imposed the question of a

3 one-day -- but in this case, there's not a one-day deadline

4 that Congress set.  It was much -- something much more

5 generous.  And so to keep it tied to the facts of this case,

6 in this situation with the deadline Congress set, why should

7 I say that that was unreasonable, if that's the right

8 standard?

9       MR. VALAME:  So this Court shouldn't say the

10 deadline is unreasonable, because in Coleman, the Court very

11 clearly said that's not something Courts can do.  Courts

12 can't review Congress for reasonability.

13       THE COURT:  Yeah.

14       MR. VALAME:  What I'm asking this Court to do is

15 to say that there are -- there is no deadline.  It doesn't

16 matter if it was 100-year deadline or one-day deadline, the

17 deadlines or anything else in the proposing clause of an

18 amendment, except a mode of ratification, the one or the

19 other, is nothing.  It's a nullity.  It can't be enforced

20 against Article V's clear text.

21    So I guess that brings us to Dillon, which is their

22 best case, I would say.  And I think Dillon was a case about

23 the 18th Amendment.  And it was really about facts of the

24 ratification of the 18th Amendment.  And I think you can see

25 this in a lot of places in the Dillon opinion.

*Echo Reporting, Inc.*

27

1       So you can start with the -- all right.  So you could
2  start with, you know, page 373 to 374.  It says Congress has
3  a wide range of power in proposing amendments, and it says,
4           "The only limitations are the two-thirds
5           requirement and the requirement that
6           they can't destroy equal suffrage in the
7           Senate."
8       Now, that only makes sense if you're talking about the
9  content of proposed amendments.  It's a very odd
10 interpretation of the Court's ruling that we say Congress
11 can do literally anything even outside the text of proposed
12 amendments as long as it doesn't destroy equal suffrage in
13 the Senate.  And so that's one thing.
14      Second of all, page 371 of Dillon says,
15          "The article says nothing about the time
16          in which ratification may be had or that
17          it must be had within some reasonable
18          amount of time."
19      So the Court also says,
20          "This is not an argument in -- from
21          Article V in the deadline.  It's
22          something that Congress has put into the
23          Constitution by ratifying this 18th
24          Amendment with three-fourths of the
25          states."

*Echo Reporting, Inc.*

28

1    And then, again, on page 376, it says, "Every amendment
2   has an implicit deadline."  That was the centerpiece of the
3   Court's ruling in <u>Dillon</u>.  What Congress is doing, it is
4   taking the deadline implicitly from the amendment and making
5   it explicit, and then the states can ratify that deadline.
6    And then lastly, I would point you to the appellants
7   brief in the case.  That brief is very clear about what
8   appellants are asking the Supreme Court to do in <u>Dillon</u>.
9   They're saying the state legislatures had no power to ratify
10  the 18th Amendment, because the 18th Amendment essentially
11  coerced a ratification by making them do it too quickly.  It
12  says they violated state procedural rules in doing those
13  ratifications.  It says that Congress is destroying the
14  federal structure of the United State by including this text
15  in the proposed amendment.  The entire brief is an attack on
16  the content of the amendment.  And in <u>Dillon</u>, the Court
17  said, "No, you can't attack the content of an amendment.
18  Congress has plenary power unless it destroys equal suffrage
19  in the Senate."  And I think, you know, that's also
20  consistent with how later cases interpreted <u>Dillon</u>.  So <u>US</u>
21  <u>v. Sprague</u>, the Court says there are exactly two modes of
22  ratification and Congress has exclusive discretion over
23  those two modes only.
24    If <u>Dillon</u> really said that Congress can impose anything
25  that doesn't violate, you know, the equal suffrage clause,

29

1  then that discussion in Sprague makes no sense, because

2  Congress has exclusive power for, you know, really any

3  condition provided that, you know, maybe the bare minimum

4  there's three-fourths of the states still left to ratify it.

5       So, I guess the text the US relies on is this line, "We

6  hold it's an incident to the power of Congress to designate

7  the mode of ratification."  And the government latches onto

8  it.  It says that its incident of a power designate the

9  mode.  "We always put the mode in the prefatory text.  And

10 therefore, this incident to the mode, it can also be in the

11 prefatory text."

12      So there's a few arguments on that.  First of all, I

13 think that's reading that line for way more than it's worth

14 in the Court's opinion.  You know, we have -- the entire

15 opinions about the content of amendments.  And then it says

16 Congress is competent to do this because they can recognize

17 the political, social, and economic factors in amendment.

18 So we hold it to incident to the power to designate the

19 mode.  So that same Congress has expertise in the area, so

20 Congress can be trusted to make the decision.  It's not

21 saying Congress can be trusted to make the decision outside

22 the safeguards of Article V.

23      And, you know, maybe this is an aside, but, you know,

24 the government says Article V imposes a lot of safeguards on

25 Congress.  You shouldn't be so worried.  Well, first of all,

30

1  the biggest safeguard of Article V is ratification by

2  three-fourths of the states, which the government says it

3  doesn't have to happen.  Second of all, the government

4  thinks that bare majorities in both houses of Congress can

5  do whatever they want with amendments.  The OLC has taken

6  the position there's no presidential veto.  It's bare

7  majorities.  And the OLC says it's the only time Congress

8  can exercise power by bare majorities without any

9  constraints.  And that's really an extraordinary assertion.

10 I mean, I have a lot more arguments.  Are there any

11 questions on this?

12         THE COURT:  I do not so far.

13         MR. VALAME:  Okay.  So I would say that this text

14 about the mode of ratification is pretty clearly, you know,

15 dicta, and it's not even considered dicta -- that's, you

16 know, very persuasive on the Court.  It's really not about

17 the mode power of ratification.  It's just saying Congress

18 has expertise in this area.

19    Next, even if you think Dillon said that Congress had

20 the power incident to the mode and that really is incident

21 to the mode in that Congress can put in the prefatory text,

22 Dillon is almost certainly not good law on that aspect any

23 more.  The 27th Amendment -- you know, Dillon's analysis is

24 it will be absurd if amendment stood for all time, because

25 then you could ratify a Congressional Compensation

31

1 amendment.  Well, guess what?  That amendment was ratified.

2 Congress approved it, I think, like 512 to three in both

3 houses -- like, House was 414, three, Senate was unanimous.

4 Everyone agrees the 27th Amendment is legitimate.  And that

5 takes the entire force of Dillon's reason, because Dillon

6 said Congress' power to impose deadlines is merely the power

7 to liquidate an already existing deadline.  But there is no

8 already existing deadline, there's nothing to liquidate.

9 And therefore, the only rationale for Congress being able to

10 impose deadlines is that Congress is merely proposing a

11 deadline as part of the amendment.  And when that amendment

12 is ratified by three-fourths of the states, the deadline is

13 valid, not because of Congress' power, but because it's part

14 of the Constitution of the United States.  And it's valid

15 because the Constitution is sovereign.

16      So -- and, again, this goes back to section three of

17 the 28th Amendment and the 20th Amendment.  The deadlines --

18 or not the deadlines.  The delays in effect -- those also

19 amend Article V.  It's the same rationale.  If you want to

20 change the effect of Article V, which is immediate validity

21 when three-fourths of the states ratify, you have to amend

22 Article V.  And, you know, the Court said US v. Sprague that

23 exact thing.  It said, "If you want to change this, you

24 know, single finely wrought ratification procedure, amend

25 Article V."  And that's what these other amendments do.  The

32

1  US says you cannot recognize -- <u>Dillon</u> is no longer good law
2  because of vertical stare decisis.  But where constitutional
3  amendments overrule Supreme Court precedent, vertical stare
4  decisis has no role to play.  You know, I cite a poll tax
5  case from 1964.  That district court didn't wait for the
6  Supreme Court to recognize that the poll tax amendment
7  overruled precedent.  And I don't think this Court has to
8  wait for the Supreme Court to acknowledge that the 27th
9  Amendment directly contradicts its holding that the 27th
10 Amendment can't be ratified anymore.  So those are all
11 reasons why it -- oh, and then lastly is <u>Coleman v. Miller</u>,
12 I guess.

13          THE COURT:  Uh-huh.

14          MR. VALAME:  It says that language, "We have held
15 that congress may impose a reasonable time for
16 ratification."  Again, that's in the context of the 18th
17 Amendment.  So it's deadlines in the text.  It had nothing
18 to say about deadlines outside the text.  There's a snippet
19 in the opinion, I think, the D.C. District Court relied on
20 that <u>Coleman</u> plurality said, "Deadline either in the text of
21 the Amendment or in the proposing clause."  And then the --
22 you know, the argument is that, oh, they said, "In the
23 proposing clause," so that indicates it can be in the
24 proposing clause.

25      So, first of all, no one had even considered in 1939

*Echo Reporting, Inc.*

33

1 that it could be in the proposing clause. The 23rd

2 Amendment was in 1960.

3 Second of all, that's a plurality holding of Coleman

4 that did not have the assent of all the justices or even a

5 majority of the justices. You know, the Supreme Court has

6 said Coleman is limited to exactly one thing. That's a

7 holding. And that is state legislature standing on a vote

8 nullification theory. Every other part of Coleman is a

9 plurality -- very fractured plurality. You know, Justice

10 Scalia said it's hardly even a legitimate judicial decision

11 the way that less than a majority of the Court issued a

12 judgment. So I think this Court should not rely on such an

13 opinion to rule that the Equal Rights Amendment is no longer

14 valid.

15 So once we no longer consider Dillon, I think the

16 textual argument is unbeatable. The one or the other mode

17 of ratification says only one or the other mode. A deadline

18 is not one of the modes, therefore there can be no deadline.

19 I guess -- the government points to history. So the

20 government says that congressional practice can liquidate

21 the meaning of the Constitution if it's indeterminate.

22 Som first of all, the meaning of the Constitution is

23 not indeterminate. The one or the other is as clear as it

24 can be. And, you know, just because something has been done

25 a long time, if it's contrary (indiscernible) to the clear

34

1  text, then the text controls.

2      Second of all, the practice the government relies upon

3  is 12 years of practice.  Not 100 years, not 60 years, 12

4  years.  From 1960 to 1972, Congress had deadlines in the

5  proposing clauses.  The next amendment proposed by Congress

6  had a deadline in the text like the past amendments.  So,

7  you know, even the most capricious Supreme Court cases in

8  the foreign policy arena have required 20, 30 years of

9  consistent practice to liquidate the meaning.  Twelve years

10 in an arena of, you know, very important constitutional

11 magnitude, not foreign policy where you have deference to

12 the political branches.  Twelve years is just not enough to

13 liquidate anything.

14     And then, you know, there's the Stephen Sachs' article,

15 which I cited in my motion for summary judgment.  I just --

16 the Sachs' article concedes that for its analysis to have

17 weight, you have to conclude the instructions in the 12th

18 and 17th Amendments were legally binding guidance on the

19 meaning of the amendments.  But those instructions are

20 clearly not.  Those instructions are declaratory of what the

21 amendments do.  Both amendments are obviously implied

22 repeals of prior parts of the Constitution.  And, you know,

23 what Sachs says is that, oh, the parts that the prefatory

24 text specifically mentions are presumptively repealed.

25 Every other part of the Constitution is presumptively not

35

1  repealed.  But Sachs is just describing the (indiscernible)
2  against implied repeal, which already applies to
3  constitutional amendments.
4       So I think -- you know, you can just think about it
5  this way, if that prefatory text didn't exist, is there any
6  case in which the meaning of the amendments would come out
7  differently?  I can't imagine how the prefatory text would
8  ever change the real-world application of those amendments.
9  And I think that goes to show, you know, for 200 plus --
10 well, yeah, for like 180 years, no one thought the
11 Constitution could be effectively changed by text in the
12 prefatory clauses until 1960.
13          THE COURT:  This is a question not just limited to
14 your -- this contextualist argument.  But big picture -- if
15 you are right in your constitutional analysis --
16          MR. VALAME:  Uh-huh.
17          THE COURT:  -- and if I determine you have
18 standing, it would seem that a lot of other people could
19 make the same arguments in connection with the Selective
20 Service registration requirements.  But to my knowledge, no
21 Court has gone your way on this.
22      So, first, historical question.  Am I wrong about that?
23 Is there some Court that has agreed with your constitutional
24 analysis and has granted a plaintiff in your situation the
25 relief that you seek?

36

1        MR. VALAME:  So no Court has considered this

2  question.  So the answer is no.  But, you know, again, if no

3  Court has considered the question, it's hardly a surprise

4  that I haven't had any favorable rulings for my position.

5  So the two district court cases they cite, I think Taylor

6  vs. El Centro and a prison case -- you know, I don't want to

7  denigrate pro se plaintiffs, but those were obviously

8  frivolous claims that were filed before the 20th Amendment

9  even took effect.  They were filed before the two-year grace

10 period.  I think, you know, saying from the one line

11 footnotes, "20th Amendment is not an amendment" with no

12 briefing or argument would not really be a way we do

13 persuasive authority in the courts.

14     Second of all, Illinois vs. the Archivist.  You know,

15 clear and indisputable is the Mandamus standard.  I think

16 the Ninth Circuit has said clear error is -- hits you with

17 all the force of a five-week-old rotten, dead --

18 unrefrigerated dead fish, and Mandamus is even higher than

19 clear error.  So the fact that the D.C. circuit said it's

20 not clearly indisputably correct that the Equal Rights

21 Amendment is ratified in a case where the states probably

22 even lack standing should not be adverse precedent in this

23 question where you're reviewing the issue denote.

24        THE COURT:  Sorry.  So you're -- in conclusion --

25 I'm not putting words in your mouth.  This has not received

37

1  a rigorous analysis before by other Courts is your view?

2          MR. VALAME:  Well, I don't want to say the

3  analysis wasn't rigorous, but it -- no Court has reviewed

4  the precise question before your Honor, which is, under a de

5  novo standard of review, is the Equal Rights Amendment part

6  of the Constitution of the United States?

7          THE COURT:  And if I determine that you're right

8  in your analysis and their arguments are wrong, and you have

9  not filed -- this as a class action, you're -- the remedy

10 you're seeking is as to you.  But pragmatically, it would be

11 a pretty wide-reaching remedy potentially.

12     So address the political question aspect of it and the

13 big picture consequence if I were to go your way on your

14 motion for summary judgment.  What would be the practical

15 consequence of that?

16          MR. VALAME:  So I think there's kind of two

17 distinct issues.  There's the remedy question and there's

18 the political question, doctrine.  So I'll talk about

19 political question first.  The fact that it's about the

20 draft in foreign policy doesn't make it a political

21 question.  My Fifth Amendment claims, for example, I don't

22 even think the United States says those are political

23 questions, and the Supreme Court decided them on the merits

24 in 1980.  So the fact that it's, you know, a draft, which I

25 -- you know, it's a military thing.  It has foreign policy

*Echo Reporting, Inc.*

38

1  implications.  I acknowledge that.  That doesn't make it a

2  political question.

3      So if we go to the deadline -- that's the first thing,

4  deadline and state rescissions.  The deadline is not a

5  political question.  I'm just asking the Court to undergo a

6  normal textual analysis of the Constitution.  Is there --

7  can Congress impose a deadline in the prefatory clause.  And

8  just like the Carey case in 2012, you know, that might touch

9  on other branches -- it might disagree with the other

10 branches.  But there's no demonstrable textual commitment

11 that Congress decides all questions with Article V.  You

12 know, maybe four justices in Coleman thought that, but that

13 view has been rejected ever since.

14         THE COURT:  Uh-huh.

15         MR. VALAME:  I cite Justice Stevens in the 1970s

16 talking about that.  It's not a political question.  The

17 deadline just requires familiar application of

18 constitutional tools.

19      So if there's no textually demonstrable commitment, the

20 standards are judicially manageable.  We're not asking the

21 Court to say deadlines have to be reasonable.  That might be

22 unmanageable.  We're saying no deadlines or yes deadlines.

23 That's as manageable as it gets.  Then there's the

24 prudential factors of Baker vs. Carr.  Congress hasn't

25 spoken on the question.  You're not disrespecting coordinate

39

1  branches.  We don't have the enrolled bill rules.  There's

2  no unusual need for pressing adherence to a political

3  decision already made.  And, yeah, I don't think even the

4  government makes the political question argument on the

5  deadline.

6       So now, state rescissions.  I think the Court can

7  decide the political question like very easily, because the

8  states that have rescinded the ratifications have all said

9  expressly, "We do not believe the political question

10 doctrine applies."  So if all the states say, "Courts,

11 please decide this question" -- that was in a brief with the

12 D.C. circuit, by the way.  They said that and the district

13 court.  So if the states say that, then there's no reason

14 why the Court shouldn't.  And even absent that concession,

15 again, it's just the familiar application of constitutional

16 factors.  The Supreme Court has had similar questions with

17 term limits, with, you know, faithless electors in 2020.

18 Those were all state prerogatives that kind of presented a

19 similar analytical question, and the Supreme Court decided

20 them, I don't think even mentioning the political question

21 doctrine.  And I would note that the D.C. District Court's

22 analysis also included discussion of political question.

23 That Court found that there was no political question.  But,

24 again, the Mandamus standard is so high, the plaintiffs

25 couldn't reach it, and the district also found they lack

40

1  standing.  So that doesn't really apply in this case.

2       In terms of remedy -- so I'm asking for three remedies.

3  So I think the government concedes that a declaratory

4  judgment at absolute minimum as applied to me is

5  appropriate.  Injunctive relief as applied to me, I don't

6  think the government has made a serious effort to show that

7  my absence from the Selective Service would cause any

8  irreparable harm.  So if I prove my constitution rights were

9  violated, that creates a presumption of harm, presumption of

10 public interest, so an injunction should issue.

11      I think the biggest feud is over vacating regulations

12 for the Selective Service.  And I think, you know,

13 defendants don't really grapple with the fact the Ninth

14 Circuit has said the presumptive remedy for violation of the

15 APA, which says, you know, constitutional rights are

16 protected in administrative proceedings, is vacating the

17 regulations.  And they cite some dissenting opinion saying,

18 vacatur might not be authorized by the APA or it's not

19 appropriate.  You know, I cite Justice Kavanaugh who says it

20 is.  Maybe the Supreme Court will decide that.  But in the

21 Ninth Circuit, vacatur is the presumptive remedy.  And the

22 Ninth Circuit has said it's only not presumptive -- I think

23 I wrote this down here -- where the agency has -- where the

24 agency is "capable of resolving the issue on remand without

25 vacatur."  That's <u>Mont vs. Howland</u> (phonetic).  But the

41

1  Selective Service has said, "If you remand without vacatur,
2  we're not going to reconsider the issue because we don't
3  have any authority to do that."  So remanding without
4  vacatur would be futile.  The only option for the Court is
5  to do as the APA says and set aside the unlawful
6  regulations.
7       And I acknowledge that will have maybe a large impact
8  because the Selective Service won't be able to compel people
9  to register until Congress acts.  And I would say two things
10 about it.  First of all, if you vacate the regulations, I
11 think it's virtually assured the vacatur will be stayed on
12 appeal either by your Honor or the courts of appeal.  So the
13 impact won't be felt for some time.  And I say -- you know,
14 the Fifth Circuit has said that's a relevant consideration
15 when deciding the --
16           THE COURT:  It's irrelevant or relevant?
17           MR. VALAME:  Relevant --
18           THE COURT:  Relevant.
19           MR. VALAME:  -- when deciding the equities.
20       Second of all, we're not at the preliminary injunction
21 stage.  If you determine that I'm right on my legal
22 arguments, you're saying I have a 100-percent chance of
23 success on the merits, which means for purposes of according
24 the remedy, you don't have to consider the risk that you're
25 wrong.  Now, when you consider a stay pending appeal, that's

*Echo Reporting, Inc.*

42

1  a different analysis, the four factor stay test.  You might

2  decide to stay your opinion or your order.  But vacatur

3  should be granted initially at least.

4      And you know, I do think the two-year grace period

5  supports that -- the people already said Congress has two

6  years to comply.  I don't think this Court has the authority

7  to change that interest balancing and say, "Well, Congress

8  should have even more time, and we're not going to have any,

9  like, enforceable compulsion on Congress."  I don't think

10 that's in accordance with the 20th Amendment's text.

11     Okay.  What else do I have to say on this question?

12 Stephen Sachs.  Oh, the US says my arguments are circular on

13 the deadline.  I'll be honest, I don't really understand

14 what the US means by that, but I'll just explain how my

15 interpretation of Article V worked in practice.

16     So if Congress wants a deadline on an amendment, they

17 would propose an amendment with the deadline in the text.

18 Now, that deadline isn't legally operative when it's

19 proposed.  The only thing that's legally operative is the

20 proposal itself, which is before the states and the mode of

21 ratification.  But when three-fourths of the states ratify

22 that proposal, the deadline immediately becomes law.  So

23 let's say the deadline has expired, but states, you know,

24 symbolically, maybe, ratify anyways, the amendment will

25 become part of the Constitution, but then the deadline would

43

1  say, okay, I'm amending Article V, and the amendment no

2  longer has legal effect.

3     So it's not circular.  The amendment is still part of

4  the Constitution.  It just has no legal effect.  And, you

5  know, state governments are entitled to symbolically ratify

6  amendments.  Congress does symbolic gestures all the time.

7  So I don't think that circularity is a reason to reject my

8  position.

9     Let me see if there's anything else I have written down

10  here.  Oh, the Nash -- the Idaho case where the Supreme

11  Court vacated it under Munsingwear.  So the government

12  doesn't answer my citation to Wisconsin Department of

13  Revenue vs. Wrigley, which, you know, specifically says

14  Munsingwear vacaturs aren't precedent.  That makes sense.

15  The whole point when the Supreme Court vacates a lower court

16  decision under Munsingwear is they don't want anyone citing

17  it for legal consequences.  So I think it would be not

18  respectful to the purpose of the Munsingwear vacatur to say,

19  "Oh, maybe this is like a secret ruling that the amendment

20  expired anyways."  But even if you wanted to try to get the

21  tea leaves from Idaho vs. Nashville Organization of Women,

22  the Supreme Court would have vacated it on mootness grounds

23  even if the amendment was still pending.  Idaho's complaint

24  in that case asked for an injunction and joining the

25  administrator of general services from treating the deadline

*Echo Reporting, Inc.*

44

1  extension as valid.  Once the deadline extension expired,

2  the request for relief in Idaho's complaint became moot.  So

3  even if the amendment was still pending in that specific

4  case, mootness would still have been granted.  Or the

5  Supreme Court could have just thought that, you know, no

6  state has ratified in the past three years.  That means

7  unlikely, regardless of the deadline or validity of the

8  amendment.  So there's no concrete ripe injury at the

9  moment.

10      The point is we don't know why the Supreme Court

11  vacated it.  I can't even find a lot of the materials in

12  that case in the public record.  Maybe the government has

13  them.  But I don't, and I don't think the Court should

14  speculate so much on what the Supreme Court did all those

15  years ago.

16      Precedent.  Oh, I think last thing I might have to say

17  is, it's not the case that everyone accepted the deadline in

18  the prefatory clause was valid when it was proposed.  So,

19  you know, I made a bit of a list here.  So when in 1933

20  people first proposed to bring the deadline in the prefatory

21  clause, Lamar Jeffers objected, Rep Ramseyer rejected --

22  objected to that.

23      The House report in 1978 says that nothing in Article V

24  says provisions concerning the mode for ratification must be

25  passed by two-thirds super majorities or that the deadlines

*Echo Reporting, Inc.*

45

1  in amendments are part of the amendments themselves.  In

2  fact, the OLC report they relied upon says that, citing Rep

3  Jeffers and Rep Ramseyer, the evidence is to the contrary

4  that this prefatory deadline is valid.  When Senator Calfer

5  (phonetic) proposed the deadline in the prefatory text to

6  the 23rd Amendment, Senator Russell stood up and said, "This

7  is a departure from any draftsmanship I've ever seen with

8  regards to constitutional amendments."  And he was very

9  dubious that this would have the same, you know, inoperative

10 effect as the deadlines contained in the texts of prior

11 amendments.

12      So I -- and then I also have this statement from 117

13 Congressional Record, 3584 from 1971, saying the deadline is

14 merely a statute and isn't like a constitutional status.  So

15 it's like a smattering of statements.

16          THE COURT:  And that was in the context of -- what

17 was that in the context?

18          MR. VALAME:  So the deadline as a statute is from

19 the Equal Rights Amendment debates.  It's from 1971 I have

20 written here.

21          THE COURT:  Got you.

22          MR. VALAME:  I found it in a lot of the article

23 from 1980.  So it's like, yeah, bit of a historical

24 searching.  But I was able to find all these statements of

25 doubt that the deadline was valid.  So it's not the case

46

1 that, you know, I'm coming in 40 years later and unsettling
2 everyone's expectations in order to get an amendment
3 ratified.

4         THE COURT:  You've done lots of digging.  Well,
5 different procedural topic.  In a case alleging a
6 constitutional violation, we rarely have a settlement
7 conference in those cases because there's polarity -- yes,
8 no, no, yes.  There's not much gray area in between to say,
9 well, we compromise by striking down half of the statute or
10 by something like that.  So we don't usually have a
11 settlement conference.  There's something unusual in your
12 situation, and I don't need to dig too far into the facts,
13 but at the beginning of our hearing today, you mentioned
14 that you had applied to work for the government in a few
15 different jobs.  And I don't need to delve into whether
16 you're qualified and what those positions are.  And Mr.
17 Rising has not evaluated those, and he doesn't know the
18 answer to those right now either.  But it occurs to me if --
19 that there may be -- you maybe have different objectives,
20 and I don't know what all your objectives are.  But in a
21 settlement conference, which is a non-public proceeding, you
22 can have a communication about those things to figure out on
23 the plaintiff side what are your objectives, on the defense
24 side what are your interests and objectives.  And sometimes,
25 there might be something that is not obvious to the Court as

*Echo Reporting, Inc.*

47

1  to what might be a way to be a win-win solution or to give
2  both parties something of what they're wishing that would be
3  a good solution.  I have no idea if that's possible.  But it
4  occurs to me because you've got some other things that were
5  outside the pleadings, and there's some facts which I didn't
6  know about until we got here, and the defense is hearing
7  about for the first time.  So this a case where there would
8  be utility in a settlement conference to have you get
9  together, you know, in a less formal setting without a
10 record to explore and see if there's a compromise or my --
11 or is that not a good use of your time?

12          MR. VALAME:  So I don't think that would be a good
13 use of time.  I didn't apply to the jobs to manufacture
14 standing for this case.  I'm actually applying for them, and
15 I think, qualified.  And I would appreciate if the
16 government agreed not to enforce the regulations against me
17 for the pendency of this litigation.  But a settlement
18 conference requires give and take on both sides, and I'm not
19 sure what I would be able to offer the government in
20 exchange for any concessions.  The individual claims aren't
21 for the Court, really, and they wouldn't help with the job
22 applications anyways, and I wouldn't dismiss my complaint or
23 alter it in order to get those jobs.  If they deny me the
24 jobs on this basis, I would probably come here and ask for
25 an injunction, honestly.  So I don't think a settlement

*Echo Reporting, Inc.*

48

1  conference would be worthwhile because there's just nothing

2  I can offer the government.

3       THE COURT:  All right.  Thank you.  Think about

4  that.  I'll ask Mr. Rising the same question.  It does take,

5  as they say, two to tango.  So I sometimes order people to

6  have a conversation that doesn't compel a result, but just

7  have a conversation, because sometimes there's an area of

8  overlap that's not obvious to me that can become obvious

9  once the parties are talking with each other directly.  So I

10 hope you keep an open mind to whether there is something

11 less than taking us to the Supreme Court, which you know is

12 a few hurdles away from where you're at right now.  But it

13 seems like you're well prepared for a long legal argument,

14 and I appreciate your presentation.

15    Anything else you would like me to consider?  Now, I

16 will give you a chance to reply to them.  But anything else

17 you would like to tell me?

18       MR. VALAME:  So do you want to hear argument on

19 the state rescissions issue or --

20       THE COURT:  I don't need to hear anything more

21 because you've given me a lot of information already.  But

22 I'm giving you open floor if you -- if you've got more that

23 you want to highlight for me.

24       MR. VALAME:  Okay.  I guess I just point the Court

25 to my arguments and why implied power should be construed

49

1 narrowly. There's a lot of case law on that issue. Supreme
2 Court has said it's only absolutely necessary powers and the
3 fact that, you know, for the first 100 and something years,
4 there were no deadlines at all kind of proves that it's not
5 necessary for Congress. And that's especially true because
6 this is Congress exercising power unilaterally and,
7 according to the government, by bare majorities with no
8 other checks. I don't think I have to repeat that all the
9 way here, but it's an important consideration when
10 evaluating the scope of congressional power.
11     I think that's all I have to say. My voice is going
12 dead. So I'll let the government --
13         THE COURT: I've exhausted you. All right. Thank
14 you very much for your presentation.
15     Mr. Rising. Thank you for waiting.
16         MR. RISING: Thank you, your Honor, may --
17         THE COURT: And just to be a hot bench, if I might
18 jump in just on this settlement conference idea. And I'm
19 putting you on the spot, because it was not something I
20 prepared you for in advance, but what's your reaction to
21 that concept?
22         MR. RISING: Of course. We're happy to discuss,
23 but it's something that I would have to speak with my
24 clients and the department first.
25         THE COURT: Yeah. On that, what I'll do for both

*Echo Reporting, Inc.*

50

1  of you is to -- rather than spending more time on that topic

2  now, after our hearing, go home and confer with your

3  colleagues and think about it.

4      And, Mr. Valame, you don't have anyone to confer with,

5  but think about it.

6      And I'll ask you each to file a kind of a case

7  management response in a week's time just telling me what

8  your views are.  If you think it wouldn't be helpful, you

9  can say that, or that you do think it would be productive,

10 that that's what you think.  And also timing.  If you said,

11 you know, you think it should be later or after the Court

12 has decided this or sooner that -- you can give me that

13 guidance too.

14     All right.  So that's a little segue.  But, Mr. Rising,

15 there have been much discussed there.  I'll give you open

16 floor.

17         MR. RISING:  Thank you, your Honor.  So jumping

18 straight to the Equal Rights Amendment piece, because I

19 think plaintiff has pretty clearly conceded the Fifth

20 Amendment claim is not a viable vehicle for him at this

21 point.  Much of plaintiff's argument focuses on making the

22 case into something much harder than it really is.  This is

23 not a case where the government is asking the Court to say

24 that Congress could compel ratification by 100-percent of

25 states instead of three-quarters.  This is not any of the

*Echo Reporting, Inc.*

51

1 many harder cases that plaintiff addressed.

2    Instead, this is a case that involves Congress doing

3 something it's done for hundreds of years.  It's imposing a

4 ratification deadline, which the Courts upheld in <u>Dillon</u>,

5 which the <u>Coleman</u> Court found was a holding, and which most

6 recently in D.C., the D.C. circuit just found was a

7 permissible exercise of Congress' Article V power.

8    Plaintiff really depends on the distinction between

9 deadlines in text versus deadlines in the prefatory clauses.

10 This is really a distinction without a difference.  Congress

11 has been including legally operative language in prefatory

12 clauses since the Bill of Rights.  And that congressional

13 history, that level of historic practice is not 12 years.

14 That's hundreds of years.

15    In those first early amendments, Congress included the

16 mode of ratification in there.  That would be ratification

17 by the Convention or ratification by the states, and then

18 also instructions that the states could ratify any of the

19 Bill of Rights or all of them.  To hold that plaintiff's

20 view applies and that a prefatory clause language is totally

21 meaningless would be to invalidate all of that language in

22 the Bill of Rights, which we've understood to be part of how

23 those amendments were ratified since the beginning of this

24 country.  Going all the way forward until all of the most

25 recently passed amendments, all amendments proposed in

52

1  modern history in fact have included legally operative

2  language in prefatory text.

3       The Court in the D.C. circuit in <u>Illinois vs. Ferriero</u>

4  really addressed this question head on.  Plaintiffs there

5  made the exact same argument.  The Court rejected it pretty

6  swiftly under the same reasoning.  It's -- there's no basis

7  to draw a distinction between the two.  The Court in <u>Dillon</u>

8  did not draw distinction between the two.  The D.C circuit

9  cited those cases and there would still be good law in

10 support of its position.  I understand we're on a Mandamus

11 standard there, but the same reasoning applies in this case,

12 your Honor.  It's pretty clear from the government's

13 perspective.

14      So as to the rescissions, your Honor, I don't think

15 that's a question the Court needs to reach.  The Court in

16 the D.C. circuit didn't end up needing to reach the question

17 when it considered the same issue.  But we would add that it

18 does provide a narrower hurdle for plaintiff's claims.  The

19 Court would not only have to find that the deadline was

20 invalid, but then also find that actions of five states

21 afterward are also invalid.  This would be a pretty

22 momentous step for the Court to take, and plaintiff doesn't

23 offer any precedent in his favor on any of these points.

24      And then lastly as -- the vacatur.  Plaintiff only asks

25 for relief as to himself in the complaint.  The complaint --

53

1 I believe it's paragraphs A, B, and C of the request for
2 relief, "Ask for vacatur only insofar as these regulations
3 impose legal obligations on the plaintiff," and then, "Ask
4 for a declaratory judgment and injunction only insofar as
5 regulations apply to plaintiff as well." I don't think
6 based on what's in the complaint, we've got any grounds to
7 give any broader relief in this case. But we don't contend
8 that any relief is warranted here, because as every Court to
9 have ever considered an ERA claim has found, it doesn't
10 provide the basis to state a claim.
11      Do you have any questions, your Honor?
12          THE COURT:  I do not.
13          MR. RISING:  Thank you very much.
14          THE COURT:  Thank you very much.
15      Mr. Valame, back to you.
16          MR. VALAME:  Okay.  So I guess the US first argues
17 that prefatory clauses are distinction without a difference,
18 which is very odd considering everyone agrees that what's in
19 the prefatory clauses is not part of the Constitution, and
20 the OLC has agreed that things that amend Article V that,
21 you know, we might think would be a prefatory clause if it
22 had legal effect must be in the content of amendments in
23 order to amend the effects of Article V.  So I don't think
24 the United States' position can be squared with the
25 constitutional reality that no one considers these clauses

*Echo Reporting, Inc.*

54

1  part of the Constitution and that everyone agrees that some

2  things have to amend Article V.  I mean, the text of

3  amendments.

4      The lack of precedent, you know, again, this is the

5  first case that have presented the issue.  The government

6  can say there's no precedent, but that shouldn't factor very

7  heavily into the Court's analysis.  And I think especially

8  this Court should not rely on Illinois vs. Ferriero very

9  much in its decision.  The D.C. circuit I think was very,

10 very clear in every single piece of analysis that it did

11 that it was under the clear indisputable standard.  So, you

12 know, when the D.C. circuit says, "We reject the claim that

13 prefatory clauses and the texts are different," it says,

14 "Under the clear indisputable standard," "Under the clear

15 and indisputable standard."  So I think it would be, you

16 know, legal error for this Court to say -- to rely on the

17 D.C. circuit as persuasive authority in that area, because

18 the Mandamus standard is, again, sky high.

19     The Bill of Rights question really quick.  So the

20 argument made is that Congress said all or some of the

21 proposed amendments can be ratified.  That's -- A, it's not

22 divorced from the content of amendments.  All that Congress

23 is doing with that is saying one amendment ends here and the

24 next amendment starts here.  That's clearly Congress' power

25 to designate what the content of amendments is.  Congress

*Echo Reporting, Inc.*

55

1  was saying, "We're not proposing one long amendment with 12

2  articles.  We're proposing one -- we're proposing 12

3  separate amendments."  And that isn't having any legal --

4  the operative effect in the same way that, you know, the US

5  says the Congress can nullify state ratification deadlines.

6  They don't bring up the 12th and 17th Amendments.

7       And then lastly, I would say, you know, the US says I'm

8  making this case a lot harder than it has to be because I'm

9  bringing up all these farfetched hypotheticals.  And I think

10 the question you should ask is, under the United States'

11 position, what stops these hypotheticals from happening?

12 You know, what standard would a Court apply to say Congress

13 can impose a seven-year deadline in order to make sure a

14 ratification is contemporaneous, but can't impose a deadline

15 or a requirement that, I don't know, the ratifying states

16 can't be gerrymandered?  The ratifying states have to

17 consider it at two legislative sessions.  Those all promote

18 consideration, deliberation, and national uniformity.  And

19 there's no sound reason to distinguish the deadline

20 analytically from all these things.

21      So, you know, the Court can't just say only deadlines

22 are valid to be generous.  It has to say Congress has a

23 broad power by bare majorities they can very deeply control

24 this amendment process that Article V expressly divide

25 between Congress and the states and doesn't give Congress

*Echo Reporting, Inc.*

56

1  sole and plenary power over.

2      Last thing, vacatur in my complaint.  I did say vacate

3  the regulations insofar as they impose obligations on

4  plaintiffs.  But my understanding is that vacating a

5  regulation for one person vacates for everyone.  That was in

6  the statement of recent decision I gave to the Court with

7  Justice Kavanaugh's statement.  So, yes, you would apply --

8  you would vacate the regulation as applied to me, but you're

9  operating on the regulation itself with that remedy.  So the

10 regulation would just be gone for everyone.  And maybe I'll

11 take out the language in my amended complaint if your Honor

12 is okay with that.

13         THE COURT:  Very good.  All right.  Thank you for

14 your presentation.  And that is a good example of if you

15 were amending your complaint, that might be something that

16 you addressed.

17     All right.  I'll take the motion under submission with,

18 of course, the permission that I already granted there for

19 further briefing and potential amended complaint.  I'm not

20 compelling amended complaint.  If you chose to file amended

21 complaint, to present it by December 20th, and your feedback

22 on settlement process also by the same date, and I will not

23 be ruling until I have those further submissions.  So don't

24 be checking your mail every five minutes between now and

25 then.  And as to any of the procedural things that occur

57

1  after that, we'll have a chance to communicate.  So I think
2  that gives us next dates.  Thank you very much for your
3  presentations.
4           MR. VALAME:  Can I say one thing?
5           THE COURT:  Please.  Yeah.
6           MR. VALAME:  If you grant the government's motion,
7  I think you mentioned this at the opening, the individual
8  defendants -- I think the claims would clearly fail for the
9  same reasons that you grant the government's motion on.  And
10 if you grant the motion -- my motion for summary judgment,
11 then I would request -- I expect the government would
12 immediately appeal.  So those proceedings will be stayed.  I
13 just don't want to have the individual claims, like, kind of
14 hanging over everyone's head.
15          THE COURT:  I understand that you don't want them
16 hanging out there.  Everyone's -- you're enthusiastic to get
17 onto appeal, but we've got a few steps to get to before
18 then.  But, yes, I did note that in the briefs and in your
19 presentation that you're not hoping to have further
20 proceedings in this court after the rulings on the pending
21 motions.  But we'll see.
22     Thank you very much.  Have a great day.
23          MR. RISING:  Thank you, your Honor.
24          MR. VALAME: Thank you.
25          THE COURT:  We're in recess.

*Echo Reporting, Inc.*

58

1        (Proceedings adjourned at 12:33 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

59

CERTIFICATE OF TRANSCRIBER


1        I certify that the foregoing is a true and correct

2    transcript, to the best of my ability, of the above pages of

3    the official electronic sound recording provided to me by

4    the U.S. District Court, Northern District of California, of

5    the proceedings taken on the date and time previously stated

6    in the above matter.

7        I further certify that I am neither counsel for,

8    related to, nor employed by any of the parties to the action

9    in which this hearing was taken; and, further, that I am not

10   financially nor otherwise interested in the outcome of the

11   action.


Echo Reporting, Inc., Transcriber

Monday, March 18, 2024

1  Vikram Valame

2  4039 2nd Street Palo Alto, California 94306

3  (208) 994 3067

4  vik.valame@gmail.com

5

6

7

8
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9   Vikram Valame                                    )  Case Number: 5:23-cv-03018-NC
                                                      )
10                      Plaintiff,                     )  **DECLARATION OF <u>VIKRAM VALAME</u>**
                                                      )
11          vs.                                        )  **IN SUPPORT OF PLAINTIFF'S MOTION**
                                                      )  **FOR SUMMARY JUDGMENT**
12                                                     )
    Joseph R. Biden, President of the United           )
13  States, et. al.                                    )
                                                      )
14                      Defendants.                    )
                                                      )
15                                                     )
                                                      )
16                                                     )
                                                      )
17                                                     )
                                                      )
18                                                     )
                                                      )
19                                                     )
20  _____)

21          I, *Vikram Valame* declare as follows:

22  *[In the first paragraph, explain who you are and how you are connected to the party or events*
23  *relevant to the lawsuit.  If you are the Plaintiff or Defendant, say so here.  If you are a witness,*
    *say how you are involved.]*

24          1.      I am plaintiff in this lawsuit against the United States Federal Government and its

25  officials.

26          2.      I have personal knowledge of all facts stated in this declaration, and if called to

27  testify, I could and would testify competently thereto.

28

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary
Judgment
CASE NO. <u>5:23-cv-03018-NC</u>; PAGE 1 OF 3 [*JDC TEMPLATE Rev.2015*]     ER-83

3.      I am a male citizen of the United States.

4.      In May of 2023 I attained 18 years of age.

5.      After attaining the age of 18, I have never been in active-duty military service, enrolled in any military academies, imprisoned, institutionalized, hospitalized, or continuously confined to a secure facility.

6.      I have not registered for the Selective Service system through any means, and do not plan to do so. I do not wish to spend my time, electricity, mobile data, or postage to register. I also do not wish to participate in an unconstitutionally discriminatory process.

7.      In May of 2023, I accessed the Selective Service System's website by inputting sss.gov/register into my internet browser. That webpage displayed text stating "current law does not permit females to register". I have attached a PDF save of that web page taken from my computer on September 14th, 2023 as Exhibit A to my motion for summary judgment. Having reviewed that PDF, I can confirm that it appears identical to the webpage I viewed in May, except that the normally unclickable and unfilled checkbox for "female" is checked on the PDF.

8.      Some time after learning of the discriminatory registration prohibition for women, I navigated to the "benefits & penalties" section of the Selective Service System website. This web page was located at https://www.sss.gov/register/benefits-and-penalties/. On that web page I saw that substantial penalties could be imposed on me for failing to register. The website stated that "failure to register is a felony punishable by a fine of up to $250,000 and/or 5 years imprisonment", and that failure to register would subject me to referral to the Department of Justice for investigation and prosecution. The website also stated that I could lose valuable federal job opportunities. I downloaded a PDF copy of the website onto my computer, which I have attached as Exhibit B to my motion for summary judgment. I reviewed that PDF and can confirm it accurately reflects the contents of the website that I saw.

9.      I then navigated to the "Frequently Asked Questions" area of the Selective Service System's website at https://www.sss.gov/faq/. I clicked on the drop down menu titled "I just got a reminder to register in the mail. How did you get my name and address?". The website

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 2 OF 3 [*JDC TEMPLATE Rev.2015*]

ER-84

stated that the Selective Service System took addresses and names from public high schools to enforce draft registration. Having recently graduated a public high school, this concerned me. I have attached a PDF download of this web page as Exhibit C to my motion for summary judgement. Having reviewed this PDF download, I can confirm that it accurately reflects the web page that I previously viewed.

10. I also checked the severity of the local U.S. Attorney's enforcement of the registration requirement. After googling ""US Attorney for the northern district of California" and "selective service"", I found a web page from the department of Justice at https://www.justice.gov/usao-ndca/employment. That web page stated that the U.S. Attorney for the Northern District of California was requiring that every job applicant in his entire office be registered with the Selective Service. I have attached a PDF copy of that page as Exhibit D to my motion for summary judgment. Having reviewed the PDF I downloaded on September 14th, 2023, I can confirm that it accurately reflects the website I initially viewed.

11. Because the registration requirement stigmatizes me as more easily disposed of than women, and threatens me with criminal prosecution, I filed a lawsuit against the requirement on June 20th, 2023.

12. I certify my compliance with the Local Rules, the Federal Rules of Civil Procedure (including rule 11), and other relevant ethical standards in connection with my motion for summary judgment. I have complied with those obligations to the best of my abilities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 15th, 2023.

Signature:

Printed name: Vikram Valame

Address: 4039 2nd Street Palo Alto, California 94306

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 3 OF 3 [*JDC TEMPLATE Rev.2015*]          ER-85

Phone Number: (208) 994 3067

DECLARATION OF Vikram Valame IN SUPPORT OF Plaintiff's Motion for Summary Judgment

CASE NO. 5:23-cv-03018-NC; PAGE 4 OF 3 [*JDC TEMPLATE Rev.2015*]          ER-86

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10   VIKRAM VALAME,                        Case No. 23-cv-03018-NC
11                    Plaintiff,
                                           **ORDER GRANTING**
12          v.                             **DEFENDANTS' MOTION TO**
                                           **DISMISS; DENYING PLAINTIFF'S**
13   JOSEPH ROBINETTE BIDEN, et al.,       **MOTION FOR TEMPORARY**
                                           **RESTRAINING ORDER**
14                    Defendants.
                                           Re: ECF 30, 38, 39, 57
15

16          Plaintiff Vikram Valame alleges the government's military draft registration

17   requirements discriminate against him on the basis of sex.  At the core of his argument,

18   Valame contends the States ratified the Equal Rights Amendment ("ERA") as the 28th

19   Amendment to the Constitution.  Defendants counter there is no 28th Amendment and

20   Valame cannot state a claim for relief.  Finding no 28th Amendment at the end of the

21   Constitution, this Court agrees with Defendants.  Accordingly, this Court finds Valame

22   cannot state a claim for relief and DISMISSES his claims with prejudice.  This Court

23   DENIES Valame's motion for a temporary restraining order on the same grounds.

24   **I.      BACKGROUND**

25          **A.     Military Selective Service Act**

26          Valame challenges the registration provisions of the Military Selective Service Act,

27   50 U.S.C. §§ 3801–3820 ("MSSA").  Generally, the MSSA requires male citizens and residents of

28   the United States between the ages of 18 and 26 to register with the Selective Service System

*United States District Court*
*Northern District of California*

ER-87

("SSS"). 50 U.S.C. §§ 3802(a), 3809. Those who fail to register may face penalties or denial of federal benefits. *See* §§ 3811(a), 3811(f). Women are not required to register. *See* 50 U.S.C. § 3802(a). Registrants must keep SSS informed of their current address. *See* 32 C.F.R. § 1621.1(a).

**B.     Factual History**

Valame is an 18-year-old male. ECF 51 ("FAC") ¶ 1. He is a US citizen residing within this District. *Id.* Under the MSSA, Valame is required to register with the SSS. *See id.*; 50 U.S.C. §§ 3802(a), 3809. Valame "has knowingly and willfully refused to register for the draft, despite his obligation to do so." FAC. ¶ 23.

Generally, Valame "does not wish to spend time, postage money, cellular data, or other limited resources registering for the military draft." *Id.* ¶ 20. Nor will Valame "obey the [change in address] notification requirement." *Id.* ¶ 25. According to Valame, this notification requirement harms him because it "requires the expenditure of time and money to pay for communications to the SSS." *Id.* ¶ 25.

Valame also states he "suffers serious stigmatic injury from the implicit view that he is expendable and required to defend his county on an unequal basis with his fellow citizens." *Id.* ¶ 39. Overall, Valame claims the MSSA requirements cause him to "suffer[] frustration and significant anxiety about his role in society." *Id.* ¶ 25.

Valame claims to experience further harm "because these provisions deny him job opportunities provided by the federal government." *Id.* ¶ 40 (cleaned up). These harms form the basis of his motion for a temporary restraining order. *See* ECF 75 ("TRO"). Valame states he applied for a summer internship with the Nuclear Regulatory Commission. TRO at 2. According to Valame, the NRC tentatively selected him for an internship, before informing him it would revoke his offer if he did not register with the SSS. TRO at 2. Valame asks this Court to restrain Defendants from "taking adverse employment action against" him. TRO at 8.

**C.     Procedural History**

Valame filed his complaint *pro se* on June 20, 2023. ECF 1. He followed with a motion for summary judgment on September 15, 2023. ECF 30. Defendants countered on

United States District Court
Northern District of California

United States District Court
Northern District of California

1    September 29, 2023, with an opposition to Valame's motion and cross motion to dismiss.

2    ECF 38.  Valame filed his own opposition on October 13, 2023.  ECF 39.

3         After a hearing on the parties' cross motions, Valame filed an amended complaint

4    on December 19, 2023.  *See* FAC.  Valame brings five claims against Defendants: three for

5    declaratory relief under the Administrative Procedures Act; a *Bivens* claim; and a

6    California Bane Act claim.  *See id.* at ¶¶ 52–81.  Each claim relies on Valame's

7    "constitutional rights under the 28th Amendment."  *See id.* at ¶¶ 54, 58, 66, 75, 80.

8    Valame realleges these same claims with reference to the 5th Amendment, though he

9    concedes those "claims are foreclosed by binding precedent."[1]  *Id.* ¶ 82–83.

10        Per this Court's request, the parties also filed supplemental briefing on the issue of

11   standing.[2]  ECF 52, 54.  Defendants "incorporate[d] all of the arguments for dismissal

12   contained in their motion to dismiss" into their supplemental brief.  *See* ECF 54 at 1 n.1.

13   This Court finds Defendants' incorporated arguments sufficiently address Valame's FAC

14   without need for further briefing.

15        Before this Court issued a ruling, Valame moved for a temporary restraining order.

16   *See* TRO.

17        Both parties have consented to magistrate judge jurisdiction.  ECF 3, 25.

18   **II.    LEGAL STANDARD**

19        A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

20   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To

21   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

22   true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

23   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

24   reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the

25   complaint and draw all reasonable inferences in favor of the non-moving party."  *Retail*

26   

27   ---
[1] This Court agrees and DISMISSES with prejudice Valame's claims referencing the 5th Amendment.

28   [2] Though this Court thanks the parties for their thoughtful briefing on the issue of standing, it decides this matter on other grounds and does not reach that issue.

3

1  *Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

2  2014). A court, however, need not accept as true "allegations that are merely conclusory,

3  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs.*

4  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A facially plausible claim "allows the court to

5  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

6       If a court grants a motion to dismiss, leave to amend should be granted unless the

7  pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203

8  F.3d 1122, 1127 (9th Cir. 2000).

9  **III.   DISCUSSION**

10      Valame's claims depend on the existence of a 28th Amendment. This Court finds

11  no such amendment in the Constitution. Defendants convincingly cite to persuasive

12  authority supporting this finding. On the other hand, Valame has not provided any court

13  authority indicating otherwise. Accordingly, this Court DISMISSES Valame's claims.

14  Because it relies on the same failed legal theory, this Court also DENIES his TRO.

15      **A.   History of the ERA**

16      Though not necessary to our analysis, this Court quotes a brief history of the ERA:

> The Equal Rights Amendment [] was introduced in Congress [in
> 1923]. . . . [B]ut it took until 1970 for the proposal to make it to
> the House Floor. By a vote of 352 to 15, the body proposed its
> ratification as the [then] Twenty-seventh Amendment to the
> United States Constitution. *Illinois v. Ferriero*, 60 F.4th 704,
> 711–12 (D.C. Cir. 2023). The Senate, however, did not take it
> up and it lapsed. Two years later, both chambers passed the
> resolution proposing the Amendment for ratification and
> submitted it to the 50 states. Contained within the resolution,
> although not the text of the ERA, was a seven-year deadline
> within which three-quarters of the states, 38 of them, were
> required to vote affirmatively for the Amendment to be ratified.
> *Id.* at 712.
>       As of 1982 only 35 states had voted to ratify, even though
> the deadline had been extended by three years. For the next 30
> years, the ERA was presumably considered dead, but in 2018,
> Nevada ratified it, followed quickly by Illinois and Virginia. *Id.*
> at 713. Since then, a battle to accord vitality and validity to the
> ERA has been fought . . . .

27  *Elizabeth Cady Stanton Tr. v. Neronha*, No. 22-cv-00245-MSM, 2023 WL 6387874, at *1

28  (D.R.I. Sept. 8, 2023) (footnotes omitted).

United States District Court
Northern District of California

4

**B.     Valame Cannot State a Claim Under a Non-Existent Amendment.**

Valame argues a 28th Amendment protects him against discrimination on the basis of sex.  *See* FAC ¶ 12.  The Constitution does not agree.  Nor does persuasive authority.  *See, e.g.*, *Ferriero*, 60 F.4th at 719.

**1.     The Constitution Does Not Include a 28th Amendment.**

As an initial matter, no 28th Amendment appears in the Constitution.  *See generally* Constitution.  Valame does not cite to any court authority finding otherwise.  *See generally* ECF 30, 39.  "The United States Constitution provides a pathway for adding new Amendments, and Congress has determined that the last step on that path is certification and publication by the National Archivist."  *Elizabeth Cady Stanton Tr.*, 2023 WL 6387874, at *7.  The Archivist has not taken those necessary steps.  *See Ferriero*, 60 F.4th at 713 (recounting how "the Archivist refused to certify and publish the amendment").  This Court finds the 28th Amendment's lack of publication convincing evidence it does not now exist.  *See id.*; *see also* Constitution (concluding at 27th Amendment).

Beyond the 28 Amendment's current state of nonbeing, the *Ferriero* court took up the question of whether the Archivist owed a duty to bring it to life.  *Ferriero*, 60 F.4th 704.  The court walked through the ERA's storied history, *id.* at 711–13, and the certification requirements imposed on the Archivist, *id.* at 713–19.  At bottom, the court concluded the Archivist did not have a duty to certify and publish the ERA.  *Id.* at 719.  This Court finds *Ferriero* persuasive.  Thus, not only does the Amendment granting Valame his purported rights not exist, but the Government is also under no duty at this time to bring it into existence.  *See id.*

Ultimately, either the 28th Amendment simply does not exist.  *See Taylor v. El Centro Coll.*, No. 3:21-CV-0999-D, 2022 WL 102611, at *8 (N.D. Tex. Jan. 10, 2022) ("*Taylor*'s claim under the Equal Rights Amendment fails because there is no such amendment to the United States Constitution."); *Ferguson v. Idaho Dep't of Correction*, No. 4:20-CV-00003-DCN, 2020 WL 1016447, at *1 n.1 (D. Idaho Mar. 2, 2020) ("The Equal Rights Amendment was not ratified and is not part of the United States

1  Constitution.").  Or the Archivist does not owe a duty to certify and publish the ERA, thus

2  precluding its creation.  *See Ferriero*, 60 F.4th at 719.  For our purposes, the result is the

3  same: there is now no 28th Amendment and Valame cannot state a claim for relief under a

4  constitutional amendment that does not exist.

5        Therefore, this Court DISMISSES Valame's claims.  Because no new allegations

6  would save his claims, this Court finds leave to amend futile.  *See Lopez*, 203 F.3d at 1127.

7  **C.**    **Valame TRO Motion is Denied.**

8        Valame's TRO also hinges on his purported rights under the 28th Amendment.

9  Finding he does not possess those rights, this Court DENIES his application for a TRO.

10  **IV.**    **CONCLUSION**

11        This Court DISMISSES Valame's claims with prejudice.  As his TRO relies on the

12  same legal theory, this Court also DENIES his motion for a TRO.

13        **IT IS SO ORDERED.**

14

15  Dated:  January 20, 2024              _____

16                            NATHANAEL M. COUSINS
                          United States Magistrate Judge

United States District Court
Northern District of California

6

ADRMOP,APPEAL,CLOSED,CONSENT,E–ProSe,ProSe

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:23–cv–03018–NC

Valame v. Biden et al
Assigned to: Magistrate Judge Nathanael M. Cousins
Demand: $4,202,000
Case in other court:  9th Circuit, 24–00369
Cause: 28:1331 Fed. Question

Date Filed: 06/20/2023
Date Terminated: 01/20/2024
Jury Demand: Plaintiff
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Vikram Valame**                     represented by  **Vikram Valame**
4039 2nd Street
Palo Alto, CA 94306
208–994–3067
Email: vik.valame@gmail.com
PRO SE

V.

**Defendant**

**Joseph Robinette Biden**            represented by  **Michael Joseph Gerardi**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616–0680
Email: michael.j.gerardi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Room 12108
Washington, DC 20530
202–514–3346
Email: andrew.e.carmichael@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
DOJ–Civ
Civil Division
1100 L Street NW
Ste 11406
Washington, DC 20005
202–353–5829
Email: andrew.j.rising@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Craig T. Brown**                    represented by  **Michael Joseph Gerardi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joel C. Spangenberg**                represented by    **Michael Joseph Gerardi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven L. Kett**                represented by    **Michael Joseph Gerardi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The United States, Selective Service**                represented by    **Michael Joseph Gerardi**
**System**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ismail Ramsey**                represented by    **Michael Joseph Gerardi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Arbogast**
*TERMINATED: 10/18/2023*

represented by **Michael Joseph Gerardi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Evan Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew James Rising**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/20/2023 | 1 | COMPLAINT against John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System (Filing fee $ 402–511019020.). Filed byVikram Valame. Consent/Declination due by 7/5/2023. (Attachments: # 1 Civil Cover Sheet, # 2 receipt)(hdj, COURT STAFF) (Filed on 6/20/2023) (Entered: 06/20/2023) |
| 06/20/2023 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 9/13/2023. Initial Case Management Conference set for 9/20/2023 10:00 AM in San Jose, Courtroom 5, 4th Floor. (hdj, COURT STAFF) (Filed on 6/20/2023)** <br><br> **Any non–CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br><br> **(Entered: 06/20/2023)** |
| 06/22/2023 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Vikram Valame.. (Valame, Vikram) (Filed on 6/22/2023) (Entered: 06/22/2023) |
| 06/22/2023 | 4 | Summons Issued as to All Defendants, U.S. Attorney and U.S. Attorney General (hdj, COURT STAFF) (Filed on 6/22/2023) (Entered: 06/22/2023) |
| 06/29/2023 | 5 | Summons Issued as to Ismail Ramsey (hdj, COURT STAFF) (Filed on 6/29/2023) (Entered: 06/29/2023) |
| 07/03/2023 | 6 | Summons Issued as to Joseph Robinette Biden, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 7 | Summons Issued as to Craig T. Brown, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 8 | Summons Issued as to Ismail Ramsey, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 9 | Summons Issued as to The United States, Selective Service System, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 10 | Summons Issued as to The United States Federal Government, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 11 | Summons Issued as to Joel C. Spangenberg, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 12 | Summons Issued as to John Arbogast, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |
| 07/03/2023 | 13 | Summons Issued as to Steven L. Kett, U.S. Attorney and U.S. Attorney General (cv, COURT STAFF) (Filed on 7/3/2023) (Entered: 07/03/2023) |

| 08/02/2023 | 14 | AFFIDAVIT of Service for Initial Complaint and Papers *by certified mail* served on Civil Process Clerk for the Northern District of California on July 10th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
|---|---|---|
| 08/02/2023 | 15 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on U.S. Attorney General on July 14th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 16 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Selective Service System on July 12th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 17 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Joseph R. Biden on July 25th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 18 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Joel C. Spangenberg on July 11th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 19 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Ismail Ramsey on July 10th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/02/2023 | 20 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Craig T. Brown on July 11th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 8/2/2023) (Entered: 08/02/2023) |
| 08/15/2023 | 21 | ADR Certification (ADR L.R. 3–5 b) of discussion of ADR options (Valame, Vikram) (Filed on 8/15/2023) (Entered: 08/15/2023) |
| 08/21/2023 | 22 | CLERK'S NOTICE RE: Representing Yourself Before This Court. (lmh, COURT STAFF) (Filed on 8/21/2023) (Entered: 08/21/2023) |
| 08/24/2023 | 23 | NOTICE of Appearance by Michael Joseph Gerardi *on behalf of Defendants* (Gerardi, Michael) (Filed on 8/24/2023) (Entered: 08/24/2023) |
| 08/24/2023 | 24 | ADR Certification (ADR L.R. 3–5 b) of discussion of ADR options *by Defendants* (Gerardi, Michael) (Filed on 8/24/2023) (Entered: 08/24/2023) |
| 08/24/2023 | 25 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System.. (Gerardi, Michael) (Filed on 8/24/2023) (Entered: 08/24/2023) |
| 08/24/2023 | 26 | STIPULATION WITH PROPOSED ORDER re 2 Initial Case Management Scheduling Order with ADR Deadlines, filed by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Attachments: # 1 Proposed Order)(Gerardi, Michael) (Filed on 8/24/2023) (Entered: 08/24/2023) |
| 08/24/2023 | 27 | **ORDER GRANTING 26 Stipulation to Vacate Case Management Conference set for 9/20/2023. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 8/24/2023) (Entered: 08/24/2023) |
| 09/07/2023 | 28 | STIPULATION WITH PROPOSED ORDER *Regarding Briefing Schedule For Cross–Motions* filed by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Attachments: # 1 Proposed Order)(Gerardi, Michael) (Filed on 9/7/2023) (Entered: 09/07/2023) |
| 09/07/2023 | 29 | **ORDER GRANTING 28 Stipulated Request to Set Briefing Schedule for Cross–Motions. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 9/7/2023) (Entered: 09/07/2023) |
| 09/15/2023 | 30 | MOTION for Summary Judgment *on Claims 1–3* filed by Vikram Valame. Motion Hearing set for 12/13/2023 01:00 PM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 9/29/2023. Replies due by 10/13/2023. (Attachments: # 1 Declaration Declaration of Vikram Valame, # 2 Exhibit |

| | | |
|---|---|---|
| | | Exhibit A – SSS Registration, # 3 Exhibit Exhibit B – Benefits & Penalties, # 4 Exhibit Exhibit C – SSS FAQ, # 5 Exhibit Exhibit D – US Employment)(Valame, Vikram) (Filed on 9/15/2023) (Entered: 09/15/2023) |
| 09/18/2023 | 31 | MOTION for Extension of Time to File *Service and Proofs of Service* filed by Vikram Valame. (Attachments: # 1 Proposed Order)(Valame, Vikram) (Filed on 9/18/2023) (Entered: 09/18/2023) |
| 09/18/2023 | 32 | **ORDER GRANTING 31 Request to Extend Time for the Service of Process. Deadline extended to 10/16/2023. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 9/18/2023) (Entered: 09/18/2023) |
| 09/29/2023 | 33 | NOTICE of Appearance by Andrew Evan Carmichael (Carmichael, Andrew) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 09/29/2023 | 34 | AFFIDAVIT of Service for Initial Complaint and Papers served on Steven L. Kett in his personal capacity on September 27th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 09/29/2023 | 35 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on Steven L. Kett, in his official capacity on September 26th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 09/29/2023 | 36 | AFFIDAVIT of Service for Initial Complaint and Papers *by Certified Mail* served on John Arbogast on September 26th, 2023, filed by Vikram Valame. (Valame, Vikram) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 09/29/2023 | 37 | NOTICE of Appearance by Andrew James Rising (Rising, Andrew) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 09/29/2023 | 38 | Cross MOTION to Dismiss , MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 30)* filed by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. Motion to Dismiss Hearing set for 12/13/2023 11:00 AM in San Jose, Courtroom 5, 4th Floor. Responses due by 10/13/2023. Replies due by 10/27/2023. Motion Hearing set for 12/13/2023 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. (Attachments: # 1 Proposed Order)(Gerardi, Michael) (Filed on 9/29/2023) (Entered: 09/29/2023) |
| 10/13/2023 | 39 | OPPOSITION/RESPONSE (re 38 Cross MOTION to Dismiss MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 30)*, 30 MOTION for Summary Judgment *on Claims 1−3 ) Opposition AND Reply* filed by Vikram Valame. (Valame, Vikram) (Filed on 10/13/2023) (Entered: 10/13/2023) |
| 10/16/2023 | 40 | STIPULATION WITH PROPOSED ORDER *Re. Stipulated Request and [Proposed] Order Staying Deadline to Answer or Otherwise Respond to the Complaint on Behalf of Individual Capacity Defendants* filed by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Attachments: # 1 Proposed Order)(Gerardi, Michael) (Filed on 10/16/2023) (Entered: 10/16/2023) |
| 10/16/2023 | 41 | **ORDER GRANTING 40 Stipulated Request to Stay Deadline to Answer or Otherwise Respond to the Complaint on Behalf of Individual Capacity Defendants. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 10/16/2023) (Entered: 10/16/2023) |
| 10/17/2023 | 42 | STIPULATION WITH PROPOSED ORDER *requesting dismissal of individual capacity claims against John Arbogast* filed by Vikram Valame. (Attachments: # 1 Proposed Order)(Valame, Vikram) (Filed on 10/17/2023) (Entered: 10/17/2023) |
| 10/18/2023 | 43 | STIPULATION WITH PROPOSED ORDER *Stipulated Request and [Proposed] Order Extending Defendants' Time to File Reply Brief* filed by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Attachments: # 1 Proposed Order)(Rising, Andrew) (Filed on 10/18/2023) (Entered: 10/18/2023) |

| | | |
|---|---|---|
| 10/18/2023 | <u>44</u> | **ORDER GRANTING <u>42</u> Stipulated Request to Dismiss Claims Against John Arbogast (In His Personal Capacity) Without Prejudice. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 10/18/2023) (Entered: 10/18/2023) |
| 10/18/2023 | <u>45</u> | **ORDER GRANTING <u>43</u> Stipulated Request by Defendants for Extension of Time. Defendants to file their reply brief no later than 11/8/223. Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 10/18/2023) (Entered: 10/18/2023) |
| 11/03/2023 | 46 | CLERK'S NOTICE RESETTING <u>30</u> Motion for Summary Judgment. Please take notice Plaintiff's motion noticed for 01:00 PM on 12/13/2023, is reset to **11:00 AM** in San Jose, Courtroom 5, 4th Floor.<br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 11/3/2023). (Entered: 11/03/2023) |
| 11/08/2023 | <u>47</u> | REPLY (re <u>38</u> Cross MOTION to Dismiss MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 30)* ) filed byJohn Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Rising, Andrew) (Filed on 11/8/2023) (Entered: 11/08/2023) |
| 11/09/2023 | | Reset Deadlines as to <u>30</u> Motion for Summary Judgment *on Claims 1−3*. Hearing set for 12/13/2023, at 11:00 AM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. (lmh, COURT STAFF) (Filed on 11/9/2023) (Entered: 11/09/2023) |
| 11/19/2023 | <u>48</u> | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7−3.d filed byVikram Valame. (Attachments: # <u>1</u> Supplement Recent Opinion)(Valame, Vikram) (Filed on 11/19/2023) (Entered: 11/19/2023) |
| 12/13/2023 | 49 | **Minute Entry for proceedings held before Magistrate Judge Nathanael M. Cousins.**<br>**Hearing re Plaintiff's Motion for Summary Judgment and Defendants' Cross−Motion to Dismiss, or Summary Judgment held on 12/13/2023.**<br><br>Motions (Dkt. Nos. <u>30</u> , <u>38</u> ), taken under submission. Leave granted as follows:<br><br>By 12/20/2023, plaintiff to file supplemental brief on standing and optionally, an amended complaint.<br>By 1/12/2024, defendants may respond.<br>By 1/16/2024, plaintiff may request leave to file a reply. The reply (if leave is granted) would be due by 1/22/2024.<br>Also, by 12/20/2023, parties to file status report indicating whether, and if yes, they would request to be referred for a settlement conference.<br>Further CMC to be set, if appropriate, after ruling on the pending motions.<br><br>Vikram Valame, plaintiff.<br>Andrew Rising for defendants.<br><br>Liberty recording: 11:21am − 12:33pm (Time in Court: 1 hour, 12 mins).<br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Date Filed: 12/13/2023) (Entered: 12/13/2023) |
| 12/14/2023 | <u>50</u> | **ORDER REFERRING PLAINTIFF to Federal Pro Se Program. Signed by Judge Nathanael M. Cousins on 12/14/2023.** (lmh, COURT STAFF) (Filed on 12/14/2023) (Entered: 12/14/2023) |
| 12/19/2023 | <u>51</u> | First Amended Complaint against All Defendants. Filed by Vikram Valame. (Valame, Vikram) (Filed on 12/19/2023) (Entered: 12/19/2023) |
| 12/19/2023 | <u>52</u> | Supplemental Brief re <u>30</u> MOTION for Summary Judgment *on Claims 1−3* filed byVikram Valame. (Attachments: # <u>1</u> Affidavit Supplemental Valame Declaration, # <u>2</u> Exhibit E)(Related document(s) <u>30</u> ) (Valame, Vikram) (Filed on 12/19/2023) |

| | | |
|---|---|---|
| | | (Entered: 12/19/2023) |
| 12/20/2023 | 53 | STATUS REPORT *(JOINT)* by John Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Rising, Andrew) (Filed on 12/20/2023) (Entered: 12/20/2023) |
| 01/12/2024 | 54 | Supplemental Brief re 52 Supplemental Brief, 51 Amended Complaint filed byJohn Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Related document(s) 52 , 51 ) (Rising, Andrew) (Filed on 1/12/2024) (Entered: 01/12/2024) |
| 01/15/2024 | 55 | MOTION for Leave to File *Reply* filed by Vikram Valame. (Attachments: # 1 Proposed Order)(Valame, Vikram) (Filed on 1/15/2024) (Entered: 01/15/2024) |
| 01/16/2024 | 56 | **ORDER GRANTING 55 Plaintiff's motion for leave to file reply. Plaintiff's reply, not to exceed 5 pages, due by 1/22/2024. Signed Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 1/16/2024) (Entered: 01/16/2024) |
| 01/19/2024 | 57 | Emergency MOTION for Temporary Restraining Order filed by Vikram Valame. (Attachments: # 1 Proposed Order, # 2 Affidavit, # 3 Supplement First Amended Complaint)(Valame, Vikram) (Filed on 1/19/2024) (Entered: 01/19/2024) |
| 01/19/2024 | 58 | CLERK'S NOTICE RE: 57 Emergency Motion for TRO. The parties are to confer and file a stipulation and proposed order on a briefing and hearing schedule on the TRO by 1/20 noon.<br><br>**Case Management Conference is set for 1/22/2024, at 10:30 AM. This proceeding will be held by AT&T Conference Line.**<br><br>All counsel, members of the public and press please use the following dial–in information below to access the conference line:<br><br>Dial In: 888.684.8852<br><br>Access Code: 1557087<br><br>PLEASE NOTE: Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. See General Order 58 at Paragraph III.<br><br>*(This is a text–only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 1/19/2024) (Entered: 01/19/2024) |
| 01/19/2024 | 59 | STIPULATION WITH PROPOSED ORDER re 57 Emergency MOTION for Temporary Restraining Order filed by Vikram Valame. (Attachments: # 1 Proposed Order)(Valame, Vikram) (Filed on 1/19/2024) (Entered: 01/19/2024) |
| 01/19/2024 | 60 | **Order granting 59 Stipulation re: TRO briefing schedule, entered by Magistrate Judge Nathanael M. Cousins. *(This is a text–only entry generated by the court. There is no document associated with this entry.)***<br><br>Any non–CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br><br>**(Entered: 01/19/2024)** |
| 01/20/2024 | 61 | **ORDER GRANTING Defendants' Motion to Dismiss; DENYING Plaintiff's Motion for Temporary Restraining Order. Re: ECF 30 , [38, 39 , 57 . Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 1/20/2024) (Entered: 01/20/2024) |
| 01/20/2024 | 62 | **JUDGMENT entered in favor of Defendants. ***Civil Case Terminated. Signed by Judge Nathanael M. Cousins on 1/20/2024. (lmh, COURT STAFF) (Filed on 1/20/2024) (Entered: 01/20/2024)** |

| | | |
|---|---|---|
| 01/20/2024 | 63 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Vikram Valame. Appeal of Order on Motion to Dismiss, Order on Motion for Summary Judgment, Order on Motion for TRO, 61 , Judgment, Terminated Case 62 (Appeal fee of $605 receipt number ACANDC–19042528 paid.) (Attachments: # 1 Exhibit Order on Appeal, # 2 Exhibit Judgment on Appeal)(Valame, Vikram) (Filed on 1/20/2024) (Entered: 01/20/2024) |
| 01/21/2024 | 64 | Interim MOTION for Temporary Restraining Order *PENDING APPEAL* filed by Vikram Valame. (Attachments: # 1 Proposed Order)(Valame, Vikram) (Filed on 1/21/2024) (Entered: 01/21/2024) |
| 01/22/2024 | 65 | CLERK'S NOTICE RE: Plaintiff's interim motion for temporary restraining order pending appeal.<br><br>Defendants are ordered to file response to Dkt. 64 by 1/25; no reply without further leave of court.<br><br>*(This is a text–only entry generated by the court. There is no document associated with this entry.)*<br>(lmh, COURT STAFF) (Filed on 1/22/2024) (Entered: 01/22/2024) |
| 01/24/2024 | 66 | USCA Case Number 24–369 9th Circuit for 63 Notice of Appeal to the Ninth Circuit, filed by Vikram Valame. (hdj, COURT STAFF) (Filed on 1/24/2024) (Entered: 01/24/2024) |
| 01/25/2024 | 67 | OPPOSITION/RESPONSE (re 64 Interim MOTION for Temporary Restraining Order *PENDING APPEAL* ) filed byJohn Arbogast, Joseph Robinette Biden, Craig T. Brown, Steven L. Kett, Ismail Ramsey, Joel C. Spangenberg, The United States, Selective Service System. (Attachments: # 1 Exhibit 1)(Rising, Andrew) (Filed on 1/25/2024) (Entered: 01/25/2024) |
| 01/25/2024 | 68 | **ORDER DENYING Plaintiff's Motion for Injunction Pending Appeal. Re: ECF 64 , 67 . Signed by Judge Nathanael M. Cousins.** (lmh, COURT STAFF) (Filed on 1/25/2024) (Entered: 01/25/2024) |
| 01/26/2024 | 69 | TRANSCRIPT ORDER for proceedings held on December 13, 2023 before Magistrate Judge Nathanael M. Cousins by Vikram Valame, for Recorded Proceeding – San Jose. (Valame, Vikram) (Filed on 1/26/2024) (Entered: 01/26/2024) |
| 01/31/2024 | 70 | ORDER of USCA as to 24–369 63 Notice of Appeal to the Ninth Circuit, filed by Vikram Valame (hdj, COURT STAFF) (Filed on 1/31/2024) (Entered: 01/31/2024) |
| 02/08/2024 | 71 | ORDER of USCA as to 24–369 63 Notice of Appeal to the Ninth Circuit, filed by Vikram Valame (hdj, COURT STAFF) (Filed on 2/8/2024) (Entered: 02/09/2024) |
| 03/21/2024 | 72 | Transcript of Proceedings held on 12/13/23, before Judge Magistrate Judge Nathanael Cousins. Court Reporter/Transcriber Echo Reporting, Inc., telephone number echoreporting@yahoo.com. Tape Number: 11:21 – 12:33. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 69 Transcript Order ) Redaction Request due 4/11/2024. Redacted Transcript Deadline set for 4/22/2024. Release of Transcript Restriction set for 6/19/2024. (Related documents(s) 69 ) (Jauregui, Tara) (Filed on 3/21/2024) (Entered: 03/21/2024) |