No. 24-369

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

VIKRAM VALAME,

*Plaintiff-Appellant*,

v.

JOSEPH R. BIDEN, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:23-cv-03018-NC
Hon. Nathanael Cousins

**APPELLANT'S OPENING BRIEF**

Vikram Valame
*Pro Se*
4039 2nd Street, Palo Alto, California
(208) 994-3067
vik.valame@gmail.com

*Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ....................................................... 3

STATUTORY AND CONSTITUTIONAL AUTHORITIES ............................. 4

ISSUES PRESENTED....................................................................... 5

STATEMENT REGARDING ORAL ARGUMENT .................................... 5

STATEMENT OF THE CASE............................................................. 6

I.    The Equal Rights Amendment ................................................. 6

II.   The Military Selective Service Act ........................................... 8

III.  Factual Background And Prior Proceedings............................... 10

SUMMARY OF ARGUMENT ............................................................ 12

Standard of review ....................................................................... 14

ARGUMENT ................................................................................ 15

I.    The District Court Erred By Giving Legal Effect To The Archivists
      Refusal To Publish The 28th Amendment................................... 15

A.    The Text Of Article V Is Unambigious....................................... 15

B.    History And Tradition Refute A Substantive Role For The Archivist .... 18

C.    The District Court Improperly Raised The Issue Of Archivist Publication
      21

II.   The Decision Below Must Be Vacated And The Case Remanded For
      Futher Proceedings .............................................................. 24

A.    Publication Was Central To The District Court's Analysis ................ 25

B.    This Court Should Not Decide Broad Questions About The ERA In The
      First Instance .................................................................... 28

III.  The Fifth Amendment Prohibits Male-Only Registration .................. 30

CONCLUSION............................................................................. 33

# TABLE OF AUTHORITIES

## CASES

257 U.S. 619 (1921) ---------------------------------------------------- 16, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ------------------------------- 18

*Blue Cross v. Unity Outpatient*, 490 F.3d 718 (9th Cir. 2007) ------------ 31

*Camreta v. Greene*, 131 S.Ct. 2020 (2011) ------------------------------------ 32

*Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661 (2010) --------- 31

*Detrich v. Ryan*, 740 F.3d 1237 (9th Cir.2013) ------------------------------- 32

*Dillon v. Gloss*, 256 U.S. 368 ----------------------------------------- 16, 19

*Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009) ------------- 18

*Elizabeth Cady Stanton Tr. v. Neronha*, 2023 WL 6387874 (D.R.I. 2023)
------------------------------------------------------------------------ 28

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) --------------------------- 27

*Frontiero v. Richardson*, 411 U.S. 677 (1973) -------------------------------- 33

*Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788 (9th Cir.
2020) -------------------------------------------------------------------- 31

*Greenlaw v. United States*, 554 U.S. 237 (2008) ----------------------------- 26

*Hawke v. Smith*, 253 U.S. 221, 227 (1920) ----------------------------------- 20

*Hollingsworth v. Virginia*, 3 Dall. 378 ---------------------------------- 16, 22

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) ---------------------------- 15

*Marbury v. Madison*, 5 U.S. 137 (1803) -------------------------------------- 22

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038 (9th
Cir.2011) ---------------------------------------------------------------- 16

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, 33 (U.S.
Jun. 23, 2022) ----------------------------------------------------------- 21

*NLRB v. Noel Canning*, 573 U.S. 513 (2014) -------------------------------- 21

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256
(1979) ------------------------------------------------------------------- 33

*Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 (2020) -------------------------- 36

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002) ------ 25

*Rostker v. Goldberg* 453 U.S. 57 (1981)----------------------------8, 12, 17, 34

*Shirk v. United States*, 773 F.3d 999 (9th Cir. 2014)------------------------- 32

*Skidmore v. Swift Co.*, 323 U.S. 134 (1944) --------------------------------- 25

*State of Idaho v. Freeman*, 529 F. Supp. 1107 (D. Idaho 1981) ------------ 9

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, (1998)------------------- 30

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)---------------- 33

*U.S. ex rel. Widenmann v. Colby*, 265 F. 998 (D.C. Cir. 1920)--- 16, 19, 29

*U.S. v. Business of Custer Battlefield Museum*, 658 F.3d 1188 (9th Cir. 2011) -------------------------------------------------------------- 32

*U.S. v. Sitka*, 845 F.2d 43 (2d Cir. 1988)------------------------------- 18

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020)-------- 16, 18, 26

*United States v. Sprague*, 282 U.S. 716 (1931)------------------------------- 20

*United States v. Virginia*, 518 U.S. 515 (1996)------------------------------- 17

*Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021) -------------------- 24

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975)------------------------------- 33

## STATUTES

§1346(a)(2)-------------------------------------------------------------7

1 U.S.C. §106(b)-------------------------------------------------------23, 32

10 U.S.C. § 6015 (1988)-------------------------------------------------- 12

105 Stat. 1290, 1365 (1991) --------------------------------------------- 12

107 Stat. 1547, 1659 (1993) --------------------------------------------- 12

28 U.S.C. §1291 --------------------------------------------------------------7

28 U.S.C. §1331 --------------------------------------------------------------7

5 U.S.C. §3328-------------------------------------------------------7, 11, 14

5 U.S.C. §703 ---------------------------------------------------------------7

50 U.S.C. §3801 --------------------------------------------------------------11

50 U.S.C. §3802(a) -----------------------------------------------------------11

86 Stat. 1523-----------------------------------------------------------------9

92 Stat. 3799 (1978) ----------------------------------------------------- 10

Act of Apr. 20, 1818, ch. 80, § 2, 3 Stat. 439.--------------------------- 23

Pub. L. No. 114-328, §§ 551-557, 130 Stat. 2000, 2129-2137 (2016)----- 13

## OTHER AUTHORITIES

96 Cong. Rec. 3250 (Message from President Truman accompanying Reorg. Plan No. 20 of 1950) ------------------------------------------- 22

Appellee's Brief at 27, *Illinois v. Ferriero*, No. 21-5096, (D.C. Cir. Mar. 4, 2022) -------------------------------------------------------------- 11, 24

*Brief in Opposition to Petition for Certiorari*, National Coalition of Men v. Selective Service System, Case No. 20-928 (April 14th, 2021)------ 36

*Congressional Pay Amendment*, 16 Op. O.L.C. 85 at 97 (1992) ---------- 24

Danaya C. Wright, *"An Atrocious Way to Run a Constitution": The Destabilizing Effects of Constitutional Amendment Rescissions*, 59 Duq. L. Rev. 12 at n.16 (2021)----------------------------------------- 22

*Equal Rights Amendment Extension: Hearings Before the Subcommittee on the Constitution of the Committee on the Judiciary*, U.S. Senate. August 2, 3 and 4, 1978 at 10 (statement of Senator Riegle). ---------- 10

*Final Report of the National Commission on Military, National, and Public Service*, March 2020 ------------------------------------------ 34

H.J. Res. 75, 68th Cong. (1923) ------------------------------------------- 9

Jonathan S. Masur & Lisa Larrimore Ouellette, *Deference Mistakes*, 82 U. CHI. L. REV. 643-------------------------------------------------------- 29

President George Washington, *Inaugural Address of 1789* (Apr. 30, 1789) ------------------------------------------------------------------ 21

*Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. 2 (Jan. 6, 2020) ------------------------------------------------------------------ 11

*Report on the Purpose and Utility of a Registration System for Military Selective Service*, Department of Defense, March 17, 2017 ------- 34, 35

## RULES

F.R.A.P. 4(a)(1)(B) ------------------------------------------------------------- 7

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XXVIII §1------------------------------------------------- 5

U.S. Const. Amend XVIII §1------------------------------------------------- 19

U.S. Const. Art. V ------------------------------------------------------------ 18

## INTRODUCTION

In 1972, Congress proposed the Equal Rights Amendment ("ERA") to the Constitution of the United States, providing that "Equality of Rights under the law shall not be abridged by the United States or any State on account of sex". U.S. Const. Amend. XXVIII §1. While the campaign for equality was hard-fought, by January 2020, three-fourths of the states had ratified the ERA. The Article V process was complete, and the ERA became valid for all intents and purposes as part of the Constitution of the United States. Nevertheless, the National Archivist has refused to formally publish the ERA as the 28th Amendment, and United States continues to openly operate sex-discriminatory programs throughout the country.

Plaintiff Vikram Valame filed this lawsuit to challenge perhaps the most pervasive of those discriminatory programs: Selective Service registration. Registration is *mandatory* for men but *prohibited* for women, a stigmatizing distinction that even the Executive Branch acknowledges is no longer appropriate.

1

Rather than justifying its discrimination, the government argues that the ERA is ineffective until approved by Congress because of an unratified deadline attached to the ERA's proposing resolution. Arguments before the district court centered on the validity of this deadline and the court's Article III jurisdiction.

The district court declined to assure itself of jurisdiction or rule on the arguments presented by the parties. Instead, the district court dismissed the lawsuit because the Archivist—an Executive Branch official—refused to certify the ERA as validly adopted. The district court issued its decision despite repeated assurances by the United States and the Archivist himself that certification has no effect on the process of ratification. Unbroken precedent confirms that the government is correct; the Archivist's ministerial duty to maintain federal records has never impacted the legal rights of private parties.

The District Court's decision to dismiss on a ground not argued below is procedurally flawed and incorrect on the merits. The judgment should be vacated, and the case remanded for further proceedings.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction in this case under 28 U.S.C. §1331 and §1346(a)(2) because Appellant's civil rights claims against the United States arise under 5 U.S.C. §703 and the Constitution. The district court had jurisdiction under Article III because plaintiff has been barred from federal employment, which is an injury in fact fairly traceable to the government and redressable by an injunction enjoining enforcement of the employment bar at 5 U.S.C. §3328.

This Court has jurisdiction under 28 U.S.C. §1291 over the final judgment of the United States District Court for the Northern District of California. This appeal is timely under F.R.A.P. 4(a)(1)(B) because the order appealed from was entered on January 20th, 2024, and the notice of appeal was filed shortly thereafter the same day. The order on appeal dismissed all of Appellant's claims with prejudice and disposed of this case in the district court. ER 99-100.

## STATUTORY AND CONSTITUTIONAL AUTHORITIES

Article V of the Constitution provides as follows:

> The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate.

1 U.S.C. §106(b) provides as follows:

> Whenever official notice is received at the National Archives and Records Administration that any amendment proposed to the Constitution of the United States has been adopted, according to the provisions of the Constitution, the Archivist of the United States shall forthwith cause the amendment to be published, with his certificate, specifying the States by which the same may have been adopted, and that the same has become valid, to all intents and purposes, as a part of the Constitution of the United States.

4

## ISSUES PRESENTED

1. Whether publication by the Archivist of the United States is necessary for a constitutional amendment to have legal force.

2. Whether this court should vacate and remand the district court's decision for further proceedings.

3. Whether the holding of *Rostker v. Goldberg* 453 U.S. 57 (1981) continues to shield the male-only draft from equal protection challenges despite changed circumstances, including the lifting of combat restrictions on women in the armed forces.

## STATEMENT REGARDING ORAL ARGUMENT

The questions presented in this case are disputed issues of first impression with nationwide significance. Plaintiff-Appellant respectfully believes that oral argument would assist the Court in resolving the constitutional issues presented.

## STATEMENT OF THE CASE

### I.    The Equal Rights Amendment

1. The precursor to the ERA was first introduced in Congress in 1923, shortly after the 19th Amendment extended the right to vote to women. H.J. Res. 75, 68th Cong. (1923). Although repeatedly reintroduced without success for the next forty-nine years, the resolution that would become the 28th Amendment passed each House of Congress in 1972. 86 Stat. 1523.

The 1972 proposal contained three substantive terms: a guarantee of equality in §1, a grant of enforcement power to Congress in §2, and a two-year delay to the amendment's legal effect contained in §3. The proposal also contained a prefatory clause, which declared that two-thirds of each house concurred with the proposal, and that the proposal "shall be valid to all intents and purposes as part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress:" *Ibid*.

By 1979, only thirty-five states had ratified the ERA, three states short of the three-fourths requirement imposed by Article V. *State of Idaho v. Freeman*, 529 F. Supp. 1107, 1112 (D. Idaho 1981); see also U.S.

6

Const. Art. V. To spur further ratifications, proponents of the ERA urged Congress to extend the seven-year deadline in the prefatory clause of the amendment. Proponents of the deadline extension contended that because "[t]he 7-year time limit was contained in the preamble to the proposed amendment, not in the body," it was "a matter of procedure and not of substance" which could be altered at will by Congress. *Equal Rights Amendment Extension: Hearings Before the Subcommittee on the Constitution of the Committee on the Judiciary*, U.S. Senate. August 2, 3 and 4, 1978 at 10 (statement of Senator Riegle). Bare majorities in Congress passed a resolution purporting to nullify the original ERA deadline until June 30th, 1982. 92 Stat. 3799 (1978). No further states ratified by June 30th, 1982.

2. Nevada ratified the ERA in 2017, followed by Illinois in 2018 and Virginia on January 27th, 2020. On that day, the ERA thus secured thirty-eight state ratifications, becoming "valid to all Intents and Purposes, as part of" the Constitution, and triggering the §3 delay on the amendment's legal effect. Despite acknowledging the receipt of sufficient state ratification actions, the National Archivist, advised by the Office of Legal Counsel, determined that it would not publish the ERA as the 28th

7

Amendment because of the deadline contained in the prefatory clause of the ERA. *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. 2 (Jan. 6, 2020). Notably, Archivist also affirmed that "the Archivist's decision not to certify the ERA could not and did not affect" the "process of ratification". Appellee's Brief at 27, *Illinois v. Ferriero*, No. 21-5096, (D.C. Cir. Mar. 4, 2022) (internal quotations removed).

On January 27th, 2022, the two-year grace period on the ERA's legal effect expired, automatically guaranteeing all people in the United States the right to be free of sex discrimination by any government. *Id*. at 38.

## II.    The Military Selective Service Act

1. Passed in 1948, the Military Selective Service Act, 50 U.S.C. §3801 *et seq*., requires all male citizens and residents of the United States between the ages of eighteen and twenty-five to register with the Selective Service System. 50 U.S.C. §3802(a). Men who fail to register are subject to felony prosecution. 50 U.S.C. §3811. Due to a 1985 law, non-registrants are also barred from employment in Executive agencies. 5 U.S.C. §3328; *see also* ER-3 (letter revoking NRC offer).

The purpose of the Military Selective Service Act "is to facilitate any eventual conscription" into the armed forces in the event of a military

8

draft. *Rostker v. Goldberg*, 453 U.S. 57, 59-60 (1981). In 1980, military leaders and President Carter recommended that women be included in the registration process. *Id*. at 60-61, 79. After lengthy debate, Congress decided to retain the male-only requirement, finding that it was not "worth the added burdens of including women in draft and registration plans" when women were ineligible to serve in active combat under longstanding military policy. *Id*. at 77-78, 81. When male plaintiffs challenged male-only draft registration in *Rostker*, the Supreme Court upheld the law, finding that men and women were not "similarly situated for purposes of a draft or registration for a draft." *Id*. at 78.

2. Since *Rostker* was decided, legal prohibitions on women in combat have disappeared. In 1991, Congress repealed restrictions on women flying combat aircraft. 105 Stat. 1290, 1365 (1991). In 1993, Congress eliminated the ban on women serving on combat ships. 107 Stat. 1547, 1659 (1993), *repealing* 10 U.S.C. § 6015 (1988). In 2013, the Department of Defense ended its prohibition on women serving in direct ground combat units. *Elimination of the 1994 Direct Ground Combat Definition and Assignment_Rule*, Jan. 24th, 2013, available at https://dod.defense.gov/Portals/1/Documents/WISRJointMemo.pdf.

Considering these significant changes to the role of women in the armed forces, Congress created a "National Commission on Military, National, and Public Service" to evaluate the male-only draft registration requirement. Pub. L. No. 114-328, §§ 551-557, 130 Stat. 2000, 2129-2137 (2016). After holding extensive public hearings throughout the United States, *Id*. at §554(a), and receiving written comments, *Id*. at §554(d), the Commission released a final report in 2020. The report concluded that male-only registration was not in the national interest and recommended that Congress expand the draft to include Americans of either sex. ER-16. Neither House of Congress has voted on legislation to implement the Commission's recommendation.

## III.   Factual Background And Prior Proceedings

1. Plaintiff-appellant Vikram Valame filed this lawsuit in June 2023 in the Northern District of California. ER-93. Valame is a male citizen of the United States required to register with the Selective Service System under the Military Selective Service Act. ER 7-8. Valame has refused to register for the draft. *Ibid*. The complaint alleged that in light of the ERA's ratification, the male-only registration requirement constituted unlawful sex discrimination. The complaint also contained a

Fifth Amendment equal protection claim. Plaintiff sought as-applied declaratory and injunctive relief against the Selective Service System as well as a vacatur of sex-discriminatory regulations governing registration. ER-17, 20.

After filing the lawsuit, Valame applied for a temporary paid summer internship with the Nuclear Regulatory Commission (NRC). ER-8. NRC employees interviewed Valame in early December. *Ibid.* At the district court's request, Plaintiff filed an amended complaint describing his application to the NRC and the injury inflicted on him by the 5 U.S.C. §3328 employment bar. ER-42; ER-17, 18.

On January 12th, 2024, the NRC informed Valame that he had been tentatively selected for a summer intern position pending completion of a background check and submission of employment documentation. ER-5. Valame submitted documentation confirming his lack of criminal history and truthfully indicated that he had failed to register for the Selective Service. *Ibid.* On January 18th, the NRC told Valame that his tentative offer would be revoked on January 22nd unless he confirmed under penalty of perjury that he was registered with the Selective

Service. *Ibid*. Plaintiff filed a motion for a temporary restraining order the next day. Dkt. 57.

3. The district court denied a TRO and dismissed the case. The court found that "the last step" for adding new constitutional amendments "is certification and publication by the National Archivist". ER-91. Because the Archivist has refused to publish the ERA as the 28th Amendment, the court found "convincing evidence it does not now exist". *Ibid*. The district court also concluded that the Archivist had no "duty at this time to bring [the ERA] into existence" because the D.C. Circuit found that mandamus could not compel the Archivist to certify the ERA as the 28th Amendment. *Ibid*. (citing *Illinois v. Ferriero*, 60 F.4th 704, 713–19 (D.C. Cir. 2023)). The district court also agreed that *Rostker* barred lower courts from granting relief on any Fifth Amendment challenge to male-only registration. Er-89. The court thus granted the government's cross-motion to dismiss.

## SUMMARY OF ARGUMENT

1. "It is the approval of the requisite number of states, not the proclamation, that gives vitality to the amendment and makes it a part of the supreme law of the land." *U.S. ex rel. Widenmann v. Colby*, 265 F.

12

998, 1000 (D.C. Cir. 1920), *aff'd*, 257 U.S. 619 (1921). The Supreme Court has consistently rejected a role for the Executive Branch in the formal proposal or ratification of constitutional amendments. *Ibid*; *See also Dillon v. Gloss*, 256 U.S. 368; *Hollingsworth v. Virginia*, 3 Dall. 378. The decision below directly contradicts this settled rule because it treated the lack of Archivist certification as nullifying an amendment even if it has satisfied the text of Article V.

The district also procedurally erred because both parties in this case agree that the Archivist's actions (or lack thereof) are legally irrelevant. Reaching out to decide a question not presented violates the rule of party presentation. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

2. If this Court concludes that the district court erred by dismissing the ERA claims for lack Archivist publication, it should remand to the district court to analyze whether the ERA was in fact properly ratified by three-fourths of the states. While the government has raised other arguments against the validity of the ERA, this is "a court of review, not first view". *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1043 n. 4 (9th Cir.2011). Ruling on constitutional arguments not passed

13

upon below would short-circuit the ordinary appellate process in an exceptionally important case.

3. The male-only registration requirement is also unconstitutional under the equal protection component of the Fifth Amendment's due process clause. "[S]ex-based government action must demonstrate an exceedingly persuasive justification for that action." *United States v. Virginia*, 518 U.S. 515, 531 (1996) (internal quotations omitted). In *Rostker*, the Supreme Court held that such a justification existed because "[s]ince women are excluded from combat service by statute or military policy, men and women are simply not similarly situated for purposes of a draft". *Rostker*, 453 U.S. at 58.

Since women are now able to participate in all career fields and duty positions of the military, *Rostker's* own reasoning compels the conclusion that the male-only draft is unconstitutional.

## STANDARD OF REVIEW

Dismissals under Rule 12(b)(6) are reviewed de novo. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009). Factual allegations in the complaint are taken as true, but conclusions of law are not. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Adherence to the party-

14

presentation rule is reviewed for an abuse of discretion. *Sineneng-Smith*, 140 S. Ct. at 1578.

## ARGUMENT

## I. The District Court Erred By Giving Legal Effect To The Archivists Refusal To Publish The 28th Amendment

### A. The Text Of Article V Is Unambigious

Article V states that constitutional amendments shall be valid "*when ratified*" by three-fourths of the states. U.S. Const. Art. V (emphasis added). The "when" of an amendment's effectiveness is thus coterminous with ratification, with no delay. See *U.S. v. Sitka*, 845 F.2d 43, 47 (2d Cir. 1988) ("the process of ratification itself" is "self-executing upon completion"). Article V also explains *who* ratifies amendments: "the legislatures of three fourths of the several states"; there is no role for the Executive Branch in this process. U.S. Const. Art. V.

The Supreme Court has affirmed that Article V means what it says. In *Dillon v. Gloss*, 256 U.S. 368 (1921), the petitioner argued that his charge for transporting liquor was invalid because the charged conduct occurred less than one year after the *publication* of the 18th Amendment even though it had occurred more than one year after its the *ratification*.

15

*See* U.S. Const. Amend. XVIII §1 ("After one year from the ratification of this article…."). The Court found that it could "take judicial notice" of the date of the final state ratification, even though the Secretary of State[1] proclaimed ratification 13 days later: "the date of its consummation, and not that on which it is proclaimed, controls". *Dillon*, 256 U.S. at 376. The 18th Amendment was "ratified" for constitutional purposes on the earlier date.

*Colby* also answers this question directly. The D.C. Circuit dismissed a suit challenging the Secretary of State's certification of the 18th Amendment on procedural grounds. The court of appeals found that "even if the proclamation was canceled by order of this court, it would not affect the validity of the amendment." *Colby*, 265 F. at 1000. The Supreme Court summarily affirmed. 257 U.S. 619 (1921). This analysis demonstrates that the district court was incorrect when it opined that "the Archivist does not owe a duty to certify and publish the ERA, thus precluding its creation". ER-91. If that were true, *Colby* would have been

---

[1] The National Archivist has since been assigned the duty to publish ratified Constitutional Amendments. 1 U.S.C. §106(b).

16

wrongly decided, as a court order enjoining publication would have "precluded" the 18th Amendment and redressed the plaintiff's injuries in that case.

The Supreme Court has also cautioned against expanding or modifying the already-onerous requirements of Article V. Although

> Ratification might have been left to a vote of the people, or to some authority of government other than that selected. The language of the article is plain, and admits of no doubt in its interpretation. It is not the function of courts or legislative bodies, national or state, to alter the method which the Constitution has fixed.

*Hawke v. Smith*, 253 U.S. 221, 227 (1920); accord *United States v. Sprague*, 282 U.S. 716, 731 (1931) ("where the intention is clear there is no room for construction and no excuse for interpolation or addition"). Article V does not implicitly vest power over the amendment process in unnamed organs of government. Creating a formal role for the Executive Branch in the amendment process would directly contradict these binding precedents.

## B. History And Tradition Refute A Substantive Role For The Archivist

"[W]here a governmental practice has been open, widespread, and unchallenged since the early days of the Republic, the practice should guide our interpretation of an ambiguous constitutional provision." *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, 33 (U.S. Jun. 23, 2022) (citing *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in judgment)). Although the text of Article V is unambiguous, any lingering abouts can be resolved by an unbroken historical practice giving no substantive weight to Executive certification decisions.

In his first inaugural address, George Washington commented on the power to rewrite the Constitution. But "[i]nstead of undertaking particular recommendations on this subject, in which [he] could be guided by no lights derived from official opportunities", President Washington placed his "entire confidence" in Congress and the people of the United States. President George Washington, *Inaugural Address of 1789* (Apr. 30, 1789). Congress and the people quickly vindicated his trust by passing the Bill of Rights without his signature. The Supreme Court

subsequently agreed that that the Executive plays no role in the passage of Constitutional Amendments. *Hollingsworth v. Virginia*, 3 U.S. 378 (1798). As an Executive Branch official removable at-will by the President, 44 U.S.C. §2103, the Archivist must be subject to (at least) the same constraints.

This history is especially important because during the early republic "the Secretary of State certified amendments as a matter of course". Danaya C. Wright, *"An Atrocious Way to Run a Constitution": The Destabilizing Effects of Constitutional Amendment Rescissions*, 59 Duq. L. Rev. 12 at n.16 (2021). If the power to certify included a substantive power to nullify constitutional amendments, one would have expected someone to speak about it as an "official opportunity" for the Executive Branch to weigh in on ratifications. There is no such history. Instead, the power to certify has always been understood as a "record-keeping" duty which exerts no effect on the substantive content of the law 96 Cong. Rec. 3250 (Message from President Truman accompanying Reorg. Plan No. 20 of 1950).

*Marbury v. Madison*, 5 U.S. 137 (1803) also directly confronted the question of whether refusal to perform a ministerial act impacted the

validity of a constitutional process. Although Madison had withheld Marbury's commission, the Court concluded that when "the last act to be done by the president" (as the appointing authority) was completed, it "necessarily excludes the idea of its being ... an inchoate and incomplete transaction." *Id.* at 157. Because "all the requisites have been performed which authorize a recording officer to record *any instrument whatever*", the "instrument is, in law, considered as recorded, although the manual labour of inserting it in a book kept for that purpose may not have been performed". *Id.* at 161 (emphasis added). The ERA is "any instrument whatever", meaning that it is valid so long as the requisite conditions of proposal and ratification have been followed as set forth in Article V. The manual labor of publication performed by the Archivist is irrelevant.

Early Congressional practice also supports a narrow reading of the Archivist's power. The first law officially codifying the Secretary of State's duty to publish amendments provided that publication would occur "[w]henever ... any amendment which heretofore has been, or hereafter may be, proposed to the constitution of the United States, has been adopted, according to the provisions of the Constitution". Act of Apr. 20, 1818, ch. 80, § 2, 3 Stat. 439. Substantially the same provision

appears at 1 U.S.C. §106(b) today. The law specified that publication occurs *after* adoption in accordance with Article V, as opposed to being the final step in the process of adoption itself. Congress directed that the manner of publication would be publication in the "newspapers authorized to promulgate the laws", signifying that the intent of the provision was public notice instead of legal codification. *Ibid*; see also *Congressional Pay Amendment*, 16 Op. O.L.C. 85 at 97 (1992).

## C. The District Court Improperly Raised The Isue Of Archivist Publication

The Government agrees that the Archivist has no effect on the ratification process. *See* Appellee's Brief, *Illinois v. Ferriero*, *supra* at 26 ("The Archivist's decision not to certify the ERA does not, as a matter of law, have any effect on the amendment process."); *Congressional Pay Amendment* 16 Op. O.L.C. at n.19. The government has secured dismissals for lack of standing by arguing that failure to publish has no effect and thus creates no injury in fact See *Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021). To the extent that the Executive Branch deserves deference to longstanding interpretations of its own (statutory) powers, the archivist's position demonstrates why the district court was

wrong on the merits. See *Skidmore v. Swift Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

This longstanding position is also presumably why the United States did not argue below that the Archivist's certification decision had legal effect. *See* Cross-Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF 38) at 6-7 (citing *Virginia v. Ferriero* for the proposition that publication has "no legal effect"). Instead of relying on the arguments presented by the government, the district court raised the issue *sua sponte* in its opinion and order dismissing the case. That was error.

This court has specifically stated that when courts raise issues on their own initiative, they must afford a chance for the record to be "adequately developed" on the question. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002). The district court recognized this principle in this case when it asked the parties to file supplemental briefs on Article III standing for purposes of "due process and notice and to have a full record". ER-31. Affording notice is essential because the judiciary relies "on the parties to frame the issues for decision and assign

to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237 (2008).

Here, there was no notice. The government's motion to dismiss referred to the Archivist only twice in the "argument" section of the brief, both times in reference to the D.C. Circuit's holding that the ERA's deadline is not clearly and indisputably invalid. ECF 38 at 17, 20. There was no argument that the Archivist was somehow a "necessary" prerequisite to adoption of the ERA. Neither the government's reply brief, nor presentation at oral argument, nor supplemental brief refer to the Archivist; the only arguments for dismissal were the congressional deadline and lack of jurisdiction. *See e.g.* ER-73,74,75,76.

The Supreme Court's vacatur in *United States v. Sineneng-Smith* strongly supports vacatur in this case. In *Sineneng-Smith*, this court relied on the overbreadth doctrine to invalidate a statute, even though Smith's had "arguments homing in on her own conduct, not that of others" and "presented a contrary theory of the case". 140 S. Ct. 1575 at 1581. In this case, the district court engaged in a similar "radical transformation" of the case by adopting an unprecedented understanding

23

of executive power despite the Executive Branch itself presenting alternative arguments for dismissal. Id. at 1582.

Although the court in *Sineneng-Smith* arguably went even further by inviting nonparty amici to brief issues, the Ninth Circuit at least provided the government notice and an opportunity to be heard on the constitutional questions. *Id*. at 1581. Here, lack of notice renders the district court's actions at least as unjustifiable as those in *Sineneng-Smith*, particularly when the result was dismissal of the entire suit. See *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) ("in civil rights cases … before dismissing a pro se complaint[,] the district court must provide the litigant with notice").

## II.    The Decision Below Must Be Vacated And The Case Remanded For Futher Proceedings

If the district court did give legally incorrect weight to the Archivist's publication decisions, the proper remedy is remand to the district court to apply the proper Article V analysis in the first instance.

### A. Publication Was Central To The District Court's Analysis

Every single sentence of the district court's analysis relied on lack publication. The district court first stated that "no 28th Amendment appears in the Constitution. *See generally* Constitution". ER-91. This argument appears to rely upon the official version of the constitutional text published by the National Archives, which does not include a 28th Amendment. But as explained above, the National Archivist cannot nullify properly adopted constitutional amendments merely by omitting them from officially published versions of the constitution.

Secondly, the district court cited *Elizabeth Cady Stanton Tr. V. Neronha*, No. 22-cv-00245-MSM, 2023 WL 6387874 (D.R.I. Sept. 8, 2023) for the proposition that "certification and publication by the National Archivist" is the "last step" to adopting a constitutional amendment. ER-91. The out-of-circuit district court in *Cady Stanton* dismissed an ERA lawsuit for lack of standing, meaning that merits issues were "not properly before" that court. *Id*. at 16. To the extent that the cited dicta equated publication of an amendment with the requirements of Article V, it is incorrect for the reasons stated above.

25

Thirdly, the district court found that the Archivist had not taken the supposedly "necessary" step of publication, providing "convincing evidence" that the 28th Amendment does not exist. This argument also relies on the faulty premise that the Archivist's records-keeping decisions have a "necessary" or "convincing" legal effect.

Fourth, the district court cited *Illinois v. Ferriero* for the proposition that the Archivist does not have a duty "to bring [the ERA] to life". ER-92. This point rests on the false assumption that the Archivist can bring to life a constitutional amendment which does not currently exist. *See Colby* 265 F. at 1000. The D.C. Circuit did not endorse that unprecedented understanding of the Archivist's power.

All that *Illinois v. Ferriero* stands for is the proposition that the validity of the ERA is not "clear and indisputable" enough to trigger the jurisdictional requirements of the Mandamus Act. 60 F.4th at 704. This case does not arise under the Mandamus Act and seeks no relief from the Archivist. Relying on a decision made under a highly deferential standard of review to decide *this* case would be a "deference mistake". Jonathan S. Masur & Lisa Larrimore Ouellette, *Deference Mistakes*, 82 U. CHI. L. REV. 643. Such mistakes are particularly pernicious when

appellate courts decide questions of law under highly deferential legal remines like the Mandamus Act and AEDPA. *Id*. At 663. This court should not distort the law by relying on a decision handed down under an extremely deferential standard of review.

Finally, the district court summarized its reasoning by concluding that there is no 28th Amendment in the constitution, and that the lack of Archivist publication is "precluding its creation". ER-91. As explained above, neither the official text of the constitution published by the National Archives nor ministerial certification can impact the validity of an amendment ratified by three-fourths of the states.

The district court's analysis is also notable for what it did not include. Firstly, the district court explicitly declined to rule on Article III jurisdiction. ER-89; cf. *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, (1998). Secondly, the district court never mentioned the ERA deadline in its analysis, despite it being the sole ground for dismissal on the merits raised by the government. The sole basis for the decision below—lack of certification—is incorrect as a matter of law, so the decision and order dismissing this case cannot stand.

27

At the very least, the district court did not provide sufficient reasoning disconnected from its legally erroneous view of the Archivist's powers to permit appellate review. "Where, as here, a district court does not explain its reasoning, we must remand to that court to reconsider its decision and to set forth its reasons for whatever decision it reaches." *Blue Cross v. Unity Outpatient*, 490 F.3d 718, 725 (9th Cir. 2007). Such a remand should also include direction not to consider publication by the Archivist as having legal effect.

### B. This Court Should Not Decide Broad Questions About The ERA In The First Instance

The government may ask this court to overlook any errors in the district court's decision and decide the validity of the ERA's deadline in the first instance. However, this court is "a court of review and not first view" *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 826 (9th Cir. 2020). As the Supreme Court has explained:

> When the lower courts have failed to address an argument that deserved their attention, our usual practice is to remand for further consideration, not to seize the opportunity to decide the question ourselves. That is especially true when we agree to review an issue on the understanding that '[t]he material facts … are undisputed',

28

*Christian Legal Soc. Chapter v. Martinez*, 561 U.S. 661, 698 n.28 (2010). Here, the district court failed to address the government's arguments that the ERA cannot be ratified without the consent of Congress because of a legislatively imposed deadline. Just as in Martinez, the court below did not address a question of law before it on an undisputed factual record. The proper course is to remand for further consideration.

This maxim is particularly true in "a case of first impression among federal appellate courts" where an argument was not ruled on below. *Shirk v. United States*, 773 F.3d 999, 1007 (9th Cir. 2014). This case fits that bill exactly. The district court did not rule on any of the government's arguments, and deciding them here in the first instance would contradict this court's "general assumption … that we operate more effectively as a reviewing court than as a court of first instance." *Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir.2013) (en banc).

Deciding constitutional questions about the scope of Article V would also violate rule that courts "prefer to 'avoid reaching constitutional questions in advance of the necessity of deciding them.'" *U.S. v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1196 (9th Cir. 2011) (citing *Camreta v. Greene*, 131 S.Ct. 2020, 2031 (2011)). The question of whether

§106(b) and the tradition of ministerial certifications give conclusive effect to the Archivist's decisions can be decided purely on statutory or common-law grounds. Further constitutional questions should be left for the district court to decide in the first instance.[2]

## III.   The Fifth Amendment Prohibits Male-Only Registration

The Fifth Amendment prohibits "discrimination that is so unjustifiable as to be violative of due process". *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2 (1975). Even in the military context, classifications based on sex are "inherently suspect". *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973). Any such classification must bear "a close and substantial relationship to [the achievement of] important governmental objectives." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979).

---

[2] This court is obligated to decide whether it has jurisdiction under Article III. In this case, standing is not a close question. Denial of paid employment is a pocketbook injury which always creates injury in fact. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

The government has already concluded that a male-only draft is unnecessary and indeed harmful to substantial government interests. Registering women will "enhance the ability of the [Selective Service System] to provide   manpower" in "accordance   with its force needs," "provide valuable military recruiting leads" and reinforce the importance of public service. *Report on the Purpose and Utility of a Registration System for Military Selective Service*, Department of Defense, March 17, 2017 at 17-18. Doing so would "promote fairness and equity," while signaling "to allies and potential enemies alike an enhanced resolve to defend our nation, through the commitment and capability of the entirety of our citizenry". *Id*. at 18-19.

The 2020 report by the National Commission on Military, National, and Public Service was also unequivocal: "the time is right to require women to register", a change that is "necessary—and overdue"; "It would be harmful to the Nation's security to leave out the skills and talents of half of the U.S. population." *Final Report of the National Commission on Military, National, and Public Service*, March 2020, at 122-123.

Against these modern military judgments stands the Supreme Court's decades old precedent in *Rostker v. Goldberg*. *Rostker* upheld the

male-only draft because "any future draft, which would be facilitated by the registration scheme, would be characterized by a need for combat troops". *Rostker*, 453 U.S. at 77. The Supreme Court analyzed the combat policies of each of every military branch and found that "women as a group" were ineligible for combat "unlike men as a group". *Id*. at 76-77. The court went on to find that concerns for "equity" could not override concerns regarding "military necessity". *Id*. at 80.

The central rationale behind *Rostker* no longer exists. As of December 3, 2015, "qualified women were eligible to participate in all career fields, in all duty positions, at all echelons of the Armed Forces", a fact that "further alters the factual backdrop" underpinning *Rostker*. 2015 Department of Defense Report at 15. According to the very reasoning used by the court in *Rostker*, the male-only draft is unconstitutional. Indeed, the government has concluded that inclusion of women in the armed forces would now increase military readiness.

Recognizing this conclusion does not necessarily require overruling *Rostker*. Even if *Rostker* was correctly decided in 1981, its own reasoning compels the conclusion that a male-only draft is now unconstitutional.

32

Such a conclusion would not require "overruling" *Roskter*, but merely applying the very test announced in that case to new facts.[3]

That being said, "vertical stare decisis is absolute", even where horizontal stare decisis may not apply. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh J., Concurring). This court cannot apply *Rostker's* reasoning to overrule its holding.[4]

## CONCLUSION

The district court's decision should be vacated, and the case remanded for further proceedings.

Date: Monday, April 8, 2024

*/s/ Vikram Valame           .*
*Appellant*

---

[3] Plaintiff-appellant reserves the right to request that the Supreme Court directly overrule *Rostker* in a petition for certiorari.

[4] In 2021, the government represented that "should Congress fail to act within a reasonable period" on the issue of the male-only draft, the Supreme Court would be free to intervene. *Brief in Opposition to Petition for Certiorari*, National Coalition of Men v. Selective Service System, Case No. 20-928 (April 14th, 2021) at 16. It has now been over four years since Congress received the Commission's report. If the government made more than an empty promise, it should waive reliance on *Rostker* now and allow this court to consider the validity of the male-only draft unencumbered by inapplicable precedent.

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-369

I am the attorney or **self-represented party**.

**This brief contains 6237 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

**Signature** *s/Vikram Valame* **Date April 8th, 2024**