No. 24-369

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

VIKRAM VALAME,

Plaintiff-Appellant,

v.

JOSEPH R. BIDEN, et al.,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Northern District of California

————————————

**BRIEF FOR APPELLEES**

————————————

BRIAN M. BOYNTON
 *Principal Deputy Assistant Attorney*
 *General*

ISMAIL J. RAMSEY
 *United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM
SIMON C. BREWER
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7529*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 616-5367*

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ............................................................................................ 1

STATEMENT OF JURISDICTION ............................................................... 3

STATEMENT OF THE ISSUES ..................................................................... 3

PERTINENT STATUTES AND REGULATIONS ......................................... 3

STATEMENT OF THE CASE ........................................................................ 3

     A.     The Military Selective Service Act ............................................... 3

     B.     The Equal Rights Amendment ..................................................... 5

     C.     Factual Background and Prior Proceedings ................................. 9

SUMMARY OF ARGUMENT ...................................................................... 11

STANDARD OF REVIEW ........................................................................... 12

ARGUMENT ................................................................................................. 12

I.     Plaintiff's claim under the Equal Rights Amendment was properly
     dismissed. .......................................................................................... 12

II.     Plaintiff's Fifth Amendment and other claims fail. ........................... 19

CONCLUSION ............................................................................................. 22

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                 **Page(s)**

*Chiafalo v. Washington*,
   591 U.S. 578 (2020) ................................................................. 18

*Coleman v. Miller*,
   307 U.S. 433 (1939) ........................................................... 14, 16

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981) ................................................................. 18

*Dillon v. Gloss*,
   256 U.S. 368 (1921) .................................................. 13, 14, 15, 18

*Elgin v. U.S. Dep't of the Treasury*,
   641 F.3d 6 (1st Cir. 2011) ...................................................... 21

*Hartmann v. California Dep't of Corr. & Rehab.*,
   707 F.3d 1114 (9th Cir. 2013) ............................................ 12, 19

*Idaho v. Freeman*,
   529 F. Supp. 1107 (D. Idaho 1981) ................................... 8, 15

*Illinois v. Ferriero*,
   60 F.4th 704 (D.C. Cir. 2023) ........................................ 2, 12, 18

*Mallory v. Norfolk S. Ry. Co.*,
   600 U.S. 122 (2023) ................................................................. 19

*Managed Pharmacy Care v. Sebelius*,
   716 F.3d 1235 (9th Cir. 2013) ................................................ 14

*Mandel v. Bradley*,
   432 U.S. 173 (1977) ................................................................. 15

*National Coal. for Men v. Selective Serv. Sys.*:
   141 S. Ct. 1815 (2021) ..................................... 4, 20, 21
   969 F.3d 546 (5th Cir. 2020), *cert. denied*,
     141 S. Ct. 1815 (2021) ..................................... 4, 20, 21

*National Coal. for Men v. Selective Serv. Sys.*,
   No. CV 13-2391, 2016 WL 11605246 (C.D. Cal. Nov. 9, 2016) ........................... 13

*National Org. for Women, Inc. v. Idaho*,
   459 U.S. 809 (1982) ................................................... 8, 14-15, 15

ii

*Nettles v. Grounds,*
  830 F.3d 922 (9th Cir. 2016) ............................................................. 14

*Newman v. Wengler,*
  790 F.3d 876 (9th Cir. 2015) ............................................................. 20

*Orr v. Plumb,*
  884 F.3d 923 (9th Cir. 2018) ............................................................. 21

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.,*
  946 F.3d 1100 (9th Cir. 2020) ............................................................. 19

*Rostker v. Goldberg,*
  453 U.S. 57 (1981) .................................................. 3-4, 4, 11-12, 13, 19

*Shirk v. United States ex rel. Dep't of Interior,*
  773 F.3d 999 (9th Cir. 2014) ............................................................. 19

*The Pocket Veto Case,*
  279 U.S. 655 (1929) ............................................................. 17-18

*United States v. Baird,*
  85 F.3d 450 (9th Cir. 1996) ............................................................. 14

*United States v. Sprague,*
  282 U.S. 716 (1931) ............................................................. 5, 14

*Virginia v. Ferriero,*
  525 F. Supp. 3d 36 (D.D.C. 2021), *aff'd sub nom.*
  *Illinois v. Ferriero,* 60 F.4th 704 (D.C. Cir. 2023) ...................... 1, 17

*Wilson v. Lynch,*
  835 F.3d 1083 (9th Cir. 2016) ............................................................. 12

**U.S. Constitution:**

Art. V ............................................................................................. 5

Amend. XVIII, § 3 ............................................................................. 6

Amend. XX, § 6 ............................................................................. 6

Amend. XXI, § 3 ............................................................................. 6

Amend. XXII, § 2 ............................................................................. 6

iii

**Statutes:**

1 Stat. 97 (1789) ................................................................................................ 6

1 U.S.C. § 106b ................................................................................................. 9

5 U.S.C. § 3328 ................................................................................................. 10

28 U.S.C. § 636(c) ............................................................................................ 3

28 U.S.C. § 1291 ............................................................................................... 3

28 U.S.C. § 1331 ............................................................................................... 3

28 U.S.C. § 1343 ............................................................................................... 3

50 U.S.C. § 3801 ............................................................................................... 4

50 U.S.C. § 3802(a) .......................................................................................... 3, 4

50 U.S.C. § 3806 ............................................................................................... 3

50 U.S.C. § 3809 (a)(1) .................................................................................... 3

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ................................................................................ 3

**Federal Legislative Materials:**

101 Cong. Rec. 6628 (1955) ............................................................................ 6

117 Cong. Rec. 35,814 (1971) ......................................................................... 17

H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) ......................................... 6-7, 7, 8, 13

H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978) ........................................ 7

H.R.J. Res. 638, 95th Cong., 92 Stat. 3799 (1978) ........................................ 8

Office of Legal Counsel, *Constitutionality of Extending the Time Period for Ratification of the Proposed Equal Rights Amendment* (Oct. 31, 1977) (*Constitutionality of ERA Extension*), *in Equal Rights Amendment Extension: Hearings on H.J. Res. 638 Before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 95th Cong. 7 (1978) ............... 7, 16

S.J. Res., 87th Cong., 76 Stat. 1259 (1962) .................................................. 6, 16

S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) ............................................. 6, 16

S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) ................................................ 6, 16

S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960) ........................................... 6, 16

S. Rep. No. 92-689 (1972) ..........................................................................7, 13, 17

**State Legislative Materials:**

H.R.J. Res. 1, 2020 Sess. (Va. 2020) ........................................................... 8

S.J. Res. 2, 2017 Leg., 79th Sess. (Nev. 2017) ........................................... 8

S.J. Res. Const. Amend. 4, 100th Gen. Assemb. (Ill. 2018) ............................ 8

**Other Authorities:**

Effect of 2020 OLC Opinion on Possible Cong. Action Regarding Ratification of the Equal Rights Amendment, 46 Op. O.L.C., slip op. ............................................................... 2, 9

Ruth Bader Ginsburg, *Ratification of the Equal Rights Amendment: A Question of Time*, 57 Tex. L. Rev. 919 (1979) ........................................... 17

Press Release, The White House, *Statement from President Biden on the Equal Rights Amendment* (Jan. 27, 2022), https://perma.cc/9V2G-KJMM ............................................................... 2

Ratification of the Equal Rights Amendment, 44 Op. O.L.C., slip op. (2020), https://perma.cc/Q56X-KQ7Z ..................................... 5, 7, 8, 9, 13, 16, 17

## INTRODUCTION

Plaintiff's complaint challenges the validity of the longstanding statutory requirement that men register for the Selective Service System, which the Supreme Court has expressly upheld. His principal legal theory hinges on the premise that the Equal Rights Amendment (ERA) has been validly ratified and become part of the U.S. Constitution. But this Court should not take the unprecedented step of holding that the ERA is currently in effect and then relying on the ERA as a basis for declaring the Military Selective Service Act (MSSA) unconstitutional.

It is undisputed that the requisite number of States failed to ratify the ERA before the deadline set by Congress expired. The Supreme Court has long held that Congress's explicit power to specify the mode of ratification for a proposed constitutional amendment includes the incidental power to set a deadline for ratification. Congress validly exercised that power with respect to the ERA by placing a deadline for ratification in the ERA's proposing clause. Both precedent and the historical tradition of Congress's proposals for constitutional amendments support the conclusion that "Congress set deadlines for ratifying the ERA that expired long ago," and that the final ratifications alleged by plaintiff "came too late to count" for purposes of ratification. *Virginia v. Ferriero*, 525 F. Supp. 3d 36, 40 (D.D.C. 2021), *aff'd sub nom. Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023). This Court should therefore reject plaintiff's claims under the ERA and affirm the dismissal of the complaint.

President Biden has reiterated his decades-long support for the ERA, emphasizing that "[n]o one should be discriminated against based on their sex" and urging that "we, as a nation, must stand up for full women's equality." Press Release, The White House, *Statement from President Biden on the Equal Rights Amendment* (Jan. 27, 2022), https://perma.cc/9V2G-KJMM. And the President has declared that nothing prevents Congress from taking legislative action to "recogniz[e] ratification of the ERA." *Id.*; *see* Effect of 2020 OLC Opinion on Possible Cong. Action Regarding Ratification of the Equal Rights Amendment, 46 Op. O.L.C., slip op. at 2-3 (2022), https://perma.cc/H4ZS-GP3G (*Effect of 2020 OLC Opinion*) ("As a coequal branch of government, Congress is entitled to take a different view on these complex and unsettled questions . . . [a]nd the shape of any forthcoming congressional action might affect the ultimate assessment of the ERA's legal status."). As the President has recently urged, congressional engagement remains an appropriate course for addressing the timeliness and sufficiency of the ERA's ratification. This is consistent with the D.C. Circuit's recent decision holding that the Archivist of the United States does not have clear duty to certify and publish the ERA where the deadline for ratification imposed by Congress had lapsed. *Illinois v. Ferriero*, 60 F.4th 704, 716-19 (D.C. Cir. 2023).

Nothing in our argument precludes the possibility that Congress might take action with respect to ERA ratification even now. But this Court should not rely on the ERA as a basis for holding the MSSA unconstitutional.

2

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The parties consented to magistrate-judge jurisdiction. *See id.* § 636(c). This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered a final judgment dismissing the case on January 20, 2024, *see* ER-99, and plaintiff filed a notice of appeal the same day, *see* ER-100. That notice was timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

## STATEMENT OF THE ISSUES

Whether the statutory requirement that only men must register for Selective Service System is unconstitutional under the ERA or the Fifth Amendment. *See* ER-87-92.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    The Military Selective Service Act

The MSSA has long required all male citizens between the ages of 18 and 26, with some exceptions, to register with a federal agency known as the Selective Service System. 50 U.S.C. §§ 3802(a), 3809(a)(1); *see also id.* § 3806 (exemptions and deferments). These registrations must be in accordance with the MSSA's implementing regulations, *see id.* § 3802(a), and their purpose "is to facilitate any eventual conscription" into the armed forces in the event of a military draft. *Rostker v.*

3

*Goldberg*, 453 U.S. 57, 59 (1981); *see also* 50 U.S.C. § 3801. The MSSA does not require women to register. 50 U.S.C. § 3802(a).

In *Rostker*, the Supreme Court considered whether the MSSA's male-only registration requirement amounts to unconstitutional sex discrimination under the Fifth Amendment. 453 U.S. at 59. As the Court's opinion recounted, "Congress considered the question" whether to permit the registration of women "at great length" and heard "extensive testimony and evidence," including through multiple rounds of hearings, floor debate, and committee proceedings, before deciding to retain the male-only requirement. *Id.* at 61, 72. The Court found constitutional significance in the fact that Congress had not acted "unthinkingly" or "reflexively," *id.* at 72, as well as the fact that "the Constitution itself requires . . . deference to congressional choice" when military affairs are involved, *id.* at 67, and ultimately concluded that "Congress acted well within its constitutional authority when it authorized the registration of men, and not women," under the MSSA, *id.* at 83. As the Fifth Circuit recognized in *National Coalition for Men v. Selective Service System*, 969 F.3d 546 (5th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1815 (2021), the decision in *Rostker* remains binding even though the facts on the ground in the military have changed in the intervening decades. The Supreme Court denied certiorari shortly thereafter, even though, as several Justices noted, "[t]he role of women in the military has changed dramatically since [*Rostker*]." 141 S. Ct. at 1816 (Sotomayor, J., respecting the denial of certiorari).

4

B.    **The Equal Rights Amendment**

**1.** Article V provides that Congress may propose new amendments to the Constitution "whenever two thirds of both Houses shall deem it necessary." U.S. Const. art. V. Congress has traditionally done so through a joint resolution that has two parts: a "proposing clause" that describes what Congress has done and the text of the amendment as it would appear in the Constitution. Article V further provides that an amendment "shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress." *Id.*

The choice as to "the mode of ratification[] lies in the sole discretion of Congress." *United States v. Sprague*, 282 U.S. 716, 730 (1931). In the exercise of that discretion, "Congress has specified the mode of ratification in the proposing clause included within every resolution proposing a constitutional amendment." Ratification of the Equal Rights Amendment, 44 Op. O.L.C., slip op. at 14 (2020), https://perma.cc/Q56X-KQ7Z (*Ratification of the ERA*). Thus, for every constitutional amendment ever adopted, Congress dictated the mode of ratification (*i.e.*, by state legislatures or state conventions) in the proposing clause. *See id.* at 14-15, 15 n.15 (collecting examples).

Congress has also used the proposing clause to convey other procedural instructions relating to ratification. This practice began with the First Congress, which

5

proposed twelve constitutional amendments in a single joint resolution. *See* 1 Stat. 97, 97-98 (1789). The proposing clause authorized the state legislatures to ratify "all" twelve together or "any of" them individually. *Id.* at 97. The States ratified ten of the twelve proposed amendments in 1791 as the Bill of Rights, and another in 1992 as the Twenty-Seventh Amendment.

Later, Congress began imposing deadlines for ratification. While the early resolutions proposing amendments did not limit the time for ratification, *see, e.g.*, 1 Stat. at 97, Congress included seven-year deadlines in the texts of what became the Eighteenth, Twentieth, Twenty-First, and Twenty-Second Amendments. *See* U.S. Const. amends. XVIII, § 3; XX, § 6; XXI, § 3; XXII, § 2. When proposing the Twenty-Third Amendment in 1960, Congress included the ratification deadline in the proposing clause rather than in the text of the proposed amendment. *See* S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960). "The general idea was that it was better not to make the 7-year provision a part of the proposed constitutional amendment itself" because this "would clutter up the Constitution." 101 Cong. Rec. 6628 (1955) (statement of Sen. Kefauver). Since then, Congress has placed a deadline for ratification in the proposing clause of every constitutional amendment it has approved. *See* S.J. Res., 87th Cong., 76 Stat. 1259 (1962) (Twenty-Fourth Amendment); S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) (Twenty-Fifth Amendment); S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) (Twenty-Sixth Amendment); H.R.J. Res. 208, 92d Cong., 86 Stat.

1523 (1972) (proposed ERA); H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978)

(proposed D.C. Congressional Representation Amendment).[1]

Notably, "Congress moved from inclusion of the limit in the text of proposed

amendments to including it within the proposing clauses," and occasionally varied the

specific wording, "without ever indicating any intent to change the substance of their

actions." Office of Legal Counsel, *Constitutionality of Extending the Time Period for

Ratification of the Proposed Equal Rights Amendment* (Oct. 31, 1977) (*Constitutionality of

ERA Extension*), *in Equal Rights Amendment Extension: Hearings on H.J. Res. 638 Before the

Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 95th Cong. 7, 13

(1978).[2] Indeed, the Senate Report on the ERA lumped the two practices together

when it observed that a seven-year time limitation "ha[d] been included in every

amendment added to the Constitution in the last 50 years." S. Rep. No. 92-689, at 20

(1972).

**2.** On March 23, 1972, both Houses of Congress adopted (by two-thirds

majority) a joint resolution to submit the ERA to the state legislatures. H.R.J. Res.

208, 86 Stat. 1523. As it had done several times before, Congress imposed a seven-

year deadline for ratification. The proposing clause stated that the amendment would

---

[1] The proposed D.C. Congressional Representation Amendment had a deadline in the text of the amendment as well. H.R.J. Res. 554, 92 Stat. at 3795.

[2] Some objections were made to a suggestion to add a deadline to the proposing clause of the Twentieth Amendment. *See Ratification of the ERA*, slip op. at 20 n.18. But there do not appear to have been any similar expressions of concern with respect to the Twenty-Third or any subsequent Amendment. *Id.*

become "part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress." *Id.*

By 1978, the requisite number of States had not ratified the ERA. Moreover, four States voted to rescind previous ratifications, and a fifth passed a resolution stating that its prior ratification would be rescinded if the ERA were not adopted within the seven-year period. *Ratification of the ERA*, slip op. at 6-7, 7 nn.7-8. Congress decided to give States more time, and by simple majorities, both Houses passed a joint resolution extending the deadline for the ERA's ratification by three years to June 30, 1982. H.R.J. Res. 638, 95th Cong., 92 Stat. 3799 (1978). This extension was challenged by several States and state legislators, *see Idaho v. Freeman*, 529 F. Supp. 1107 (D. Idaho 1981), but the Supreme Court concluded that the complaints were moot after the extended deadline elapsed, *see National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982).

In 2017, 2018, and 2020, three additional States passed resolutions to ratify the ERA. S.J. Res. 2, 2017 Leg., 79th Sess. (Nev. 2017); S.J. Res. Const. Amend. 4, 100th Gen. Assemb. (Ill. 2018); H.R.J. Res. 1, 2020 Sess. (Va. 2020). If those three actions counted as timely ratifications, and the States that have voted to rescind their ratifications were not subtracted, then three-quarters of the States would have voted to ratify the ERA.

On January 6, 2020, the Office of Legal Counsel (OLC) in the Department of Justice issued an opinion concluding that the ERA "failed of adoption" because the "binding" deadline set by Congress for ratification had "lapsed without ratifications from the requisite thirty-eight States," and actions taken by state legislatures after that deadline could "not complete the ratification of the amendment." *Ratification of the ERA*, slip op. at 24, 37. Relying on that advice, the Archivist of the United States has not certified the adoption of the ERA or published it as part of the Constitution. *See* 1 U.S.C. § 106b.

In a subsequent opinion, OLC restated its prior conclusion that "Congress had constitutional authority to impose th[e] [seven-year] deadline." *Effect of 2020 OLC Opinion*, slip op. at 1. But OLC noted that its 2020 opinion "does not preclude" either "the House or the Senate from taking further action regarding ratification of the ERA" or "judicial consideration of the pertinent questions." *Id.* at 2-3. And it observed that "the shape of any forthcoming congressional actions might affect the ultimate assessment of the ERA's legal status." *Id.* at 3.

## C.     Factual Background and Prior Proceedings

**1.** Plaintiff brought this suit in the district court challenging the constitutionality of the Selective Service registration requirement. He alleges that the MSSA requires him to register for the Selective Service, but he "has knowingly and willfully refused" to do so as he does not wish to expend any time or resources registering for the Selective Service or updating his registration to reflect any changes in address, as

9

required by the statute and its implementing regulations. ER-14. He further alleges that his failure to register causes him "frustration and significant anxiety about his role in society" and makes him ineligible for federal Executive Branch employment. ER-17 (citing 5 U.S.C. § 3328).

The complaint principally asserts that the registration requirement is unconstitutional under the ERA, which it refers to as the "28th Amendment," and the equal protection component of the Fifth Amendment. ER-18-21. The complaint also includes a claim challenging the MSSA's implementing regulations on the same grounds, and nominal damages claims against one Selective Service official in his individual capacity. ER-19-21.

**2.** While this suit was pending, *see* Appellant's Emergency Mot. for an Inj. Pending Appeal 2 (Jan. 29, 2024), plaintiff applied for a summer internship with a federal agency. Upon being told that he would need to register or provide evidence of an exemption from registration to receive a final offer, plaintiff moved for a temporary restraining order. *See* ER-99.

**3.** The district court dismissed the complaint for failure to state a claim and denied the motion for a temporary restraining order. ER-87-92. The court observed that plaintiff cited no judicial authority supporting the proposition that the ERA had been ratified, ER-91, and held that plaintiff "cannot state a claim for relief under a constitutional amendment that does not exist," ER-92. The court further noted

plaintiff's concession that precedent forecloses his claims pleaded in the alternative under the Fifth Amendment. ER-89.

**4.** After noticing this appeal, plaintiff sought from the district court an injunction pending appeal to prevent the revocation of his tentative selection for the internship. *See* ER-100. The district court denied that motion. *See* ER-100. Plaintiff then sought from this Court an emergency injunction pending appeal, *see* Appellant's Emergency Mot. for an Inj. Pending Appeal (Jan. 29, 2024), which was denied on February 8, 2024, Order (Feb. 8, 2024). The tentative internship offer was withdrawn shortly thereafter. ER-3.[3]

## SUMMARY OF ARGUMENT

**I.** The district court properly dismissed plaintiff's claims invoking the ERA. The Supreme Court long has recognized Congress's power to establish a definite period for the ratification of proposed amendments, and Congress acted consistent with established practice by fixing that period through the ERA's proposing clause. Accordingly, because the deadline Congress established for ratification elapsed without the requisite number of States having ratified the ERA, plaintiff cannot base his claim on the ERA.

**II.** Plaintiff's Fifth Amendment and various remaining claims also fail. Challenges to the MSSA under the Fifth Amendment are foreclosed by *Rostker v.*

---

[3] The government does not oppose supplementing the record on appeal with the withdrawal letter.

*Goldberg*, 453 U.S. 57 (1981), which plaintiff repeatedly has conceded binds this Court unless and until the Supreme Court overturns it. And plaintiff's remaining claims—a challenge to the MSSA's implementing regulations and claims for nominal damages against a Selective Service official—fail for the same reasons as his ERA and Fifth Amendment claims.

## STANDARD OF REVIEW

This Court reviews de novo an order dismissing a complaint for failure to state a claim. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016). The Court "may affirm the district court's dismissal on any ground that is supported by the record, whether or not the district court relied on the same ground or reasoning ultimately adopted by this court." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121 (9th Cir. 2013).

## ARGUMENT

I.  **Plaintiff's claim under the Equal Rights Amendment was properly dismissed.**

Plaintiff principally contends that the Selective Service's registration requirement violates the ERA. As the district court recognized, ER-91-92, this claim fails. No court has ever recognized the ERA's purported ratification, *see, e.g.*, *Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023), because the congressionally established deadline for State ratifications lapsed long before the 38th State voted to ratify the ERA in 2020. Nor has Congress taken up the question of whether the ERA was

properly ratified. Plaintiff does not contend that the deadline has been extended or removed, and he cannot show that "the deadline was somehow invalid in the first place." *Ratification of the ERA*, slip op. at 12.[4]

**A.** When it submitted the ERA to the States, Congress adopted a seven-year ratification deadline in the proposing clause. H.R.J. Res. 208, 86 Stat. 1523. As the Senate Judiciary Committee explained, such a "time limitation assures that ratification reflects the contemporaneous views of the people." S. Rep. No. 92-689, at 20; *see also Dillon v. Gloss*, 256 U.S. 368, 375 (1921) (same). That deadline was a proper exercise of Congress's power to set the mode of ratification for a proposed constitutional amendment.

**1.** Article V expressly empowers Congress to select a mode of ratification— whether by State legislatures or conventions—for proposed constitutional amendments. The Supreme Court long ago recognized "the power of Congress . . . to fix a definite period for the ratification" of proposed amendments as falling within that power. *Dillon*, 256 U.S. at 375-76. In *Dillon*, a prisoner in custody for violating the National Prohibition Act argued that the Eighteenth Amendment was invalid on account of the seven-year ratification deadline imposed by Congress. *Id.* at 370-71.

---

[4] The government does not contest plaintiff's standing. *See, e.g., National Coal. for Men v. Selective Serv. Sys.*, No. CV 13-2391, 2016 WL 11605246, at *2 (C.D. Cal. Nov. 9, 2016) (holding that a male plaintiff has standing to challenge the registration requirement as unconstitutional discrimination); *cf. Rostker v. Goldberg*, 453 U.S. 57 (1981) (adjudicating such a claim on the merits).

The Court rejected the argument, finding "no doubt" as to Congress's power to set such a limit "as an incident of its power to designate the mode of ratification." *Id.* at 376.[5]

Eighteen years later, the Supreme Court confirmed that holding. *See Coleman v. Miller*, 307 U.S. 433, 452 (1939) (explaining that *Dillon* "held that the Congress in proposing an amendment may fix a reasonable time for ratification"). In *Coleman*, the Supreme Court considered the validity of a State's contested ratification of the proposed Child Labor Amendment, which contained "[n]o limitation of time for ratification . . . either in the proposed amendment or in the resolution of submission." *Id.* The Court explained that the proposed amendment was properly ratified by the State, as Congress had not exercised its "power to fix a reasonable time for ratification." *Id.*

Those principles are further confirmed by the Supreme Court's 1982 decision that the controversy regarding Congress's extension of the ERA's deadline became moot when the extended deadline expired. *National Org. for Women, Inc. v. Idaho*, 459

---

[5] The Supreme Court later characterized unspecified "statements" in *Dillon* "with respect to the power of Congress in proposing the mode of ratification" as "not in the strict sense necessary" to the decision. *United States v. Sprague*, 282 U.S. 716, 732 (1931). That statement would not undermine *Dillon*'s holding that Congress has the power to set a ratification deadline. Regardless, the Court in *Sprague* went on to emphasize that the statements at issue resulted from "carefu[l]" analysis and were "not idly or lightly made." *Id.* at 732-33. Such "considered dicta from the Supreme Court" is entitled to "due deference." *Nettles v. Grounds*, 830 F.3d 922, 930-31 (9th Cir. 2016) (en banc) (first quoting *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1246 (9th Cir. 2013); and then quoting *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996)).

14

U.S. 809 (1982). After the district court held that Congress lacked the power to extend the initial deadline set in the proposing clause, *Idaho v. Freeman*, 529 F. Supp. 1107, 1153 (D. Idaho 1981), the federal government and others sought immediate review in the Supreme Court. The Court granted certiorari before judgment, but the June 1982 deadline expired before the case could be argued.

The Solicitor General urged the Court to dismiss the case as moot because "the Amendment has failed of adoption no matter what the resolution of the legal issues presented." Memorandum for the Administrator of General Services Suggesting Mootness at 3, *National Org. for Women, Inc. v. Idaho*, 459 U.S. 809 (1982) (Nos. 81-1282 et al.). Citing that filing, the Court vacated the district court's judgment and remanded the case with instructions to dismiss the complaints as moot. *National Org. for Women*, 459 U.S. at 809. In doing so, the Supreme Court "necessarily decided," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam), that the ERA failed of adoption because the deadline for ratification deadline had elapsed; otherwise, the case would not have been moot, as additional States could have ratified the amendment.

**2.** Congress's decision to place the ERA's ratification deadline in the proposing clause, rather than the amendment's text, has no legal significance. The Supreme Court has never suggested that such a distinction matters. To the contrary, *Dillon* referred generally to a deadline in "the congressional resolution proposing the amendment." 256 U.S. at 370-71 (citation omitted). And *Coleman* specifically noted that in the proposed Child Labor Amendment, "[n]o limitation of time for ratification

15

[was] provided . . . either in the proposed amendment or in the resolution of submission." 307 U.S. at 452. The Court's mention of both the amendment's text and the proposing clause indicates that a deadline contained in either one would have been effective.

Even putting aside those Supreme Court decisions, placing the deadline in the proposing clause is an "established practice" given how Congress had proposed the Twenty-Third through Twenty-Sixth amendments. *Ratification of the ERA*, slip op. at 3; *see* S.J. Res. 39, 74 Stat. at 1057 (resolving "[t]hat the following article is hereby proposed . . . which shall be valid to all intents and purposes as part of the Constitution only if ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress"); S.J. Res., 76 Stat. at 1259; S.J. Res. 1, 79 Stat. at 1327; S.J. Res. 7, 85 Stat. at 825. By placing those deadlines in the amendments' proposing clauses, Congress sought to preserve the elegance of the Constitution's text by no longer "clutter[ing]" it "with extraneous sections imposing conditions on ratification that had no prospective effect." *Ratification of the ERA*, slip op. at 20. Members of Congress did not ascribe any substantive difference to the two types of deadlines. *See Constitutionality of ERA Extension*, *supra*, at 13 (noting that Congress moved the location "without ever indicating any intent to change the substance of their actions"); *see also Ratification of the ERA*, slip op. at 21 (finding "no indication that Members of Congress (or any court)

16

seriously questioned the binding nature of a deadline stated in a resolution's proposing clause").

By placing the deadline in the ERA's proposing clause, Congress merely continued the practice it had begun with the prior amendments. *See* S. Rep. No. 92-689, at 20 (explaining that Congress had employed "the traditional form of a joint resolution proposing a constitutional amendment for ratification by the States"). Even "principal congressional proponents of the ERA accepted addition of a seven year specification to the proposing clause" as "a 'customary' statute of limitations." Ruth Bader Ginsburg, *Ratification of the Equal Rights Amendment: A Question of Time*, 57 Tex. L. Rev. 919, 921 & n. 14 (1979) (quoting 117 Cong. Rec. 35,814-15 (1971) (statement of Rep. Griffiths)).

Congress also acted within the context of an even longer-running practice of "placing ratification conditions in its proposing resolutions' prefatory language." *Virginia v. Ferriero*, 525 F. Supp. 3d 36, 57 (D.D.C. 2021), *aff'd sub nom. Illinois*, 60 F.4th 704. In the proposing clause of the very first joint resolution submitting constitutional amendments to the States in 1789, Congress specified the mode of ratification and further invited the States to ratify the proposed amendments individually or as a group. 1 Stat. 97. Congress has likewise "specified the mode of ratification in the proposing clause of every resolution proposing a constitutional amendment since then." *Ratification of the ERA*, slip op. at 19. That substantial historical practice supports Congress's authority to exercise its power in this manner. *See The Pocket Veto*

17

*Case*, 279 U.S. 655, 689 (1929) ("Long settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions of this character."), *quoted in Chiafalo v. Washington*, 591 U.S. 578, 592 (2020); *see also Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981) (relying on historical practice of less than 40 years).

As noted above, *Dillon* expressly linked Congress's power to impose a ratification deadline with the power to specify a mode of ratification. 256 U.S. at 376. Congress has consistently specified the mode of ratification in the proposing clause, and there is no reason to believe that Congress could not validly exercise the "incident" authority of setting a deadline in the same manner.

**B.** Plaintiff's opening brief on appeal largely neglects to argue whether Congress properly imposed the ERA's ratification deadline. Instead, plaintiff devotes much of his brief (at 15-28) to criticizing the district court's discussion of the role of the Archivist of the United States in the constitutional amendment process. *See* ER-91-92. For purposes of this case, the Archivist's duties are beside the point. *Cf. Illinois*, 60 F.4th at 716-17 (discussing the Archivist's statutory duty to certify and publish amendments). Plaintiff cannot show that the deadline set by Congress for the States' ratification of the ERA was invalid or inoperative. The status of the ERA does not depend on the Archivist's action or inaction.

Plaintiff also suggests (at 28-30) remanding to the district court for additional consideration. But no remand is required here. This Court "may affirm the district

court's dismissal on any ground that is supported by the record, whether or not the district court relied on the same ground or reasoning ultimately adopted by this court." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121 (9th Cir. 2013). And because the question whether Congress set a valid deadline for the ERA's ratification is purely legal, a remand would not facilitate this Court's consideration of the issue. *See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1111 (9th Cir. 2020) ("An appellate court need not wait when a question could not possibly be affected by deference to a trial court's factfinding or fact application, or a litigant's further development of the factual record."); *cf. Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) (declining to address an issue in the first instance on a "substantially incomplete" record). The Court therefore should affirm the dismissal of plaintiff's claim based on the ERA without awaiting further district court proceedings.

## II.    Plaintiff's Fifth Amendment and other claims fail.

**A.** Plaintiff's complaint asserts in the alternative that the MSSA is unconstitutional under the Fifth Amendment's equal protection component. *See* ER-21. That contention is foreclosed by *Rostker v. Goldberg*, 453 U.S. 57 (1981), which upheld the registration requirement under the Fifth Amendment. Unless and until the Supreme Court overrules *Rostker*, this Court remains bound by that holding. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("If a precedent of this Court has direct application in a case . . . a lower court should follow the case which directly

19

controls, leaving to this Court the prerogative of overruling its own decisions." (quotation marks omitted)). Plaintiff has conceded that point repeatedly. *See, e.g.*, Opening Br. 33 ("This court cannot apply *Rostker's* reasoning to overrule its holding."); Appellant's Reply in Support of Emergency Mot. for an Inj. Pending Appeal 9 ("Of course, the *holding* of *Rostker*—that the Fifth Amendment does not prohibit sex-selective registration—is binding on this court."); ER-21 (similar).

Despite those concessions, portions of plaintiff's opening brief (at 30-33) suggest that this Court could reach a different conclusion based on "new facts" about women's military service that postdate *Rostker*. But federal courts of appeals cannot "engage in anticipatory overruling of Supreme Court precedent" even if "factual developments may appear to have significantly undermined the rationale for an earlier holding." *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam) (alteration and quotation marks omitted).

The Fifth Circuit recognized as much in *National Coalition for Men v. Selective Service System*, 969 F.3d 546 (5th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1815 (2021), holding that although facts had changed since *Rostker*, the plaintiffs' sex-based equal protection claims were nevertheless foreclosed because federal courts could not "ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Id.* at 548 (citation omitted). The Supreme Court denied certiorari shortly thereafter. *National Coal. for Men v. Selective Serv. Sys.,* 141 S. Ct. 1815 (2021). In a statement concurring in the denial of certiorari, Justice Sotomayor, joined by Justice

Breyer and Justice Kavanaugh, acknowledged that "[t]he role of women in the military has changed dramatically since [*Rostker*]," but explained that denial was still appropriate in light of Congress's continued consideration of the report of the National Commission on Military, National, and Public Service regarding the future of the Selective Service System. *Id.* at 1816 (Sotomayor, J., respecting the denial of certiorari).

It is therefore appropriate to reject plaintiff's sex-based equal protection challenge under *Rostker* without further inquiry. *See Elgin v. U.S. Dep't of the Treasury*, 641 F.3d 6, 24 (1st Cir. 2011) (Stahl, J., concurring) ("[I]t would not be for this court to determine what, if any, impact these developments had on the continued vitality of *Rostker*, a task left solely to the Supreme Court."); *National Coal. for Men*, 969 F.3d at 547 (similar). Accordingly, the Court should decline plaintiff's invitation to disregard binding Supreme Court precedent and instead allow the political branches an adequate opportunity to consider these complicated questions before interfering in a matter that is within their constitutional discretion.

**B.** Plaintiff forfeited any arguments in favor of his remaining claims by failing to raise them in his opening brief. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018). Even if they were preserved, they would fail for substantially the same reasons. The Administrative Procedure Act claim challenging the validity of the MSSA's implementing regulations, *see* ER-19-20, is predicated on his challenges to the constitutionality of the MSSA. Because he cannot show the MSSA violates the

21

Constitution, the challenge to the implementing regulations fails as well. Similarly, the complaint asserts two nominal damages claims against Steven L. Kett, Director of Region III of the Selective Service System, in his individual capacity for his role in implementing the registration requirement. ER-20-21. As plaintiff conceded in district court, ER-80, those claims fail for the same reasons as his ERA and Fifth Amendment claims, *see* ER-89 (noting that the damages claims rely on plaintiff's other arguments). The district court therefore correctly dismissed the complaint in whole.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

ISMAIL J. RAMSEY
  *United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM
  s/ *Simon C. Brewer*
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*
  *Simon.C.Brewer@usdoj.gov*

June 2024

22

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellees state that they know of no related case pending in this Court.

*s/ Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5400 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using ACMS. Service will be accomplished by ACMS.

*s/ Simon C. Brewer*

Simon C. Brewer

**ADDENDUM**

# TABLE OF CONTENTS

50 U.S.C. § 3802 ................................................................................. A1

50 U.S.C. § 3809 ................................................................................. A1

32 C.F.R. § 1615.4 ............................................................................. A2

32 C.F.R. § 1615.5 ............................................................................. A2

## 50 U.S.C. § 3802

### § 3802. Registration

(a) Except as otherwise provided in this chapter, it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder. The provisions of this section shall not be applicable to any alien lawfully admitted to the United States as a nonimmigrant under section 1101(a)(15) of Title 8, for so long as he continues to maintain a lawful nonimmigrant status in the United States.

(b) Regulations prescribed pursuant to subsection (a) may require that persons presenting themselves for and submitting to registration under this section provide, as part of such registration, such identifying information (including date of birth, address, and social security account number) as such regulations may prescribe.

## 50 U.S.C. § 3809

### § 3809. Selective Service System

(a) Establishment; construction; appointment of Director; termination and reestablishment of Office of Selective Service Records

(1) There is established in the executive branch of the Government an agency to be known as the Selective Service System, and a Director of Selective Service who shall be the head thereof.

(2) The Selective Service System shall include a national headquarters, at least one State headquarters in each State, Territory, and possession of the United States, and in the District of Columbia, and the local boards, appeal boards, and other agencies provided for in subsection (b)(3) of this section.

(3) The Director shall be appointed by the President.

(4) The functions of the Office of Selective Service Records (established by the Act of March 31, 1947) and of the Director of the Office of Selective Service Records are transferred to the Selective Service System and the Director of Selective Service, respectively. The personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Office of Selective Service Records are transferred to the Selective Service System. The Office of Selective Service Records shall cease to exist upon the taking effect of the provisions of this chapter: *Provided*, That,

A1

effective upon the termination of this chapter and notwithstanding such termination in other respects, (A) the said Office of Selective Service Records is reestablished on the same basis and with the same functions as obtained prior to June 24, 1948, (B) said reestablished Office shall be responsible for liquidating any other outstanding affairs of the Selective Service System, and (C) the personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Selective Service System shall be transferred to such reestablished Office of Selective Service Records.

(b) Administrative provisions

The President is authorized to undertake the following:

(1) To prescribe the necessary rules and regulations to carry out the provisions of this chapter.

. . . .


## 32 C.F.R. § 1615.4

### § 1615.4. Duty of persons required to register.

A person required by selective service law to register has the duty:

(a) To complete the registration process by a method prescribed by the Director of Selective Service and to record thereon his name, date of birth, sex, Social Security Account Number (SSAN), current mailing address, permanent residence, telephone number, date signed, and signature, if requested; and

(b) To submit for inspection, upon request, evidence of his identity to a person authorized to accept the registration information. Evidence of identity may be a birth certificate, motor vehicle operator's license, student's identification card, United States Passport, or a similar document.


## 32 C.F.R. § 1615.5

### § 1615.5. Persons not to be registered.

No person who is not required by selective service law or the Proclamation of the President to register shall be registered.